FILED

2012 APR 23 PM 3:08

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
JACKSONVILLE FLORIDA

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>CONSOLIDATED CITY OF JACKSONVILLE,<br>　　　　　　　　　Defendant,<br>and<br><br>JACKSONVILLE ASSOCIATION OF<br>FIREFIGHTERS, LOCAL 122, INTERNATIONAL<br>ASSOCIATION OF FIREFIGHTERS,<br>　　　　　　　　　Defendant. | Civil Action No: _____<br>3:12-CV-451-J-99MMH-MCR |

## COMPLAINT

Plaintiff United States of America alleges as follows:

1. This action is brought on behalf of the United States to enforce the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended ("Title VII"). As is more fully set forth below, the United States alleges that Defendant, the Consolidated City of Jacksonville ("Jacksonville"), through its Fire and Rescue Department ("JFRD"), has used and continues to use written examinations on a pass/fail as well as on a rank-order basis for screening and selecting candidates for promotion to the ranks of District Chief (Suppression), Captain (Suppression), Lieutenant (Suppression), and Engineer, and such use has resulted in a disparate impact upon black candidates, is not job related and consistent with business necessity for the positions in question, and does not otherwise meet the requirements of Title VII.

2. This Court has jurisdiction of this action under 42 U.S.C. § 2000c-6(b), 28 U.S.C. § 1343(a)(3), and 28 U.S.C. § 1345.

3. Defendant Jacksonville is a municipal government and a political subdivision created pursuant to the laws of the State of Florida and is located in this judicial district.

4. Defendant Jacksonville is a person within the meaning of 42 U.S.C. § 2000e(a) and an employer within the meaning of 42 U.S.C. § 2000e(b).

5. Defendant Jacksonville maintains a fire department, JFRD, which consists of six major divisions: Rescue, Operations/Suppression, Fire Prevention, Emergency Preparedness, Training, and Administrative Services, and which employs uniformed firefighters in classifications including District Chief, Captain, Lieutenant, and Engineer.

6. JFRD employs more than 1,200 uniformed firefighters in all ranks.

7. Defendant Jacksonville Association of Firefighters, Local 122, IAFF, an affiliated and/or chartered Local with the International Association of Firefighters ("Union"), represents the firefighters holding ranks including District Chief, Captain, Lieutenant, and Engineer employed by Defendant Jacksonville and is named solely as a party pursuant to Rule 19(a) of the Federal Rules of Civil Procedure because its joinder is necessary for complete relief.

8. Defendant Union is a person within the meaning of 42 U.S.C. § 2000e(a) and is a labor organization within the meaning of 42 U.S.C. §§ 2000e(d) and (e).

9. Defendant Union is the exclusive representative of the JFRD firefighters, including firefighters employed by Defendant Jacksonville who hold the ranks including District Chief (Suppression), Captain (Suppression), Lieutenant (Suppression), and Engineer for the purpose of bargaining collectively terms, conditions, and other practices which bear upon screening and promotion.

## WRITTEN EXAMINATIONS ADMINISTERED SINCE 2004 FOR PROMOTING FIREFIGHTERS TO THE RANKS OF DISTRICT CHIEF (SUPPRESSION), CAPTAIN (SUPPRESSION), LIEUTENANT (SUPPRESSION), AND ENGINEER

10. Defendant Jacksonville, through the JFRD, has maintained and continues to maintain selection procedures by which candidates for promotion to the positions of District Chief (Suppression), Captain (Suppression), Lieutenant (Suppression), and Engineer are screened and promoted.

11. As part of its promotion process for the positions of District Chief (Suppression), Captain (Suppression), Lieutenant (Suppression), and Engineer, Defendant Jacksonville, through the JFRD, has administered and continues to administer, either by itself or through a contractor, written examinations to JFRD candidates.

12. The examinations that are administered are unique to the position sought and the division in which the position is located. As such, the promotional examinations for the ranks of District Chief (Suppression), Captain (Suppression), Lieutenant (Suppression), and Engineer are different from one another.

13. Defendant Jacksonville, through the JFRD, used and continues to use written examinations on a pass/fail basis and to rank-order candidates for selection for promotions.

14. Defendant Jacksonville, through the JFRD, used and continues to use the examinations on a pass/fail basis with the pass point set at 70% pursuant to collective bargaining agreements with Defendant Union. As such, only those candidates who scored 70% or higher on the written examinations are eligible for consideration for promotion.

