# EXHIBIT C

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

| | |
|---|---|
| United States of America,<br>     *Plaintiff*, | )<br>)<br>) |
| Jacksonville Brotherhood of Firefighters,<br>Jacksonville Branch of NAACP, et al.,<br>     *Plaintiff Intervenors*,<br>v. | )<br>)<br>)<br>)<br>)  Case No. 3:12-cv-00451-J-32MCR |
| Consolidated City of Jacksonville,<br>Jacksonville Association of Firefighters,<br>Local 122, IAFF,<br>     *Defendants*. | )<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF BERNARD R. SISKIN, Ph.D.,

Pursuant to 28 U.S.C. Section 1746, I declare under penalty of perjury that the following is true and correct.

1. I am a Director of BLDS, LLC, a specialty consulting firm. I specialize in the application of statistics to the analysis of employment practices. Prior to joining BLDS, I did similar work at the specialty consulting firms, LECG, LLC, the Center for Forensic Economic Studies, Inc., and National Economic Research Associates (NERA). Prior to that, I was a tenured faculty member and Chairman of the Department of Statistics at Temple University in Philadelphia. I received my Ph.D. in Statistics with a minor in Econometrics from the Wharton School of the University of Pennsylvania in 1970. I have been retained by numerous private organizations such as Exxon, Merck Pharmaceuticals, Minnesota Manufacturing & Mining (3M), and governmental entities including, but not limited to, the Third Circuit Task Force on Race and Gender, the Equal Employment Opportunity Commission (EEOC), the U.S. Departments of Justice and Labor, the Consumer Financial

Protection Bureau (CFPB) and the Federal Bureau of Investigation. I have been retained by the United States Department of Justice in connection with this case and am currently being compensated at a rate of $475.00 per hour.

2. I prepared a report on October 7, 2013, in this case regarding the impact and practical effects of ten promotional examinations administered by the City of Jacksonville Fire and Rescue Department – Engineer (2005, 2008 and 2011); Lieutenant (Suppression) (2004, 2007 and 2011); Captain (Suppression) (2004 and 2008) and District Chief (Suppression) (2006 and 2009).

3. I was asked to prepare an expert report in this case and a rebuttal report addressing the reports prepared and deposition testimony given by defendants' experts.

4. I was deposed in this case on January 27, 2014.

5. On February 10, 2014, the defendant City of Jacksonville submitted an expert report prepared by Dr. Palmer Morrel-Samuels. Shortly after the submission, I received a copy of the report.

6. Dr. Morrel-Samuels was deposed on March 4, 2014. I attended that deposition.

7. In his report and in his deposition testimony, Dr. Morrel-Samuels states that he constructed a metafile containing information about 2106 firefighters.

8. Dr. Morrel-Samuels used the data in the metafile to conduct six separate analyses on six subsets of the large data file – (1) Test/ Retest (2 data subsets); (2) Raw Score; (3) Adjusted Score; (4) Rank score; and (5) Pass/Fail.

9. According to his report, the observations in each of the data subsets are significantly smaller than the 2106 observations in the metafile.

2

10. According to his report, Dr. Morrel-Samuels relied on 1024 observations in both of his Test/ Retest analyses (512 individuals who took two examinations).

11. According to his report, Dr. Morrel-Samuels relied on 617 observations in his Adjusted Test Score analysis.

12. According to his report, Dr. Morrel-Samuels relied on 617 observations in his Raw Test Score analysis.

13. According to his report, Dr. Morrel-Samuels relied on 617 observations in his Rank of Adjusted Scores analysis.

14. According to his report, Dr. Morrel-Samuels relied on 734 observations in his Pass/ Fail analysis.

15. I received a copy of the metafile. I have attempted to identify the actual observations used for each of Dr. Morrel-Samuels's six data subsets but have not been successful. I understand that the City indicated that Dr. Morrel-Samuels arrived at the number of observations in each subset by removing individuals who had "blanks" or no data in the relevant column(s). However, my number of observations after removing "blanks" frequently does not match his.

16. In his report, Dr. Morrel- Samuels states that he examined 512 employees who took two tests. I can identify the 512 employees who are in the metafile as having registered for two tests. However, of those 512 firefighters only 449 actually took the two test tests (are listed as having a non-zero raw score). The 63 other employees actually did not take two tests. I cannot tell from Dr. Morrel-Samuels's report whether his analyses used individuals with scores of zero. I also cannot tell whether he used the same observations for both analyses.

3

17. Relating to the 734 employees in the Pass/Fail analyses, after removing the observations with blank data cells as described in the City's letter, I could only identify 721 employees.

18. Relating to the three analyses that use 617 employees, I believe that I have identified the 617 employees, after removing the observations with blank data cells as described in the City's letter.

19. As indicated in paragraphs 15-17 above, I have made reasonable and good faith efforts to match Dr. Morrel-Samuels's claims regarding the data he used, but have been unsuccessful.

20. This issue could be easily resolved if the City provided the EID Numbers of the relevant employees.

I swear under penalty of perjury that the above is true and correct.

Date: March 25, 2014

Bernard R. Siskin, Ph. D.