UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

JACKSONVILLE BROTHERHOOD OF
FIREFIGHTERS, NAACP, *et al.*,

    Plaintiff Intervenors,

v.                                    CASE NO. 3:12-cv-451-J-32MCR

CONSOLIDATED CITY OF JACKSONVILLE,
and JACKSONVILLE ASSOCIATION OF
FIREFIGHTERS, LOCAL 122,
INTERNATIONAL ASSOCIATION OF
FIREFIGHTERS,

    Defendants.
_____/

**ORDER**

**THIS CAUSE** is before the Court on Plaintiff's Motion to Compel ("Motion") (Doc. 206), Plaintiff's Memorandum in Support thereof (Doc. 207), Defendant City of Jacksonville's Response in Opposition thereto ("Response") (Doc. 209), and Plaintiff's Reply in Support of Motion ("Reply") (Doc. 214).[1] For the reasons stated herein, the Motion is due to be **GRANTED**.

**I.**    **Background**

On April 23, 2012, the United States brought this action to enforce the

---

[1] The Reply was filed pursuant to the Court's October 21, 2015 Endorsed Order. (Doc. 211.)

provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended. (Doc. 1, ¶ 1.) The United States alleges that the Consolidated City of Jacksonville ("COJ"), through its Fire and Rescue Department ("JFRD"), has used and continues to use written examinations on a pass/fail basis, as well as on a rank-order basis, for screening and selecting candidates for promotion to the ranks of District Chief (Suppression), Captain (Suppression), Lieutenant (Suppression), and Engineer, and such use has resulted in a disparate impact on African-American candidates, is not job-related and consistent with business necessity for the positions in question, and does not otherwise meet the requirements of Title VII. (*Id.*)

On June 9, 2015, the Court entered an Order on the parties' motions for summary judgment finding that Plaintiffs had made the necessary *prima facie* showing of disparate impact to warrant the continuance of this lawsuit. (Doc. 202.) At the next phase, the COJ bears the burden of proving that its use of the examinations is job-related and consistent with business necessity.

On October 1, 2015, the United States filed the present Motion seeking to compel the production of a document, *i.e.*, the "Donnelly document" or "Anthony document,"[2] of which the United States first learned in connection with the August 5, 2015 deposition of Keisha Anthony (Wicks), Ph.D., the COJ's former Industrial-

---

[2] The document was designated as the "Donnelly document" by COJ's counsel during Dr. Anthony's deposition. (Doc. 207 at 3 n.2.) Then, through the errata sheet, Dr. Anthony sought to modify the designation to call it the "Anthony document." (*Id.*)

Organizational Psychologist.[3] The "Donnelly document" allegedly reflects Dr. Anthony's opinions, suggestions, and summary of the JFRD's promotional testing procedures. The United States argues that information from Dr. Anthony as to her views regarding the validity of the examinations is clearly relevant to this case because her conclusions seriously undercut the COJ's argument that its use of the tests is job-related and consistent with business necessity.

Since Dr. Anthony's deposition, the COJ has maintained that the Donnelly document is protected by the attorney-client privilege and the work product doctrine. However, the United States argues that the Donnelly document is neither privileged nor protected work product, and it contains information that cannot be obtained by the United States from any other source.

First, the United States contends that the document is not protected by the attorney-client privilege because Dr. Anthony's testimony establishes that she prepared the document on her own accord, and the COJ has not provided any evidence that Dr. Anthony created the document at the direction of counsel or one of her superiors who was acting in response to legal advice provided by counsel. The United States points out that the COJ incorrectly relies on Florida

---

[3] The United States asserts that this document is also responsive to its July 5, 2013 First Requests for Production (Doc. 207-1), which sought, *inter alia*, all job analysis reports and final reports for JFRD promotion examinations, all documents related to the administration of promotion examinations, all documents that describe the promotion process, all documents that describe the provisional promotion process in place from 2002 to the present, etc.

law, but even if Florida law applied and the subject matter of the communication was within the scope of Dr. Anthony's job duties, Florida law also requires that the COJ prove Dr. Anthony made the communication at the direction of her superior and her superior made the request as part of the COJ's effort to secure legal advice or services. Further, even if the Donnelly document was protected by the attorney-client privilege, the United States contends that the COJ has failed to establish that the underlying facts contained within the document are protected, and, thus, at a minimum, the facts in the Donnelly document should be disclosed.

