# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

| | | |
|---|---|---|
| United States of America,<br>　　　Plaintiff, | ) <br> ) <br> ) | Case No. 3:12-cv-451-J-32MCR |
| Jacksonville Brotherhood of Fire Fighters,<br>Jacksonville Branch of NAACP, et al.,<br>　　　Plaintiff Intervenors, | ) <br> ) <br> ) <br> ) | |
| v. | ) <br> ) | |
| Consolidated City of Jacksonville,<br>Jacksonville Association of Fire Fighters,<br>Local 122, IAFF,<br>　　　Defendants. | ) <br> ) <br> ) <br> ) <br> ) | |
| Rufus Smith, et al.,<br>　　　Plaintiffs, | ) <br> ) <br> ) | Case No. 3:11-cv-345-J-32MCR |
| v. | ) <br> ) | |
| Consolidated City of Jacksonville,<br>Jacksonville Association of Fire Fighters,<br>Local 122, IAFF,<br>　　　Defendants. | ) <br> ) <br> ) <br> ) <br> ) | |
| Equal Employment Opportunity<br>Commission,<br>　　　Plaintiff, | ) <br> ) <br> ) | Case No. 3:12-cv-491-J-32MCR |
| v. | ) <br> ) | |
| Jacksonville Association of Fire Fighters,<br>Local 122, IAFF,<br>　　　Defendant. | ) <br> ) <br> ) <br> ) | |

## JOINT MOTION FOR PROVISIONAL ENTRY OF CONSENT DECREE AND SCHEDULING OF A FAIRNESS HEARING AND SUPPORTING MEMORANDUM OF LAW

The Parties in the above-styled cases jointly move the Court: (1) to provisionally enter the Consent Decree filed contemporaneously with the Parties' Joint Motion for Provisional Entry of Consent Decree and Scheduling of a Fairness Hearing ("Joint Motion") and supporting Memorandum of Law; and (2) to schedule a Fairness Hearing on the Terms of the Consent Decree no less than 100 days from the date of the Court's order on this Joint Motion, as provided in Paragraph 18 of the Consent Decree.

The Consent Decree will resolve all claims in these three actions that challenge the promotion practices of the City of Jacksonville Fire and Rescue Department.  The Fairness Hearing on the Terms of the Consent Decree would allow the Court to hear any objections to the terms of the Consent Decree and to decide whether to enter the Consent Decree as a final order.

As set forth in the accompanying Memorandum of Law, the Court should provisionally enter the Consent Decree because its terms are fair, adequate, reasonable, and consistent with federal law.  Accordingly, the Parties respectfully request that the Court provisionally enter the Consent Decree and schedule a Fairness Hearing on the Terms of the Consent Decree no less than 100 days from the date of the Court's Order on this Joint Motion.

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR PROVISIONAL ENTRY OF CONSENT DECREE AND SCHEDULING OF A FAIRNESS HEARING**

**I.    INTRODUCTION**

The Parties submit this Memorandum of Law in Support of the Parties' Joint Motion for Provisional Entry of Consent Decree and Scheduling of a Fairness Hearing.[1]  If approved and entered by the Court, the proposed Consent Decree ("Decree") (attached as Exhibit 1), will resolve all claims in these three actions that challenge the promotion practices of the City of

---

[1] This Motion paraphrases portions of the Consent Decree. To the extent any language in this Motion is interpreted as inconsistent with the Consent Decree, the Parties agree that the language in the Consent Decree prevails.

Jacksonville Fire and Rescue Department ("JFRD").  The Decree establishes a process for developing new promotion examinations within the JFRD, and provides for possible pension adjustments, promotions, and a gross amount of $2.75 million in monetary relief to persons not promoted after sitting for one of the challenged exams.  In addition, the Decree provides $750,000 as specific monetary relief, to be distributed by Plaintiffs, in a manner determined solely by them, and $1.4 million in attorneys' fees to private counsel.[2]

## II.     PROCEDURAL BACKGROUND

Pursuant to Section 707 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-6, the United States filed civil action 3:12-cv-451-J-32MCR against the City on April 23, 2012. The complaint alleged that the City engaged in a pattern or practice of unintentional discrimination by administering promotion examinations that had an unlawful disparate impact on African Americans.  In addition, the United States alleged that the examinations were not job related and consistent with business necessity.  The Jacksonville Association of Fire Fighters, Local 122, IAFF ("Union") was named as a defendant pursuant to Federal Rule of Civil Procedure 19(a)(1)(A) to effectuate complete relief.