15. JFRD also used and continues to use the results of the written examinations as part of the rank order process. As such, JFRD candidates who pass the written promotional examinations for a particular rank within a division are placed on eligibility lists in descending

3

rank order based on their written examination scores, with applicable additional seniority and veteran preference points.

16. When vacancies occur, JFRD candidates for a particular rank within a division are selected in strict rank order as their names appear on the eligibility lists. Because of the rank order processing, only those individuals who secured a high score on the written examinations are promoted.

## DISTRICT CHIEF (SUPPRESSION) EXAMINATIONS

17. Since 2006, Defendant Jacksonville, through the JFRD, has used two competitive examination processes in the screening and selection of candidates for promotion to the rank of District Chief (Suppression) in the JFRD. Each of these two competitive processes has involved the administration of written examinations.

18. The first of these competitive examination processes involved the administration of a written examination by Defendant Jacksonville on or about April 2006, and the JFRD used the eligibility list that was generated therefrom from July 2006 until September 2009. The second of these competitive examination processes involved the administration of a written examination by Defendant Jacksonville on or about September 18, 2009, and the JFRD used the eligibility list that was generated therefrom since September 2009.

19. The 2006 and 2009 District Chief (Suppression) examinations were developed by the same private firm that was hired by Defendant Jacksonville.

20. In order to take the examination for District Chief (Suppression), candidates must first have held the positions of Engineer, Lieutenant, and Captain (Suppression).

21. Very few black candidates were eligible to take the District Chief (Suppression) examinations in 2006 and 2009 because, as alleged *infra*, the Captain (Suppression), Lieutenant (Suppression), and Engineer examinations screened out a large number of black candidates.

22. Fifteen of the test takers who took either the 2006 or 2009 District Chief (Suppression) examinations were black. Seventy of the test takers who took either the 2006 or 2009 District Chief (Suppression) examinations were white.

23. While black candidates were able to pass the District Chief (Suppression) examinations in 2006 and 2009, they never scored high enough to be promoted to the position of District Chief.

24. Defendant Jacksonville promoted sixteen individuals to the position of District Chief (Suppression) based on the 2006 and 2009 examinations, none of whom are black.

25. In 2006 and 2009, black candidates who passed the District Chief (Suppression) examination were ranked statistically significantly lower on the eligibility list than white candidates when the results of the examinations are considered together.

## CAPTAIN (SUPPRESSION) EXAMINATIONS

26. Since 2004, Defendant Jacksonville has used two competitive examination processes in the screening and selection of candidates for promotion to the rank of Captain (Suppression) in the JFRD. Each of these two competitive processes involved the administration of written examinations.

27. The first of these competitive examination processes involved the administration of a written examination by Defendant Jacksonville on or about August 27, 2004, and the JFRD used the eligibility list that was generated therefrom from November 2004 until December 2008. The second of these competitive examination processes involved the administration of a written

examination by Defendant Jacksonville on or about December 11, 2008, and the JFRD used the eligibility list that was generated therefrom since December 2008.

28. The 2004 and 2008 Captain (Suppression) examinations were developed by the same private firm that was hired by Defendant Jacksonville.

29. Defendant Jacksonville promoted 49 candidates to the position of Captain (Suppression) based on the 2004 and 2008 Captain (Suppression) examinations.

30. Defendant Jacksonville promoted only one black candidate to the position of Captain (Suppression) based on the 2004 Captain (Suppression) examination.

31. Defendant Jacksonville did not promote any black candidates to the position of Captain (Suppression) based on the 2008 Captain (Suppression) examination.

32. The pass rate for black candidates who took the 2004 Captain (Suppression) examination was statistically significantly lower than the pass rate of white candidates.

33. The pass rate for black candidates who took the 2008 Captain (Suppression) examination was statistically significantly lower than the pass rate of white candidates.

34. The pass rate for black candidates who took either the 2004 or the 2008 Captain (Suppression) examination was statistically significantly lower than the pass rate of white candidates when the results of the examinations are considered together.

35. The promotion rate of black candidates who took either the 2004 or the 2008 Captain (Suppression) examination was statistically significantly lower than the promotion rate of white candidates when the results of the examinations are considered together.

36. The promotion rate of black candidates who passed either the 2004 or the 2008 Captain (Suppression) examination was statistically significantly lower than the promotion rate of white candidates when the results of the examinations are considered together.

37. Black candidates who passed the Captain (Suppression) examination in 2004 or 2009 were ranked statistically significantly lower on the eligibility list than white candidates when the results of the examinations are considered together.