Second, the United States contends that Dr. Anthony's testimony also establishes that the work product doctrine does not apply to the Donnelly document because Dr. Anthony created the document in the ordinary course of her business, and on her own accord, without direction from counsel or her supervisors, to summarize her own opinion regarding one of her primary duties and her area of expertise. The United States submits that the COJ has offered no evidence that Dr. Anthony prepared the document principally or exclusively to assist in anticipated or ongoing litigation. The United States explains:

> Dr. Anthony's sworn testimony was that she "decided to create the document to summarize her opinion and suggestions" regarding the JFRD testing process. (Pl. Mt., Ex. 3, at 19:7-18). That she may have later relied on the document, created wholly on her own accord, during a conversation with the United States does not establish that she prepared the document in anticipation of litigation. Neither of the affidavits provided by the City establish any facts that are contrary to

4

> Dr. Anthony's sworn testimony as to why she created the document. The City's evidence also fails to establish that the Donnelly document was created for a specific meeting.

(Doc. 214 at 3-4.)

The COJ responds that the Donnelly document is protected by both the attorney-client privilege and the work-product doctrine under Florida law, because it "was prepared for discussion prior to, and in preparation for, a telephone conference with the Department of Justice concerning the very issues in this litigation." (Doc. 209 at 2.) The COJ states that the document was originally prepared by someone else in 2010 as potential "talking points" for prior mediation sessions. Dr. Anthony received a copy of the document a few days prior to the scheduled settlement conference, made some additions to the document, and proceeded to use it as a list of talking points during the settlement conference with the United States. As such, the COJ asserts that the Donnelly document "was not merely a reflection of [Dr. Anthony's] opinions, but was in fact grounded on discussions pertaining to this imminent litigation and possible settlement." (*Id.* at 4.)

Finally, even if the work product doctrine applies, the United States argues that it has a substantial need for the materials, which cannot be obtained by the United States by other means, given that the COJ has completed its search for other documents prepared by Dr. Anthony and has failed to locate any of the additional documents that Dr. Anthony testified she had created and stored on

5

the COJ's secured computer drive. The United States explains:

> Dr. Anthony's determination that job knowledge represents just 12% of the job domain for a position within the JFRD, given the City's adherence to promotional tests that only test for job knowledge, is of critical importance to Plaintiff's case. Thus, even if the City could meet its burden of proof, the document should be disclosed to the United States because it is highly relevant and the City has failed to maintain or produce the job analyses conducted by Dr. Anthony. . . . At this time, the Donnelly document may represent the *only* documentation, that Defendant has maintained, which would allow Plaintiff to substantiate Dr. Anthony's conclusions and prove that the City's own study showed that the content of the promotional examinations at issue was not representative of the content of the jobs at issue.

(Doc. 207 at 9.)

The COJ responds that the United States does not have a substantial need for the document as "the United States cannot show that the document at issue *does* pertain to any alleged and relevant job analyses, or even that it would include any reference to such analyses," because Dr. Anthony "never stated that she conducted and completed any relevant job analyses for the ranks at issue; in fact, she could not recall exactly what job analyses she completed." (Doc. 209 at 7-8.) The COJ states: "At most, Dr. Anthony vaguely testified that she *may* have completed one or two job analyses, and she did not know if these were for Suppression, Rescue, or Prevention." (*Id.* at 8.)

In its Reply, the United States responds:

> To date, the City has produced incomplete records of Dr. Anthony's job analysis materials and has failed to produce *any* document reflecting Dr. Anthony's conclusions that job knowledge (the sole

6

> focus of the examinations at issue) represented less than 25% of the job domain for the position of District Chief (Suppression) and just 12% of the job domain for another position she analyzed.

(Doc. 214 at 5.)

## II.     Standard

Motions to compel discovery under Rule 37(a) are committed to the sound discretion of the trial court. *Commercial Union Insurance Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984). The trial court's exercise of discretion regarding discovery orders will be sustained absent a finding of abuse of that discretion to the prejudice of a party. *See id.*

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed.R.Civ.P. 26(b)(1). The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts. *See United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682 (1958). Courts construe relevancy "broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

When the Court is called upon to analyze questions of privilege in a federal question case, such as this one, the Court must analyze them under federal

common law.  *See, e.g.*, *Universal City Dev. Partners, Ltd. v. Ride & Show Engineering, Inc.*, 230 F.R.D. 688, 690 (M.D. Fla. 2005) ("In federal question cases, privileges are determined under federal common law."); *see also Hancock v. Hobbs*, 967 F.2d 462, 466 (11th Cir. 1992) ("Courts that have confronted this issue in the context of the discoverability of evidence have uniformly held that federal law of privilege governs even where the evidence sought might be relevant to a pendent state claim.")  "The party asserting the privilege has the burden of proving the existence of the privilege."  *Id*. (citing *United States v. Schaltenbrand*, 930 F.2d 1554, 1562 (11th Cir. 1991)).