The United States' complaint challenged the City's rank-order use of eligibility scores for the 2006 and 2009 examinations for promotion to District Chief (Suppression); and the City's pass/fail and rank-order use of eligibility scores for examinations for promotion to Engineer in 2005, 2008, and 2011, to Lieutenant (Suppression) in 2004, 2007, and 2011, and to Captain (Suppression) in 2004 and 2008.  The United States alleged that the disparate impact resulting from the City's examinations reduced African-American promotions by 59 positions.

---

[2] Pages 6-7 of the attached Consent Decree explain the factual background pertaining to the JFRD's promotion practices.  *See* Exhibit 1.

The Court allowed the National Association for the Advancement of Colored People, Jacksonville Branch ("NAACP"), Jacksonville Brotherhood of Fire Fighters ("JBOF"), and 13 named individuals ("Baker Intervenors") to intervene in the action by the United States, and the Court consolidated the action with civil action 3:11-cv-345-J-32MCR, brought by several individual plaintiffs ("Smith Plaintiffs").  NAACP, JBOF, and the Baker Intervenors filed a complaint in intervention, seeking to represent a class (that was never certified) defined as "all present or past African-American candidates for promotion to Engineer, Lieutenant (Suppression), Captain (Suppression), and/or District Chief (Suppression) from July 30, 2006 to the present" ("Intervenor Class").  The complaint filed by the Smith Plaintiffs alleged that eight of the JFRD promotion examinations administered between 2006 and 2011 had a disparate impact on African Americans and also constituted disparate treatment against them because of their race, in violation of Title VII and the Florida Civil Rights Act.  It also alleged claims of racial discrimination by the Union in violation of 42 U.S.C. § 1981, based on the contention that the Union is responsible for the City's use of discriminatory promotion tests.[3]

The Equal Employment Opportunity Commission ("EEOC") filed civil action 3:12-cv-491-J-32MCR against the Union on April 30, 2012.  The EEOC's complaint alleged that the Union violated Title VII by purposefully negotiating and advocating for a discriminatory promotion process that resulted in the City's disparate impact violation against African

---

[3] The claims of the Smith Plaintiffs have been divided between two complaints.  The first, "Complaint A" (filed in civil action 3:12-cv-451-J-32MCR), asserts Title VII disparate impact claims against the City related to promotion examinations for Engineer (2008 and 2011), Lieutenant (Suppression) (2007 and 2011), Captain (Suppression) (2008), and District Chief (Suppression) (2006).  The second, "Complaint B" (filed as civil action 3:11-cv-345-J-32MCR), asserts disparate treatment claims against the Union, and disparate impact and disparate treatment claims against the City, including claims related to the Captain (Rescue) (2008) and District Chief (Rescue) (2008) examinations.

Americans.  The Court stayed this claim, pending resolution of the United States' claims against the City.

The City and the Union deny the Plaintiffs' allegations.  They contend that the promotion process and tests in use at the JFRD: (1) did not have a disparate impact against African Americans; (2) were content valid, job related, consistent with the City's business necessity, or otherwise consistent with the requirements of Title VII; and (3) were previously approved by a federal district court and the Eleventh Circuit Court of Appeals.  The Defendants also contend that Plaintiffs' proposed alternatives would not meet the City's legitimate business needs equally well and lessen adverse impact.

On June 9, 2015, the Court granted partial summary judgment, ruling that the case could proceed as "plaintiffs have made the necessary prima facie showing of disparate impact to warrant continuance of the case" for nine of the ten examinations challenged by the United States.  ECF No. 202 at 3.[4]  Discovery and litigation then focused on whether the examinations were valid and whether there existed alternatives that would meet the City's legitimate business needs equally well and lessen adverse impact.  Specifically, voluminous documents have been produced, more than 40 depositions have been taken, and the Parties have exchanged multiple expert reports.

With the assistance of Senior Judge Harvey Schlesinger, the Parties reached a settlement culminating in the proposed Decree.

---

[4]  As to the tenth examination, the Court deferred its ruling so further discovery could be taken to determine whether the results of that test (2009 District Chief) could be aggregated with the results of the 2006 District Chief Suppression examination.  *See* ECF No. 202 at 3.