### LIEUTENANT (SUPPRESSION) EXAMINATIONS

38. Since 2004, Defendant Jacksonville has used three competitive examination processes in the screening and selection of candidates for promotion to the rank of JFRD Lieutenant (Suppression). Each of these three competitive processes has involved the administration of written examinations.

39. The first of these competitive examination processes involved the administration of a written examination by Defendant Jacksonville on or about August 26, 2004, and the JFRD used the eligibility list that was generated therefrom from August 2004 until May 2007. The second of these competitive examination processes involved the administration of a written examination by Defendant Jacksonville on or about May 31, 2007, and the JFRD used the eligibility list that was generated therefrom from May 2007 until April 2011. The third of these competitive examination processes involved the administration of a written examination by Defendant Jacksonville on or about April 15, 2011, and the JFRD used the eligibility list that was generated therefrom since April 2011.

40. The 2004 and 2007 Lieutenant (Suppression) examinations were developed by the same private firm that was hired by Defendant Jacksonville. The 2011 examination was developed by a different private firm that was hired by Defendant Jacksonville.

41. Defendant Jacksonville promoted ninety-three candidates to the position of Lieutenant (Suppression) based on the 2004, 2007, and 2011 Lieutenant (Suppression) examinations.

42. Defendant Jacksonville promoted only seven black candidates to the position of Lieutenant (Suppression) based on the 2004, 2007, and 2011 Lieutenant (Suppression) examinations.

43. Six black candidates were promoted to the position of Lieutenant (Suppression) based on the 2004 examination.

44. One black candidate was promoted to the position of Lieutenant (Suppression) based on the 2007 examination.

45. No black candidates were promoted to the position of Lieutenant (Suppression) based on the 2011 examination.

46. The pass rate for black candidates who took the 2004 Lieutenant (Suppression) examination was statistically significantly lower than the pass rate of white candidates.

47. The pass rate for black candidates who took the 2007 Lieutenant (Suppression) examination was statistically significantly lower than the pass rate of white candidates.

48. The pass rate for black candidates who took either the 2004 or the 2007 Lieutenant (Suppression) examination was statistically significantly lower than the pass rate of white candidates when the results of the examinations are considered together.

49. The promotion rate of black candidates who took the either the 2004 or the 2007 Lieutenant (Suppression) examination was statistically significantly lower than the promotion rate of white candidates when the results of the examinations are considered together.

50. Black candidates who passed the Lieutenant (Suppression) examination in 2004 or the 2007 were ranked statistically significantly lower on the eligibility list than white candidates when the results of the examinations are considered together.

51. The pass rate for black candidates who took the 2011 Lieutenant (Suppression) examination was statistically significantly lower than the pass rate of white candidates.

52. Among those candidates who passed the Lieutenant (Suppression) examination in 2011, black candidates were ranked statistically significantly lower on the eligibility list than white candidates.

## ENGINEER EXAMINATIONS

53. Since 2005, Defendant Jacksonville, through the JFRD, has used three competitive examination processes in the screening and selection of candidates for promotion to the rank of Engineer in the JFRD. Each of these three competitive processes involved the administration of a written examination.

54. The first of these competitive examination processes involved the administration of a written examination by Defendant Jacksonville on or about May 5, 2005, and the JFRD used the eligibility list that was generated therefrom from May 2005 until May 2008. The second of these competitive examination processes involved the administration of a written examination by Defendant Jacksonville on or about May 19, 2008, and the JFRD used the eligibility list that was generated therefrom from May 2008 until May 2011. The third of these competitive examination processes involved the administration of a written examination by Defendant Jacksonville on or about June 30, 2011, and the JFRD used the eligibility list that was generated therefrom since July 2011.

55. The 2005 and 2008 Engineer examinations were developed by the same private firm that was hired by Defendant Jacksonville. The 2011 examination was developed by a different private firm that was hired by Defendant Jacksonville.

56. Jacksonville promoted 246 candidates to the position of Engineer based on the 2005, 2008, and 2011 Engineer examinations, only twelve of whom are black.

57. Jacksonville promoted 126 candidates to the position of Engineer based on the 2005 Engineer examination, only six of whom are black.

58. Jacksonville promoted 91 candidates to the position of Engineer based on the 2008 Engineer examination, only five of whom are black.

59. Jacksonville promoted 29 candidates to the position of Engineer based on the 2011 Engineer examination, only one of whom is black.