To satisfy this burden, the party asserting the privilege must make an "evidentiary showing based on competent evidence," rather than "mere conclusory or *ipse dixit* assertions."  *CSX Transp., Inc. v. Admiral Ins. Co.*, 1995 WL 855421, at *1 (M.D. Fla. July 20, 1995) (internal quotations and citations omitted).  The party asserting the privilege must provide the court with underlying facts demonstrating the existence of the privilege, which may be accomplished by an affidavit.  *United States v. Osborn*, 561 F.2d 1334, 1339 (9th Cir. 1977).  "Unless the affidavit is precise to bring the document within the rule, the Court has no basis on which to weigh the applicability of the claim of privilege.  An improperly asserted claim of privilege is no claim of privilege at all."  *Int'l Paper Co. v. Fibreboard Corp.*, 63 F.R.D. 88, 94 (D. Del. 1974).

To invoke the attorney-client privilege, a party must prove that "an attorney-client relationship existed and that the particular communications were confidential." *Schaltenbrand*, 930 F.2d at 1562. "In order to show that communications made to an attorney are within the privilege, it must be shown that 'the communication was made to him confidentially, in his professional capacity, for the purpose of securing legal advice or assistance." *Id.*

"The work product doctrine was created to allow attorneys to make careful and thoughtful preparation for litigation, without fear that their adversaries will unfairly benefit from their efforts." *Bridgewater v. Carnival Corp.*, 286 F.R.D. 636, 639 (S.D. Fla. 2011) (citing *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947)). The doctrine was first recognized by the Supreme Court in *Hickman v. Taylor* and is now also codified in Fed.R.Civ.P. 26(b)(3). It offers qualified protection for materials that are: (1) documents or tangible things, (2) prepared in anticipation of litigation, (3) by or for a party or its representative.[4] *Bridgewater*, 286 F.R.D. at 639. "[L]itigation need not necessarily be imminent, . . . as long as the primary motivating purpose behind the creation of the document was to aid in possible litigation." *Hancock Bank v. Hill Street, L.L.C.*, 2013 WL 6815055, *6 (M.D. Fla. Dec. 24, 2013) (citing *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir.

---

[4] The work product doctrine does not require that the material is prepared or even reviewed by an attorney. *Denture Cream Products Liability Litigation*, 2012 WL 5057844, *13 (S.D. Fla. Oct. 18, 2012).

1981)). *But see* In re: *Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998) ("The 'testing question' for the work-product privilege . . . is 'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation.'") (emphasis added).[5]

"Documents created for a concurrent purpose, i.e., not made 'because of' the anticipation of litigation but rather for other purposes in addition to the preparation for litigation, are not protected by work-product immunity." *Maplewood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 621 (S.D. Fla. 2013). Also, "documents drafted in the ordinary course of business are not protected." In re *Denture Cream Prods. Liab. Litig.*, 2012 WL 5057844, *7 (S.D. Fla. Oct. 18, 2012); *see also AARP v. Kramer Lead Mktg. Grp.*, 2005 U.S. Dist. LEXIS 36970, *6 (M.D. Fla. July 26, 2005) (stating that work product protections "typically apply 'only to documents prepared principally or exclusively to assist in anticipated or ongoing litigation'"). As such, the Court "must determine what purpose was the 'driving force' behind the creation of the document." *Tillman*,

---

[5] In *Tillman v. C.R. Bard, Inc.*, Case No.: 3:13-cv-222-J-34JBT (M.D. Fla. Mar. 10, 2015), Judge Howard observed that although some district courts within the Eleventh Circuit have moved away from applying the "primary purpose" test based on an interpretation of *Davis* as dicta, and identification of *Hoover v. U.S. Dep't of the Interior*, 611 F.2d 1132 (5th Cir. 1980), as potentially contradictory prior precedent, the Eleventh Circuit Court of Appeals has not yet considered the issue and many courts in this district still apply the primary purpose standard.

Case No.: 3:13-cv-222-J-34JBT, at 9 (citing *United States v. Roxworthy*, 457 F.3d 590, 595 (6th Cir. 2006)).

However, these materials may be discovered if they are otherwise discoverable under Rule 26(b)(1), and the party shows that it has substantial need for the materials and cannot obtain them, or their substantial equivalent, by other means without undue hardship. Fed.R.Civ.P. 26(b)(3)(A).[6] Further, "the word product doctrine does not protect facts contained in documents prepared in anticipation of litigation." In re *Denture Cream Prods. Liab. Litig.*, 2012 WL 5057844, at *7; *see also* In re: *Sealed Case*, 146 F.3d at 888 ("With respect to documents the court finds to have been prepared 'in anticipation of litigation,' the court should examine them . . . to determine whether they contain purely factual materials, or instead represent the opinions, judgments, and thought processes of counsel.").