### III.    APPROVAL PROCESS OF THE DECREE

As a safeguard against later challenges and to address due process concerns, *see* 42 U.S.C. § 2000e-2(n)(1), the Decree requires two fairness hearings—one for the terms of the Decree and the other to approve Individual Relief.

#### A.    Fairness Hearing on the Terms of the Consent Decree

The Parties move for a fairness hearing to determine whether the terms of the Decree are fair, adequate, reasonable, and consistent with federal law.  *See* Decree ¶ 18.  To allow sufficient time for objections and responses, the Parties request that the hearing be scheduled for a date that is at least 100 days after the date the Court gives provisional approval to the Decree.  Notice of the fairness hearing, the Decree, and the opportunity to submit written objections would be given to all sworn employees of the JFRD, and to all other known individuals who may receive relief under the Decree.  *Id.* ¶¶ 21-25.  Prior to the fairness hearing, the Parties to the lawsuits would file a response to each objection and would request final approval and entry of the Decree.  The objections would be resolved at the fairness hearing.  If at or after the hearing, the Court determines that the Decree is fair, adequate, reasonable, and consistent with federal law, the Decree would be entered as a final order of the Court.  *Id.* ¶ 31.

#### B.    Fairness Hearing On Individual Relief

The Decree includes a multi-step process for determining eligibility for individual relief. *Id.* ¶¶ 30, 34-37.  In summary, persons interested in obtaining relief would submit an Interest-in-Relief Form.  *Id.* ¶ 30.  The United States would review these submissions, make individual relief determinations based on factors discussed in Section IV(B)(2) below, issue notice of the determinations, and provide an opportunity for interested persons to object.  *Id.* ¶¶ 35, 40-44.

The Court would then conduct a second fairness hearing to rule on the objections and to approve or modify the individual relief determinations.  *Id.* ¶¶ 48-50.

## IV.   SUMMARY OF THE CONSENT DECREE

The Decree provides monetary relief in the amount of $2,750,000, pension adjustments, and promotions to test-takers who were not promoted from the challenged examinations and who meet all other eligibility requirements set forth in the Decree.  The Decree also provides for the development of new promotion examinations.

### A.   Injunctive Relief

The Decree provides that the City, in consultation with the United States (or the relevant Reviewing Party (*see id.* ¶ 11)), will develop and administer new promotion examinations for the positions of Engineer, Lieutenant, Captain, and District Chief for the JFRD's divisions of Suppression, Prevention, and Rescue.  *Id.* ¶¶ 76-107.  The examinations may include situational judgment tests, video simulations, in-basket exercises, and/or tactical exercises.  *Id.* ¶ 97.

The new promotion examinations will comply with the requirements of the applicable collective bargaining agreements, *id.* ¶¶ 100-102, and may not consist solely of a test that measures job knowledge.  *Id.* ¶ 97.  For scoring purposes, the weight given to each component of each examination will be determined by a new job analysis that will be conducted for each position.  *Id.* ¶ 99.

### B.   Individual Relief

The Decree provides for individual monetary relief, pension adjustments, and/or promotions for African-American employees who are eligible pursuant to the Decree's terms.  *Id.* ¶ 34.  The settlement also provides additional specific settlement relief to the named private

Plaintiffs (to be determined and distributed solely by private Plaintiffs), as well as attorneys' fees for private counsel.[5] *Id.* ¶ 32.

### 1.   Individuals Eligible for Relief

Claimants who meet specific criteria set forth in the Decree are eligible to receive monetary relief and/or a promotion and/or a pension adjustment, as explained below.

### 2.   Monetary Relief

Monetary relief of $2,750,000.00 will be distributed among eligible Claimants. *Id.* ¶¶ 34-38. This amount does not exceed full make-whole monetary relief, and the distribution of shares will be determined solely by the United States, subject to final approval by the Court.