60. The pass rate for black candidates who took the 2005 Engineer examination was statistically significantly lower than the pass rate of white candidates.

61. The pass rate for black candidates who took the 2008 Engineer examination was statistically significantly lower than the pass rate of white candidates.

62. The pass rate for black candidates who took either the 2005 or the 2008 Engineer examinations was statistically significantly lower than the pass rate of white candidates when the results of the two examinations are considered together.

63. The pass rate for black candidates who took the 2011 Engineer examination was statistically significantly lower than the pass rate of white candidates.

64. The promotion rate for black candidates who took the 2005 Engineer examination was statistically significantly lower than the promotion rate of white candidates.

65. The promotion rate for black candidates who took the 2008 Engineer examination was statistically significantly lower than the promotion rate of white candidates.

66. The promotion rate for black candidates who took either the 2005 or the 2008 Engineer examinations was statistically significantly lower than the promotion rate of white candidates when the results of the two examinations are considered together.

67. The promotion rate of black candidates who took the 2011 Engineer examination was statistically significantly lower than the promotion rate of white candidates.

68. Among those candidates who passed the 2005 Engineer examination, the promotion rate of black candidates was statistically significantly lower than the promotion rate of white candidates.

69. Among those candidates who passed the 2008 Engineer examination, the promotion rate of black candidates was statistically significantly lower than the promotion rate of white candidates

70. Among those candidates who passed either the 2005 or the 2008 Engineer examination, the promotion rate of black candidates was statistically significantly lower than the promotion rate of white candidates when the results of the two examinations are considered together.

71. Among those candidates who passed the Engineer examination in 2011, the promotion rate of black candidates is statistically significantly lower than the promotion rate of white candidates.

72. Among those candidates who passed the Engineer examination in 2005, black candidates ranked statistically significantly lower than white candidates on the eligibility list.

73. Among those candidates who passed the Engineer examination in 2008, black candidates ranked statistically significantly lower than white candidates on the eligibility list.

74. Black candidates who passed the 2005 or the 2008 Engineer examination were ranked statistically significantly lower on the eligibility list than white candidates when the results of the examinations are considered together.

75. Among those candidates who passed the 2011 Engineer examination, black candidates ranked statistically significantly lower than white candidates on the eligibility list.

## THE UNITED STATES' PATTERN OR PRACTICE CLAIM PURSUANT TO § 707 OF TITLE VII

76. Plaintiff United States realleges Paragraphs 1 through 75, *supra*, as if fully set forth herein.

77. Defendant Jacksonville's use of the of the 2006 and 2009 written examinations for the position of District Chief (Suppression); 2004 and 2008 written examinations for the position of Captain (Suppression); 2004, 2007, and 2011 written examinations for the position of Lieutenant (Suppression); and 2005, 2008, and 2011 written examinations for the position of Engineer result in disparate impact upon black candidates, is not job related for the positions in question and not consistent with business necessity, and otherwise does not meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k).

78. Defendant Jacksonville has pursued and continues to pursue policies and practices that discriminate against blacks and that deprive or tend to deprive blacks of employment opportunities because of their race, in violation of Section 707 of Title VII, 42 U.S.C. § 2000e-6. Defendant Jacksonville has implemented these policies and practices, among other ways, by:

   a. failing or refusing to appoint black candidates to the ranks of District Chief (Suppression), Captain (Suppression), Lieutenant (Suppression), and Engineer on the same basis as white candidates;

b. using, in the screening and selection of candidates for appointment to the ranks of District Chief (Suppression), Captain (Suppression), Lieutenant (Suppression), and Engineer, through its competitive examination process, written examinations as pass/fail screening devices, where such use of the written examinations results in disparate impact upon black candidates, is not job related for the positions in question and consistent with business necessity and does not otherwise meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k);

c. rank-order processing of candidates, in the screening and selection of candidates for appointment to the ranks of District Chief (Suppression), Captain (Suppression), Lieutenant (Suppression), and Engineer, through its competitive examination process, which results in disparate impact upon blacks, is not job related for the positions in question and consistent with business necessity and does not otherwise meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k);

d. failing or refusing to take appropriate action to correct the present effects of its discriminatory policies and practices; and

e. failing or refusing to "make whole" those black candidates for promotion to the ranks of Captain (Suppression), Lieutenant (Suppression), and Engineer who have been harmed by its unlawful use of its written examinations.