---

[6] "If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed.R.Civ.P. 26(b)(3)(B). Here, the COJ does not contend that the Donnelly document contains attorney opinion work product.

11

### III.  Discussion

The relevancy of the Donnelly document cannot seriously be disputed.[7] Therefore, the Court needs to determine whether the COJ has met its burden of showing under federal common law that the attorney-client privilege and the work product privilege bar production of the document.

The COJ's claim of attorney-client privilege is rejected because it has not shown that the Donnelly document was prepared for the purpose of obtaining legal advice.  The evidence shows that the document was prepared by Dr. Anthony, on her own accord, to "put down [her] thoughts relating to the position that the city was in at the time."  (Anthony Dep. 15:8-15:12 ("I chose to create it and then I shared it.").)  It contained Dr. Anthony's opinions and facts relating to the testing process that the COJ was utilizing at the time.  (Anthony Dep. 15:13-15:14, 15:24-15:25.)  Dr. Anthony did not have any discussions in regards to the Donnelly document with anyone at the COJ's Office of General Counsel and was not asked by her supervisor at the time to prepare the document or conduct any job analyses prior to any meetings with counsel and/or the United States.  (Anthony Dep. 20:3-20:6; Conrad Dep. 72:13-73:19.)  The affidavits submitted by

---

[7] The COJ argues that the Donnelly document does not contain the relevant information sought by the United States because Dr. Anthony's revised testimony indicates that she completed the interpretation and job analysis report for only one or two of the promotional positions, even though she administered the job analysis questionnaires for all positions.  (Anthony Dep. 84:4, 192.)  The Court is unconvinced that the relevancy of the Donnelly document is undermined by Dr. Anthony's revised testimony.

the COJ do not show that the Donnelly document was prepared for the purpose of obtaining legal advice. Therefore, even assuming that the rest of the elements of the attorney-client privilege have been satisfied, the COJ's claim of attorney-client privilege is rejected.

The COJ's claim of work product privilege is also rejected because it appears that the Donnelly document was created in the ordinary course of Dr. Anthony's business, and the COJ has not established that the document was created principally or exclusively to assist in anticipated or ongoing litigation. As stated earlier, the Donnelly document was prepared by Dr. Anthony, on her own accord, to "put down [her] thoughts relating to the position that the city was in at the time." (Anthony Dep. 15:8-15:12 ("I chose to create it and then I shared it.").) The evidence does not indicate that the document was prepared because of the prospect of litigation or that the primary motivating purpose behind its creation was to aid in possible litigation. Even assuming that the driving force behind the creation of the "Poppell document," which was created in 2010 and forwarded to Dr. Anthony in February of 2012, was to aid in litigation, which the Court cannot conclude at this time, Dr. Anthony revised that document, adding her own opinions and thoughts. (Teodorescu Aff. ¶ 6 (stating that the Poppell document "appears to be a document prepared for, and used during, mediation").)

Even if Dr. Anthony later relied on the Donnelly document during a meeting with the United States, it does not change the fact that she initially decided to create the document on her own, without direction from counsel or her supervisors, in order to put down her thoughts, opinions, and facts relating to the testing procedures. It was Dr. Anthony's responsibility in the normal course of business to oversee the COJ's testing and test development work, and to conduct job analyses for some of the promotional positions within the fire department, such as engineer, lieutenant, and district chief, which she stored in the COJ's secure drive. (Anthony Dep. 65:3-65:4, 71:9-71:12, 71:20-71:22, 80:24-81:13, 83:12-83:24, 86:6-86:19, 192.) Just because the document may have later been used to assist in litigation or settlement does not mean it was principally prepared for such purpose. As such, the Donnelly document is not protected by the work product privilege. In light of this conclusion, the Court need not decide whether the United States has a substantial need for the document and whether it cannot be obtained by other means without undue hardship. Therefore, the Motion is due to be granted.[8]

Accordingly, it is **ORDERED**:

The Motion (**Doc. 206**) is **GRANTED**. The COJ shall provide the Donnelly document to the United States within **ten (10) days** of the date of this Order.

---

[8] The Court finds the COJ's objection was substantially justified; therefore, an award of expenses to the United States is not appropriate. See Fed.R.Civ.P. 37(a)(5)(A).

**DONE AND ORDERED** at Jacksonville, Florida, on November 13, 2015.

_____
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record