To determine whether a person is entitled to individual relief, the United States will first consider whether the person is a "Claimant," within the definition of the Decree. A "Claimant" is defined as (1) any African-American candidate for promotion who sat for but was not promoted from one of the following examinations: 2004 Lieutenant (Suppression), 2004 Captain (Suppression), 2005 Engineer, 2006 District Chief (Suppression), 2007 Lieutenant (Suppression), 2008 Engineer, 2008 Captain (Suppression), 2009 District Chief (Suppression), 2011 Engineer, 2011 Lieutenant (Suppression); or (2) any named Smith Plaintiff who sat for one or more of the "Relevant Promotion Examinations" (as defined in Paragraph 10 of the Consent Decree)[6] and was not promoted from that examination. *Id.* ¶ 2.

---

[5] Counsel for Private Plaintiffs will file a separate motion for approval of the distribution of additional specific settlement relief and attorneys' fees.

[6] "Relevant Promotion Examinations" include the following: 2004 Lieutenant (Suppression); 2004 Captain (Suppression); 2005 Engineer; 2006 District Chief (Suppression); 2007 Lieutenant (Suppression); 2008 Engineer; 2008 Captain (Suppression); 2009 District Chief (Suppression); 2011 Engineer; 2011 Lieutenant (Suppression); 2008 Captain (Rescue); and 2008 District Chief (Rescue).

A Claimant's share of the $2,750,000.00 available for monetary relief will be determined by the United States by taking into account the Relevant Promotion Examination which the Claimant took, the rank held at the time by the Claimant, and any subsequent personnel actions with respect to the Claimant (*i.e.*, promotion, retirement, separation from service) which would have ended the Claimant's accrual of damages.  *Id.* ¶ 35.  No Claimant will receive an amount that is greater than the difference between what the Claimant earned and the amount of money the Claimant would have received had the Claimant been promoted based upon the challenged examination that the Claimant took.

For those Claimants whose monetary relief will be subject to pension adjustment, the City will pay the remaining balance directly to the Claimant.  All other Claimants will be paid by Plaintiffs from a Qualified Settlement Fund ("QSF").[7]  *Id.* ¶ 59.

Distribution of monetary relief to Claimants who could have received a promotion is consistent with this Circuit's view on distributing a settlement payment where it is impossible to recreate exactly who would have received a promotion absent the alleged discrimination. *See, e.g.*, *U.S. v. Miami*, 195 F.3d 1292, 1299-1301 (11th Cir. 1999) (approving proportional payments of back pay where "after reasonable effort, a court is unable to differentiate between class members for remedial relief purposes"); *U.S. v. U.S. Steel Corp.,* 520 F.2d 1043, 1055 (5th Cir. 1975).

### 3.    Pension Adjustment

An African-American Claimant is eligible for a pension adjustment if, by the date of Final Entry of the Decree, the Claimant has entered the City's Deferred Retired Option Program ("DROP") or retired (thereby establishing the Claimant's bi-weekly pension benefit) while

---

[7] Plaintiffs have filed a separate motion to approve the use of the Qualified Settlement Fund.

holding the same rank the Claimant had when the Claimant last took a challenged examination. *Id.* ¶ 36.  Unless an eligible Claimant opts out of such relief, he/she will have a portion of their monetary relief counted as pensionable earnings, thereby adjusting their pension benefit.  *Id.* ¶¶ 12, 70.  The actual adjustment and any necessary contributions will be determined by the formula previously agreed upon by the Parties.  *Id.* ¶ 70.  Claimants who receive pension relief are responsible for all employee and employer pension and tax contributions, which are to be deducted from their monetary relief.  *Id.* ¶ 128.

4.     Settlement Promotions

The City will offer up to 40 promotions (26 Engineers, seven Suppression Lieutenants, four Suppression Captains, two Suppression District Chiefs, and one Rescue Lieutenant) to qualified Claimants.  *Id.* ¶ 108.  These "Settlement Promotions" are new positions created solely for the purpose of reaching this settlement.  *Id.* ¶ 117.  Because these positions are new, filling them with Claimants will not affect the promotion prospects of any JFRD incumbent on an existing eligibility list for that position.  Furthermore, those receiving a Settlement Promotion will not receive retroactive seniority.  *Id.* ¶ 112.  They will accrue seniority only for time in rank actually worked in their Settlement Promotion Position.  *Id.*

Forty promotions is a reasonable compromise considering that it is two-thirds the number of promotions that African Americans would have received under the United States' theory of the case.  *See* ECF No. 135-9, Report of Bernard Siskin, Ph.D. (October 7, 2013) ("Siskin Report") (finding that African Americans lost 59 promotions).  To receive one of these promotions, the Claimant must have scored 70 or higher on the relevant promotion examination or on an examination for the same position given after 2011, provided the eligibility list for that examination was certified by the City's Human Resources Department before the Court gives