79. In accordance with Section 707 of Title VII, 42 U.S.C. § 2000e-6, the United States, through the Department of Justice, has conducted an investigation of the policies and practices of Defendant Jacksonville with respect to its screening and selection of JFRD candidates for promotion to the ranks of District Chief (Suppression), Captain (Suppression), Lieutenant (Suppression), and Engineer as such practices affect black candidates, has notified Defendant

Jacksonville of that investigation and of the United States' determination that the policies and practices described in Paragraphs 1 through 75, *supra*, are unlawful.

80. All conditions precedent to the filing of suit have been performed or have occurred.

81. The policies and practices of Defendant Jacksonville described in paragraphs 1 through 75, *supra*, constitute a pattern or practice of resistance to the full enjoyment by blacks of their right to equal employment opportunities without discrimination based upon race, in violation of Section 707 of Title VII, 42 U.S.C. § 2000e-6. This pattern or practice is of such a nature as to deny the full exercise of the rights secured by Title VII. Unless restrained by order of this Court, Defendant Jacksonville will continue to pursue policies and practices that are the same as or similar to those alleged in this Complaint.

WHEREFORE, Plaintiff United States prays for an order enjoining Defendant Jacksonville, its officers, agents, employees, successors and all persons in active concert or participation with them, from engaging in discriminatory employment practices against blacks on the basis of race, and specifically from:

    a.     failing or refusing to appoint black candidates to the ranks of District Chief (Suppression), Captain (Suppression), Lieutenant (Suppression), and Engineer on the same basis as white candidates;

    b.     using, in the screening and selection of candidates for appointment to the ranks of District Chief (Suppression), Captain (Suppression), Lieutenant (Suppression), and Engineer, written examinations as pass/fail screening devices, where such use of the written examinations results in disparate impact upon blacks, is not job related for the positions in question and consistent with business necessity and

   does not otherwise meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k);

c.  rank-order processing of candidates, in the screening and selection of candidates for appointment to the ranks of District Chief (Suppression), Captain (Suppression), Lieutenant (Suppression), and Engineer through its examination process, based on the candidates' written examination scores, adjusted for seniority and veterans' preference, where such use of candidates' written examination scores results in disparate impact upon blacks, is not job related for the positions in question and consistent with business necessity and does not otherwise meet the requirements of Section 703(k) of Title VII, 42 U.S.C. § 2000e-2(k);

d.  failing or refusing to take appropriate action to correct the present effects of its discriminatory policies and practices;

e.  failing or refusing to "make whole" those black candidates for promotion to the ranks of Captain (Suppression), Lieutenant (Suppression), and Engineer who have been harmed by the unlawful use of its written examinations including, but not limited to, failing or refusing to provide promotions, back pay, and retroactive seniority; and

f.  failing or refusing to take other appropriate non-discriminatory measures to overcome the effects of its discriminatory policies and practices.

Plaintiff United States prays for such additional relief as justice may require, together with its costs and disbursements in this action.

| | |
|---|---|
| ROBERT E. O'NEILL<br>U.S. Attorney | THOMAS E. PEREZ<br>Assistant Attorney General<br>Civil Rights Division<br><br>_____<br>DELORA L. KENNEBREW (GA Bar No. 414320)<br>Chief<br>Employment Litigation Section |
| E. KENNETH STEGEBY<br>Assistant U.S. Attorney<br>USO No. 112<br>YOHANCE A. PETTIS<br>Florida Bar No. 021216<br>400 N. Tampa St., Suite 3200<br>Tampa, Florida 33602<br>Telephone: (813) 274-6000<br>Facsimile: (813) 274-6200<br>Email: yohance.pettis@usdoj.gov | _____<br>SHARYN A. TEJANI (DC Bar No. 456150)<br>Special Litigation Counsel<br>Email: sharyn.tejani@usdoj.gov<br><br>_____<br>JAY ADELSTEIN (DC Bar No. 396257)<br>Email: jay.d.adelstein@usdoj.gov<br>HECTOR RUIZ (TX Bar. No. 24029814)<br>Email: hector.ruiz@usdoj.gov<br>Senior Trial Attorneys<br>U.S. Department of Justice<br>Civil Rights Division<br>Employment Litigation Section<br>950 Pennsylvania Avenue, NW<br>Patrick Henry Building, Room 4026<br>Washington, DC 20530 |
| Attorneys for Plaintiff<br>United States of America | Telephone: (202) 514-3749<br>Facsimile: (202) 514-1005 |