10

final approval and enters this Decree.  *Id.* ¶ 37.  Importantly, the Decree does not require the City to appoint anyone to a Settlement Promotion Position who is not qualified for the position.  *Id.* ¶ 116.  Among other qualifications, all Claimants who receive a Settlement Promotion must have met the qualifications set forth in the Professional Growth and Development Plan that existed at the time the Claimant took the promotion examination on which the Claimant relies for Settlement Promotion eligibility.  *Id.* ¶ 37.  In addition, at the time the Settlement Promotion is offered, the Claimant must not be disqualified for promotion because of a disciplinary action, as set forth in the City's Civil Service Rules.  *Id.*

The new Settlement Promotion Positions are "Rover positions"—so named because the person occupying the positions are not assigned to any specific fire station.  A Claimant who holds a Settlement Promotion Position will be treated the same as individuals in the same position or rank for all employment purposes (including for purposes of seeking a transfer to an open position assigned to a specific station).  *Id.* ¶ 111.  Once a Claimant who received a Settlement Promotion separates from the JFRD, the Settlement Promotion Position created pursuant to the Decree will revert to its original designation.  *Id.* ¶ 117.

5.    Specific Settlement Relief and Attorneys' Fees

The Decree provides for $1,400,000 in attorneys' fees and costs for private counsel and $750,000 in specific settlement relief for the private plaintiffs, the distribution of which is discussed in the private plaintiffs' unopposed motion for distribution of individual relief.  *Id.* ¶ 32.

**C.    Continuing Jurisdiction and Duration of the Decree**

The proposed Decree provides that the Court will retain jurisdiction over this matter for the duration of the Decree.  *Id.* ¶ 119.  Absent pending motions, the Decree shall expire after the

latter of the following: (1) the distribution of the Settlement Fund; (2) fulfillment of the Parties'

obligation to create and attempt to fill the 40 Settlement Promotion positions addressed in

Paragraph 108; and (3) completion of the second regular test administration of the New

Promotion Examination for each Promotion Position, the City's response to alternative

promotion process recommendations made by the Reviewing Party(ies) as set forth in Paragraphs

104-105 of the Decree, and any Court resolution (if necessary) related to the second

administration or alternative process recommendation thereto.  *Id.* ¶¶ 104, 118.

## V.    ARGUMENT

### A.    Standard of Review

In evaluating the terms of the compromise in relation to the likely benefits of a successful

trial, the court does "not try the case in the settlement hearings."  *Cotton v. Hinton*, 559 F.2d

1326, 1330 (5th Cir. 1977) (citing *Young v. Katz,* 447 F.2d 431 (5th Cir. 1971)).  Instead, the

court should enter the consent decree if the settlement is "fair, adequate and reasonable."  *United

States v. Miami*, 664 F.2d 435, 441 (5th Cir. 1981)(citing *Cotton*, 559 F.2d at 1330).  A Title VII

consent decree that has been negotiated by the federal government and representatives of a local

government is presumptively valid.  *Id.* at 440.  The presumption afforded to the government is

overcome only when a challenging party proves the decree is "unconstitutional, unlawful,

contrary to public policy, or unreasonable."  *Id.*  (citations omitted).

When assessing whether a proposed consent decree is fair, adequate, reasonable, and

consistent with federal law, the Eleventh Circuit considers: (1) the existence of fraud or collusion

behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the

stage of the proceedings and the amount of discovery completed; (4) the likelihood of success at

trial; (5) the range of possible recovery; and (6) the opinions of the class counsel, class

representatives, and the substance and amount of opposition to the settlement. *See Leverso v. SouthTrust Bank of AL., Nat. Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994); *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir.1984).

Congress has placed a high premium on voluntary settlements of Title VII suits. *Miami*, 664 F.2d at 442. "Cooperation and voluntary compliance were selected [by Congress] as the preferred means" for achieving the goal of elimination of unlawful employment discrimination. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974) (identifying Title VII's conciliation provisions as evidence that Congress wanted Title VII compliance to be voluntary); *see also Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981) ("In enacting Title VII, Congress expressed a strong preference for encouraging voluntary settlement of employment discrimination claims."). Accordingly, a district court should have a "deferential attitude towards agreements reached by consent in Title VII suits." *United States v. Miami,* 614 F.2d 1322, 1333 (5th Cir. 1980). This is particularly true where one of the plaintiffs is a department of the United States government. *Id.*

**B.     The Consent Decree Is Fair, Adequate, Reasonable, and Consistent with Federal Law.**

Measured by the above factors, the proposed settlement is fair, reasonable, adequate, and consistent with federal law. The Parties submit that the Court should provisionally approve the Decree.

1.      There is no fraud or collusion behind the Settlement; it is the product of fair, arms-length negotiations.

Because the proposed Decree is the product of years of litigation and arms-length negotiations among all Parties, the Court can be assured that "the interests of all affected have been considered." *Miami*, 614 F.2d at 1332. Two plaintiffs involved in this settlement (the

United States Department of Justice and the EEOC) are United States government agencies entrusted with enforcing Title VII to ensure the public good.  Additionally, this settlement was unanimously approved by Jacksonville's City Council, after the Decree was made available for public comment.  Further, the Executive Board of Local 122 approved the terms of the settlement and signed the Decree on April 6, 2018.  These facts weigh in favor of approval, as they evidence the absence of possible collusion or fraud.

    2. <u>The Complexity, Expense, and Likely Duration of Litigation Support Approval of the Decree.</u>

   The complexity and unpredictable outcome of this litigation also support approval of the Decree.  Title VII disparate impact cases that challenge employee-testing processes are complex, expensive, and time-consuming.  Cases challenging just one selection device span years, with proceedings often bifurcated into separate trials on liability and damages.  This case has been especially labor-intensive because the Plaintiffs have challenged (and the City and Union have had to defend) numerous examinations, developed by different test developers.  Although the Court granted partial summary judgment for Plaintiffs on disparate impact, there has been no determination that the disparate impact violates Title VII.

   Even if the Plaintiffs were successful in their claims, the Court would still have to resolve the Smith Plaintiffs' claims regarding the Rescue examinations, and the EEOC's claims against the Union.  If not settled, the litigation would likely continue for several years at substantial costs and risks to the Parties.  Settlement avoids these costs and risks.

    3. <u>The Stage of Proceedings Supports Approval of the Decree.</u>

   At this stage of proceedings, each party is aware of the strengths and weaknesses of its evidence, arguments, and assertions, having completed extensive discovery and developed a factual record with which to evaluate the respective benefits and risks associated with settlement

versus trial.  There is no surprise evidence that would alter the Parties' analyses. The existence of this lengthy and fully developed record favors approval of the Decree.

         4.      <u>Likelihood of Success at Trial.</u>

Each side believes that it was positioned to prevail in the remaining parts of the case absent settlement, and each side also recognizes that there was risk associated with trial given the depth of evidence each side had marshaled and was prepared to present.  Settlement of this action eliminates the risk for all Parties.

Plaintiffs would have presented evidence that the selection practices at issue were not job related and consistent with business necessity as well as evidence on the availability of alternative selection devices.  The Plaintiffs would have presented evidence that the job analyses used to develop the written examinations did not meet professionally accepted standards. Moreover, Plaintiffs would have presented evidence that the examinations used by the City were not representative of the jobs at issue.  Also, Plaintiffs contend that there was insufficient support for the City's pass/fail and rank-order use of the examination scores.  If the Court found that the challenged practices were valid, Plaintiffs would have relied on evidence that "an alternative employment practice" with less adverse impact and that would have met the City's legitimate business needs was available to the City.

The City and Union were prepared to present evidence to challenge the points above as to the sufficiency of its job analyses, the construction and content of the examinations at issue, the appropriateness of its pass/fail and rank-order use of examination scores, and the lack of alternative selection devices that would reduce adverse impact and meet the City's business needs.

5.     The Settlement is Within the Range of Recovery.

The injunctive and individual relief required under the Decree is within the range of the potential recovery had this matter been litigated to conclusion.  Therefore, the relief is a reasonable compromise of the Plaintiffs' claims.

Prospective injunctive relief is justified in Title VII pattern or practice cases.  *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 361 (1977); s*ee also, e.g., Guardians Ass'n*, 630 F.2d at 109 (Title VII compliance relief may include "specifying procedures and standards for a new valid selection procedure."); *Berkman v. City of New York*, 705 F.2d 584, 594 (2d Cir. 1983) (Court may order new and valid selection procedures in a Title VII case. ).  In the instant case, while there has been no finding by the Court of a Title VII violation, in the interest of settling the litigation, the Parties agreed to work in concert to develop new promotion examinations that satisfy certain criteria of importance to each party, with a joint goal of compliance with Title VII.  Decree at ¶¶ 81-107.

The individual relief provided in the Decree consists of monetary payments, promotions, and pension adjustments.  Each of these remedies is a component of the make-whole relief authorized by Title VII.  *See Albemarle*, 422 U.S. at 421 (*citing* 118 Cong. Rec. 7168 (1972); *see also Franks v. Bowman Transp. Co.*, 424 U.S. 747, 763 (1976) (stating that to exercise its equitable powers, a court may order appropriate relief "which may include, but is not limited to, reinstatement or hiring of employees, with or without backpay . . . or any other equitable relief as the court deems appropriate") (quoting Section 706(g) of Title VII, 42 U.S.C. § 2000e-5(g)); *Crabtree v. Baptist Hosp. of Gadsden, Inc*., 749 F.2d 1501, 1502 (11th Cir. 1985) (stating that Title VII authorizes back pay).

The monetary relief of $2,750,000.00 is substantial and will provide Claimants with some measure of financial restitution, even though it is less than what could be recovered were the Plaintiffs to prevail at trial.

The 40 Settlement Promotions for African Americans who passed one of the challenged tests, but who were not promoted, also provides substantial relief.  It is a fair compromise.

The Decree requires the City to provide pension adjustments to some Claimants, which is an important component of relief under Title VII.  *Franks*, 424 U.S. at 767 (seniority credit available under Title VII); *Walker v. Ford Motor Co.,* 684 F.2d 1355, 1364 (11th Cir. 1982) (pension benefits available under Title VII).

      6. <u>The Consent Decree is Supported by Experienced Counsel, the Named Plaintiffs, City, and the Union.</u>[8]

Both the United States and the EEOC are empowered by Congress to enforce Title VII. They do so with Title VII specialists, highly experienced in litigating and resolving Title VII disparate impact matters such as the case before the Court.  The private lawyers who represent the private plaintiffs are also experts in disparate impact litigation.  As experts in complex litigation and settlement negotiations, the lawyers for the City are well suited to evaluate the risks associated with the trial of this case and to balance those risks against the terms of the Decree.  Likewise, counsel for the Union has extensive experience representing clients in complex litigation and is an expert in labor and employment law.  These attorneys and the parties they represent have spent more than six years evaluating this case, more than a year of which

---

[8] An additional consideration by courts in considering whether to approve a consent decree is the substance and amount of opposition to the settlement.  *Leverso*, 18 F.3d at 1531 n. 6. To date, the Parties are not aware of any opposition to the terms of the Decree.  However, the Decree contains a mechanism for formal objections, and all objections properly submitted will be provided to the Court prior to the Fairness Hearing.

was spent negotiating a fair Decree.  Counsels' expertise and endorsement of the settlement that

ensued weighs in favor of provisional approval of the Decree.

**VI.     CONCLUSION**

     For the above reasons, the Parties respectfully request that the Court provisionally

approve the proposed Decree and set the time, date, and location of an initial fairness hearing.


Date: July 26, 2018                                  Respectfully submitted,


**FOR PLAINTIFF UNITED STATES OF AMERICA:**

JOHN M. GORE
Acting Assistant Attorney General
Civil Rights Division

DELORA L. KENNEBREW
(GA Bar No. 414320)
Chief
Employment Litigation Section
Civil Rights Division

CLARE GELLER
(NY Registration No. 4087037)
Deputy Chief
Employment Litigation Section
Civil Rights Division

*/S Jeremy Monteiro*
_____
HECTOR F. RUIZ, JR.
hector.ruiz@usdoj.gov
BRIAN G. MCENTIRE
brian.mcentire@usdoj.gov
JEREMY P. MONTEIRO
jeremy.monteiro@usdoj.gov
Senior Trial Attorneys
United States Department of Justice
Employment Litigation Section

**FOR PLAINTIFF EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**:

*/S Robert E. Weisberg*
_____
Robert E. Weisberg, Regional Attorney
robert.weisberg@eeoc.gov
Miami District, EEOC
100 SE 2nd Street, Suite 1500
Miami, FL 33131-2216

Attorney for Plaintiff Equal Employment
Opportunity Commission


**FOR THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, JACKSONVILLE BRANCH:**

*/S Dariely Rodriguez*
_____
DARIELY RODRIGUEZ
Lawyers Committee for Civil Rights
1401 New York Avenue, NW #400,
Washington, DC  20005
(202) 662-8600

BENJAMIN J. BLUSTEIN
ROBERT S. LIBMAN
Miner, Barnhill & Galland, P.C.

PHB Room 4034
Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
Telephone: (202) 514-9694
Facsimile: (202) 514-1005

Attorneys for Plaintiff United States

**FOR PLAINTIFFS JACKSONVILLE BROTHERHOOD OF FIREFIGHTERS AND THE BAKER INTERVENORS:**

*/S Kirsten Doolittle*
_____

KIRSTEN DOOLITTLE
Fla. Bar No. 0942391
207 North Laura St, Suite 240
Jacksonville, FL 32202
Telephone: (904) 551-7775
Email: kd@kdlawoffice.com

Attorney for the Jacksonville Brotherhood
of Firefighters and the Baker Intervenors

14 W. Erie St.
Chicago, IL 60654
Telephone: 312.751.1170
Telefax: 312.751.0438

KIRSTEN DOOLITTLE (Fla. Bar No. 0942391)
207 North Laura St, Suite 240
Jacksonville, FL 32202
Telephone: (904) 551-7775
Email: kd@kdlawoffice.com

Attorneys for Plaintiff NAACP, Jacksonville
Branch

**FOR THE SMITH PLAINTIFFS:**

*/S Bruce Elfvin*
_____

BRUCE B. ELFVIN (Ohio Reg. #0015694)
Elfvin, Klingshirn, Royer & Torch
4700 Rockside Road, Suite 530
Independence, Ohio 44131
Telephone: 216-382-2500
Email: bruce@ekrtlaw.com

Attorney for the Smith Plaintiffs

**FOR OFFICE OF GENERAL COUNSEL:**

*/S Jon R. Phillips*
_____

JON R. PHILLIPS
LEAD TRIAL COUNSEL
DEPUTY GENERAL COUNSEL
Florida Bar No.: 273813
RITA M. MAIRS
CHIEF, GENERAL LITIGATION
Florida Bar No.: 560960
ADINA TEODORESCU
ASSISTANT GENERAL COUNSEL
Florida Bar No.: 784761

**FOR THE JACKSONVILLE ASSOCIATION OF FIRE FIGHTERS, LOCAL 122, IAFF:**

*/S/ Paul A. Donnelly*
_____

PAUL A. DONNELLY
Florida Bar No. 813613
paul@donnellygross.com
Donnelly + Gross
2421 NW 41st Street, Suite A-1
Gainesville, FL 32606
Telephone: (352) 374-4001
Facsimile: (352) 374-4046

117 West Duval Street, Suite 480
Jacksonville, Florida 32202
Telephone:  (904) 630-1700
Facsimile:  (904) 630-1316
JPhillips@coj.net
Mairsr@coj.net
Teodores@coj.net

Attorneys for Defendant, City of
Jacksonville

Attorney for Defendant, Jacksonville Association
of Fire Fighters

## CERTIFICATE OF CONFERENCE

Pursuant to M.D. Fla. L.R. 3.01(g), I HEREBY CERTIFY that counsel for the United States conferred with counsel for all Parties about  the relief sought by this Joint Motion on July 26, 2018.  All Parties seek the relief requested herein.

*/S Jeremy Monteiro*

_____

Jeremy Monteiro
Attorney for Plaintiff United States

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of July 2018, I filed the foregoing JOINT MOTION FOR PROVISIONAL ENTRY OF THE CONSENT DECREE AND SCHEDULING OF FAIRNESS HEARING ON THE TERMS OF THE CONSENT DECREE with the Clerk of the Court by using the CM/ECF system which will automatically send a notice to all counsel of record.

*/S Jeremy Monteiro*

_____

Jeremy Monteiro
Attorney for Plaintiff United States