# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| United States of America,<br>   Plaintiff, | )<br>)<br>) | |
| Jacksonville Brotherhood of Fire Fighters,<br>Jacksonville Branch of NAACP, et al.,<br>   Plaintiff Intervenors, | )<br>)<br>)<br>) | Case No. 3:12-cv-451-J-32MCR |
| v. | )<br>) | |
| Consolidated City of Jacksonville,<br>Jacksonville Association of Fire Fighters,<br>Local 122, IAFF,<br>   Defendants.<br>_____ | )<br>)<br>)<br>)<br>) | |

| | | |
|---|---|---|
| Rufus Smith, et al.,<br>   Plaintiffs, | )<br>) | Case No. 3:11-cv-345-J-32MCR |
| v. | )<br>) | |
| Consolidated City of Jacksonville,<br>Jacksonville Association of Fire Fighters,<br>Local 122, IAFF,<br>   Defendants.<br>_____ | )<br>)<br>)<br>)<br>) | |

| | | |
|---|---|---|
| Equal Employment Opportunity<br>Commission,<br>   Plaintiff, | )<br>)<br>) | Case No. 3:12-cv-491-J-32MCR |
| v. | )<br>) | |
| Jacksonville Association of Fire Fighters,<br>Local 122, IAFF,<br>   Defendant.<br>_____ | )<br>)<br>)<br>) | |

**CONSENT DECREE**

This Consent Decree addresses three lawsuits filed in the United States District Court for the Middle District of Florida, Jacksonville Division.

*United States' Allegations*

*United States of America* v. *Consolidated City of Jacksonville ("City") and Jacksonville Association of Fire Fighters, Local 122, International Association of Fire Fighters ("Union")*, Case No.: 3:12-cv-451-J-32MCR, was filed by the United States on April 23, 2012, alleging that the City, through its Fire and Rescue Department, engaged in a pattern or practice of unintentional discrimination by administering, between 2004-2011, ten (10) promotion examinations that had a disparate impact on African-American candidates.  Specifically, the United States alleges that: (1) the City's rank-order use of final scores (written examination score with applicable points for seniority and veterans' preference) in two examinations[1]; and (2) the City's pass/fail and rank-order use of examination scores in eight (8) other examinations[2] to make promotions to specific ranks resulted in a statistically significant disparate impact upon African Americans.  The United States alleges that the City's pass/fail use of the above-referenced examinations and rank-order use of final scores are not job-related and consistent with business necessity for the positions in question and do not otherwise meet the requirements of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. as amended ("Title VII"). The United States further contends that absent the disparate impact resulting from the City's pass/fail and rank-order use of the examinations, at least an additional fifty-nine (59) African Americans would have been promoted amongst the four ranks at issue.

---

[1] District Chief (Suppression) examinations (2006 and 2009).
[2] Engineer (2005, 2008, and 2011), Lieutenant (Suppression) (2004, 2007, and 2011), and Captain (Suppression) (2004 and 2008).

The United States also named the Union as a defendant pursuant to Federal Rule of Civil Procedure 19(a) because it believed its joinder was necessary for complete relief. This Court has jurisdiction of this action under 42 U.S.C. § 2000e-6 and 28 U.S.C. §§ 1343(a)(3) and 1345.

*Baker Intervenors' Allegations*

On August 6, 2012, Intervenors National Association for the Advancement of Colored People, Jacksonville Branch ("NAACP"), Jacksonville Brotherhood of Fire Fighters ("JBOF"), and thirteen named individuals ("Baker Intervenors") who represent an uncertified class defined as "all present or past African-American candidates for promotion to Engineer, Lieutenant (Suppression), Captain (Suppression), and/or District Chief (Suppression) from July 30, 2006 to the present" ("Intervenor Class"), moved to intervene in the United States' pattern or practice lawsuit, alleging that the City's pass/fail and rank-order uses of the same examinations cited in the United States' Complaint resulted in a disparate impact and shortfall, as alleged by the United States, upon the Intervenor Class.

*Smith Plaintiffs' Allegations*

On April 12, 2011, Case No. 3:11-cv-345-J-32MCR was filed by a group of individual promotion candidates ("Smith Plaintiffs"), claiming that eight (8) specific JFRD promotion examinations administered by the City between 2006 and 2011 had a disparate impact against African Americans and also constituted disparate treatment against the Smith Plaintiffs, in violation of Title VII and the Florida Civil Rights Act. The Smith Plaintiffs allege claims of racial discrimination against the Union as being responsible for the promotion testing program used by the City. In addition, the Smith Plaintiffs allege interference with the right to contract and other civil rights, in violation of 42 U.S.C. § 1981, against the Union. The Court

consolidated the *Smith* case with the United States' case for the purposes of the overlapping claims.

The Smith Plaintiffs' claims have been split into two complaints. Complaint A addresses the disparate impact claims related to promotion examinations for Engineer (2008 and 2011), Lieutenant (Suppression) (2007 and 2011), Captain (Suppression) (2008), District Chief (Suppression) (2006), and is filed in Case No: 3:12-cv-451-J-32MCR. Complaint B addresses the disparate impact claims in Complaint A against the Union, disparate impact and disparate treatment claims against the City and the Union related to the Captain (Rescue) (2008) and District Chief (Rescue) (2008) examinations, and other disparate treatment claims against the City and the Union, and is filed as 3:11-cv-345-J-32MCR. The Smith Plaintiffs contend that test scores of African-American and racial minority candidates on all challenged promotion examinations were disproportionately ranked near the bottom of the results. The Court stayed Complaint B, and the City and the Union have not been required to answer it. This Consent Decree resolves all claims asserted in Complaints A and B.

The Smith Plaintiffs contend that both the City and the Union have committed to complying with the Uniform Guidelines on Employee Selection, 29 C.F.R. §1607 *et seq.*, and contend that the validity of the promotion process is not consistent with the Uniform Guidelines. The Smith Plaintiffs' allegations parallel in most respects the allegations in the case brought by the United States. The Court has not addressed the Smith Plaintiffs' Rescue claims in the June 9, 2015 order (ECF No. 202) and no further pre-trial proceedings will occur if this Consent Decree is approved.

*EEOC's Allegations*

On April 30, 2012, Case No. 3:12-cv-491-J-32MCR was filed by the Equal Employment Opportunity Commission ("EEOC"), claiming that with respect to the ten (10) examinations cited in the United States' Complaint, the Union negotiated and advocated for a discriminatory promotion process that resulted in a disparate impact against African Americans. Accordingly, the EEOC alleges that the Union intentionally pursued policies and practices that discriminate against African Americans and that deprive or tend to deprive African Americans of employment opportunities because of their race, in violation of Title VII. The Court stayed the EEOC's lawsuit pending resolution of the United States' claims against the City.

The United States, NAACP, JBOF, Baker Intervenors, and the Smith Plaintiffs are hereinafter referred to as "Plaintiffs."

The Plaintiffs contend that the City's use of promotion examinations measuring job knowledge on a pass/fail basis and in descending rank order have not been demonstrated, using professionally accepted validation standards, to be valid and are, therefore, neither job-related nor consistent with business necessity and, even if they were job-related and consistent with business necessity, there are alternative candidate assessment procedures capable of producing equal or more valid predictions of future on-the-job performance for the positions at issue while producing less adverse impact upon African-American candidates.

*The City's and Union's Position*

The City and the Union dispute the Plaintiffs' claims and allegations, and deny that they have violated Title VII. The Defendants rely in part on this court's findings in *Nash v. City of Jacksonville* (M.D. Fla. 1995), *aff'd*, 85 F.3d 643 (11th Cir. 1996), and contend that the promotion process and tests in use at JFRD: (a) did not have disparate impact against African

Americans; (b) were content valid, job-related, consistent with the City's business necessity, or otherwise consistent with the requirements of Title VII; and (c) were previously approved by a federal district court and the 11th Circuit Court of Appeals. The Defendants also contend that Plaintiffs' proposed alternatives would not meet the City's business needs equally well and lessen adverse impact.

*Factual Background*

Subject to the Court's approval of this Consent Decree, the Parties waive hearings and findings of fact and conclusions of law on the merits of this case. For purposes of this Consent Decree only, and without any admission of liability by the Defendants, the Parties set forth the following background facts, arguments, and proposed evidence.

The Jacksonville Fire and Rescue Department ("JFRD") consists of five major divisions: Rescue, Suppression (a/k/a Operations), Fire Prevention, Emergency Preparedness, and Training. The Suppression Division is the largest division, employing approximately 75% of JFRD's uniformed workforce. JFRD's command structure consists of the following ranks in ascending order: Fire Fighter, Engineer, Lieutenant, Captain, District Chief, Battalion Chief, Division Chief, and Department Chief. Promotion to the ranks of Engineer, Lieutenant, Captain, and District Chief is accomplished through a written promotion examination, combined with seniority points and veterans' preference points, as applicable. Above the rank of Engineer, the written promotion examinations are both rank and division specific.

Between 2004 and 2011, JFRD screened and selected candidates for promotion to Engineer, Lieutenant (Suppression), Captain (Suppression), and District Chief (Suppression) by administering and scoring a 100-question multiple choice examination to those applicants who met all other eligibility requirements at the time they signed up to take the examination (i.e., at

least 12 months in current rank, no discipline in the last 12 months, all required training and certifications or licenses, and, starting in 2007, various Professional Growth and Development requirements). Questions on the examinations were developed from written materials to which examination takers had access prior to the examinations' administration. The written materials from which questions were constructed were publicized to examination candidates in the form of a reading list.

In order to pass the written examination and be eligible for promotion consideration, a candidate must have answered 70% of the written questions correctly (after challenges to questions were taken into account). Candidates who scored less than 70% on the written examination were considered to have failed the examination and were not eligible for further promotion consideration. The JFRD awarded applicable seniority points and veterans' preference points to candidates who passed the examination to arrive at a candidate's final score. Candidates who achieved a passing score on the examination were placed on eligibility lists in descending rank order based on final scores.

On June 9, 2015, the Court granted partial summary judgment for the United States, the NAACP, JBOF, Baker Intervenors, and Smith Plaintiffs (as to their allegations in Complaint A only) in phase one of the United States' lawsuit, finding that, "plaintiffs have made the necessary prima facie showing of disparate impact to warrant continuance of the case" with respect to 9 of the 10 examinations challenged in the United States' complaint. (ECF No. 202 at 3).

*Consent Decree*

The Parties desire that this action be settled by an appropriate Consent Decree in order to avoid the burden of further protracted litigation, and agree to the jurisdiction of this Court over the Parties and subject matter of this action. The Parties further agree to the entry of this

Consent Decree as final and binding between themselves as to the issues raised in the complaints filed in these actions as well as the issues and actions referenced in Paragraph 17.

This settlement, as reflected in this Consent Decree and appendices, is fair, reasonable, adequate, and consistent with federal law.  The settlement promotions given to Claimants under this Consent Decree do not exceed Plaintiffs' estimate of the promotion opportunities allegedly lost by African-American candidates on the examinations at issue as a result of the City's pass/fail use of the written examinations and rank-order use of final scores, represent a compromise by the Parties, and are remedial relief for identified individuals whom Plaintiffs contend are victims of the employment practices challenged by the Plaintiffs as unlawful.  The Defendants contend that the method used by Plaintiffs for estimating the alleged lost promotion opportunities is not the only professionally acceptable method for estimating promotion opportunities, but, for purposes of this settlement, Defendants do not challenge Plaintiffs' estimate.  Further, the relief provided by this Consent Decree does not exceed make-whole relief to the class of Claimants who Plaintiffs contend were alleged victims of the practices challenged by the Plaintiffs.

## I.    DEFINITIONS

1.    The "Parties" to this Consent Decree are: (i) the United States; (ii) the Consolidated City of Jacksonville ("City"); (iii) the Jacksonville Association of  Fire Fighters, Local 122, International Association of Fire Fighters ("Union"); (iv) Intervenor National Association for the Advancement of Colored People, Jacksonville Branch ("NAACP"); (v) Intervenor Jacksonville Brotherhood of Fire Fighters ("JBOF"); (vi) the Baker Intervenors; (vii) the Smith Plaintiffs named in the most recent version of Complaints A and B ("named Smith Plaintiffs"); and (viii) the Equal Employment Opportunity Commission ("EEOC").

2.      "Claimant" refers to (i) any African-American candidate who sat for one of the following examinations: 2004 Lieutenant (Suppression), 2004 Captain (Suppression), 2005 Engineer, 2006 District Chief (Suppression), 2007 Lieutenant (Suppression), 2008 Engineer, 2008 Captain (Suppression), 2009 District Chief (Suppression), 2011 Engineer, 2011 Lieutenant (Suppression) and who was not promoted from that examination; or (ii) any named Smith Plaintiff who sat for one or more of the "Relevant Promotion Examinations" (defined in Paragraph 10), and who was not promoted from that examination.  The individuals described in (i) and (ii) qualify as claimants regardless of whether the person is still employed by the City or was promoted from a subsequent examination.

3.      "Final Entry" of the Consent Decree refers to the date that the Court enters the Consent Decree as final in an Order at or after the Fairness Hearing on the Terms of the Consent Decree as set forth in Paragraph 31 of this Consent Decree.

4.      "Individual Relief" means Monetary Relief, and/or an offer of Settlement Promotion as defined in this Consent Decree, which a Claimant may receive pursuant to the terms of this Consent Decree.

5.      "New Promotion Examinations" means the examinations developed for each Promotion Position pursuant to Paragraphs 76-107.

6.      "Settlement Fund" means the four million, nine hundred thousand dollars ($4,900,000) the City will provide pursuant to Paragraph 16 of this Consent Decree.

7.      "Promotion Position" means the ranks of Engineer, Lieutenant, Captain, and District Chief in JFRD's Suppression, Rescue, and/or Prevention Divisions.

8.      "Settlement Promotion" means the position to which an eligible Claimant will be promoted pursuant to this Consent Decree (eligibility as determined by Paragraph 37 of this Consent Decree) and represents the rank to which Plaintiffs allege the Claimant would have been

promoted based on the Relevant Promotion Examination taken by the Claimant in the absence of the discrimination alleged by the Plaintiffs.  If the Claimant took a Relevant Promotion Examination for more than one rank, it is the higher rank to which an eligible Claimant would have been promoted.  The position of Captain (Rescue) will be replaced with Lieutenant (Rescue) solely for the purpose of creating a Settlement Promotion, recognizing that Lieutenant (Rescue) is neither a Relevant Promotion Examination nor a Relevant Promotion Position.

9.     "Relevant Promotion Position" means the following promotion positions in the JFRD: Engineer, Lieutenant (Suppression), Captain (Suppression), District Chief (Suppression), Captain (Rescue), and District Chief (Rescue).

10.     "Relevant Promotion Examination" means each of the following 100-question multiple choice examinations used by the City to select candidates for promotion: 2004 Lieutenant (Suppression), 2004 Captain (Suppression), 2005 Engineer, 2006 District Chief (Suppression), 2007 Lieutenant (Suppression), 2008 Engineer, 2008 Captain (Suppression), 2009 District Chief (Suppression), 2011 Engineer, 2011 Lieutenant (Suppression), 2008 Captain (Rescue), and 2008 District Chief (Rescue).

11.     "Reviewing Party(ies)" means experts and counsel for the City and the United States, who will review all Engineer, Suppression, Rescue and Prevention examination materials as specified herein, which materials shall be treated as confidential as set forth in Paragraph 107, for examinations given during the life of the Consent Decree.  If, in the process of reviewing any specific examination, a Plaintiff establishes to the Court's satisfaction that there is an irreconcilable and material disagreement between the United States and other Plaintiffs as to the application of the terms of the Consent Decree to the review of the development of a specific New Promotion Examination, the Reviewing Party(ies) for that examination shall become:

a.     For any Engineer and Suppression examination: experts and counsel for the City, the Union, the NAACP, and JBOF.  Counsel and the expert for the Smith Plaintiffs shall serve as a Reviewing Party for any of these examinations only in the event that no other Plaintiff agrees to serve as a Reviewing Party; and

b.     For any Captain (Rescue) or District Chief (Rescue) examination: experts and counsel for the City, the Union, and the Smith Plaintiffs.

12.    "Pension Adjustment Group" ("PAG") are those Claimants who will use a portion of their Monetary Relief to adjust their pension benefit pursuant to a formula agreed to by the parties.

13.    "Pension Non-Adjustment Group" ("PNAG") are those Claimants who will not use a portion of their Monetary Relief to adjust their pension benefit.

14.    "Monetary Relief" under this Consent Decree is the amount paid to each qualified Claimant in the PAG or PNAG.

15.    "Days" refers to calendar days unless business days are clearly specified.  If any deadline referenced in this Consent Decree should fall on a weekend or federal or City of Jacksonville holiday, the deadline shall be extended by two business days.  For purposes of this paragraph, a "holiday" shall include any official closure of the offices of any governmental entity because of inclement weather or other unanticipated contingency or government shutdown.

**II.    SCOPE OF THE CONSENT DECREE**

16.    In exchange for the release detailed in Section III below, the City will:

a.     Expend a total sum of $4,900,000.00 to be used as set forth in this Consent Decree;

b.    Implement New Promotion Examinations for promotions to Engineer, the Suppression Division, the Prevention Division and the Rescue Division in accordance with Paragraphs 76-107; and

c.    Create up to forty 40 Settlement Promotion Positions that will be offered to eligible Claimants, as discussed in Paragraphs 108-117 of this Consent Decree.

## III.   RELEASE

17.    In exchange for the relief provided herein, (1) the United States releases the City and Union from any and all of the claims made in its Complaint and any and all other Title VII disparate impact, disparate treatment, or pattern-or-practice claims that could have been made in any legal proceeding related to any JFRD promotion examinations through the Final Entry of this Consent Decree; the United States further agrees to not use Commissioner's Charge No. 510-2008-02364 (against the City) or Charge No. 510-2008-02365 (against the Union) as the jurisdictional basis for filing a lawsuit against the City or Union; (2) the NAACP, JBOF, Baker Intervenors, and Smith Plaintiffs release the City and the Union from any and all legal or administrative claims filed or that could have been filed relating to JFRD promotions (including but not limited to eligibility for examination, promotion examinations, award of seniority points and veterans' preference points and any discrimination or retaliation claims related thereto) through the Final Entry of this Consent Decree; (3) the Smith Plaintiffs also release the City and Union from all claims made or that could have been made in Complaints A and B through the Final Entry of this Consent Decree; (4) all individual Claimants will release the City and Union upon their signing of the Acceptance of Relief and Release of Claims Form referenced in Paragraphs 51-52; and (5) The EEOC releases the Union from any and all claims made in its Complaint.  The EEOC further releases the Union from all other Title VII claims (including but not limited to disparate impact, disparate treatment, or pattern or practice claims) that could have

been made in any legal proceeding related to any JFRD promotional examinations or the JFRD promotional process through the date of the entry of this Consent Decree. The EEOC further agrees not to use Commissioner's Charge No. 510-2008-02365 (against the Union) as the jurisdictional basis for filing a lawsuit against the Union. As of the date of EEOC's execution of the Consent Decree, there are no other pending charges against the Union.  The releases set forth in Paragraph 17 shall become effective on Final Entry of the Consent Decree.

## IV.    FAIRNESS HEARING ON THE TERMS OF THE CONSENT DECREE AND MOTION FOR DISTRIBUTION OF SETTLEMENT FUNDS

### A.    Provisional Entry of the Consent Decree

18.    Upon execution of this Consent Decree, the Plaintiffs shall promptly file a motion for the provisional approval and entry of the Consent Decree by the Court and request that the Court schedule a Fairness Hearing on the Terms of the Consent Decree to allow the Court to determine whether the terms of the Consent Decree are fair, adequate, reasonable, and consistent with federal law.  In its motion, the Plaintiffs will also seek and Order approving the use of a Qualified Settlement Fund.  Plaintiffs will also file an Unopposed Motion for Distribution.  The Plaintiffs will request that the Court provide at least one hundred (100) days' notice of the date and time set for any Fairness Hearing on the Terms of the Consent Decree and Unopposed Motion for Distribution.

19.    At the time the Plaintiffs file the motion for the provisional approval and entry of the Consent Decree by the Court, they shall also provide the City with a list of potential Claimants.

20.    The purpose of the Fairness Hearing on the Terms of the Consent Decree and the related notification provisions of the Consent Decree in Paragraphs 22-25 is to provide all persons who may be affected by the terms of the Consent Decree with notice and an opportunity to present objections prior to Final Entry of the Consent Decree, in accordance with Section 703(n) of Title VII, 42 U.S.C. § 2000e-2(n).

13

**B.      Notice of Settlement and Fairness Hearing to Potential Claimants**

21.      No later than ninety (90) days prior to the Fairness Hearing on the Terms of the Consent Decree, the City shall provide to the United States the last known email address and mailing address for each potential Claimant identified by Plaintiffs pursuant to Paragraph 19.

22.      No later than seventy-five (75) days prior to the Fairness Hearing on the Terms of the Consent Decree, the United States shall send a letter informing each Claimant of the settlement (Appendix 1, Part 1), a copy of a Notice of Settlement and Fairness Hearing (Appendix 1, Part 2), Instructions for Filing an Objection Prior to the Fairness Hearing and a blank Objection to the Entry of the Consent Decree Form (Appendix 1, Part 3) (collectively, "Notice Documents") in the formats set forth in Appendix 1 via e-mail to the last known e-mail address and via first-class U.S. mail to the last known mailing address of each potential Claimant.  The Notice Documents will include instructions on how Claimants may access the Consent Decree through the City's website.  At the same time, the United States shall also send a copy of an Interest-in-Relief Form (Appendix 1, Part 4) to the last known e-mail address and via first-class U.S. mail to the last known mailing address of each potential Claimant.

23.      The Interest-in-Relief Form will specify the types of relief available to Claimants, including the availability of Monetary Relief (with or without pension adjustment) and Settlement Promotions.

**C.      Notice of Settlement and Fairness Hearing to Other Interested Parties and General Public**

24.       No later than seventy-five (75) days prior to the Fairness Hearing on the Terms of the Consent Decree, the City shall publish the United States' Notice Documents described in Paragraph 22 in the format set forth in Appendix 2, to each sworn employee of the JFRD, through the City's Target Solutions system.

14

25.     No later than seventy-five (75) days prior to the Fairness Hearing on the Terms of the Consent Decree, the City shall publish on its website and on the JFRD's website a publicly-accessible link from which the Notice Documents in the format set forth in Appendix 2 and the Consent Decree can be accessed.  This publicly-accessible link and notice shall be published and remain on the websites until the date of the Fairness Hearing on Individual Relief.

**D.     Objections to Entry of the Consent Decree**

26.     A person who wishes to object to the terms of the Consent Decree may file a written objection in accordance with the requirements set forth in the Notice Documents; specifically, in the Instructions for Filing an Objection Prior to the Fairness Hearing and Objection to the Entry of the Consent Decree Form.

27.     Objections shall state the objector's name, mailing address, telephone number and e-mail address, if any; set forth a specific description of the objector's basis for objecting; include copies of any documentation supporting the objection; state the name and contact information of the objector's counsel, if any; and state whether the objector wishes the opportunity to be heard in Court at the Fairness Hearing on the Terms of the Consent Decree.

28.     Objections submitted via mail must be postmarked no later than forty (40) days before the Fairness Hearing on the Terms of the Consent Decree.  Objections submitted via e-mail must be transmitted electronically no later than forty (40) days before the Fairness Hearing on the Terms of the Consent Decree.  Any person who fails to submit a timely objection shall be deemed to have waived any right to object to the terms of the Consent Decree, unless there is good cause, as determined by the Court, for the failure.  Within four (4) days of receipt of each timely or untimely objection, the United States will forward a copy of such objection to all Parties.

29.     No later than seven (7) business days prior to the Fairness Hearing on the Terms of the Consent Decree, Plaintiffs' counsel shall file with the Court copies of all objections received, and the Parties shall file their responses, if any, to timely objections.  Any personally identifiable information other than name (i.e., objector's address and telephone number) shall be redacted.

**E.      Return of Interest in Relief Forms**

30.     In order to be eligible for Individual Relief, a Claimant must submit an interest-in-relief form by first class U.S. mail or by email no later than forty (40) days before the Fairness Hearing on the Terms of the Consent Decree.  Any person who fails to submit a timely interest-in-relief form shall be deemed to have waived any claim to relief under the Consent Decree, unless there is good cause, as determined by the United States, for the failure.

**F.      Final Entry of the Consent Decree**

31.     If the Court determines that the terms of this Consent Decree are fair, adequate, reasonable, and consistent with federal law, the Court shall enter the Consent Decree without material modification at or after the Fairness Hearing on the Terms of the Consent Decree.

**V.      SETTLEMENT FUND**

32.     No later than fifteen (15) days after Final Entry of the Consent Decree, the City shall transfer Two Million, One Hundred Fifty Thousand Dollars ($2,150,000) of the $4,900,000 Settlement Fund to the Qualified Settlement Fund, of which $1,400,000 shall be allocated for attorney's fees.  The remaining $750,000 shall be allocated in the manner designated solely by Plaintiffs as set out in Plaintiffs' Unopposed Motion for Distribution.

33.     The remainder of the Settlement Fund ($2,750,000.00) shall be held by the City pending assignment of Claimants to PAG and PNAG, to be dispersed no later than the first quarter of Fiscal Year 2019 pursuant to Paragraphs 60-75.

**VI.     INDIVIDUAL MONETARY RELIEF, PENSION ADJUSTMENT, PROMOTION RELIEF, AND FAIRNESS HEARING AS TO ALL**

**A.      Eligibility for Monetary Relief, Pension Adjustment, and Promotion Relief**

34.      A Claimant may be eligible for Settlement Promotion and/or Monetary Relief (from the $2,750,000) with or without pension adjustment. The United States shall determine each Claimant's eligibility and share of the $2,750,000.  In addition, named Smith Plaintiffs and Baker Intervenors may be eligible for additional specific settlement relief (from the remaining $750,000 of the Settlement Fund) as set forth in Plaintiffs' Unopposed Motion for Distribution.

35.      The $2,750,000 referenced in Paragraph 34 will be distributed in a reasonable and equitable manner among all eligible Claimants who submitted an Interest-in-Relief Form.  The United States will take into account the date of the Relevant Promotion Examination which the Claimant took, the rank held at the time by the Claimant, and subsequent personnel action with respect to the Claimant (i.e., promotion, retirement, separation from service).  A Claimant may be eligible for a share of the $2,750,000 even if not eligible for a Settlement Promotion.

36.      A Claimant is eligible for pension adjustment only if the Claimant is African American and, by Final Entry of the Consent Decree, has entered the Deferred Retired Option Program ("DROP") or retired (thereby establishing the Claimant's bi-weekly pension benefit) while holding the same rank the Claimant had when the Claimant last took a challenged examination.

37.      A Claimant will be eligible for a Settlement Promotion to Engineer, Lieutenant (Suppression), Captain (Suppression) or District Chief (Suppression) only if he or she is African American and: (a) between 2004 and 2011 the Claimant took an examination for the relevant position; (b) scored at least a 70 on that examination or on an examination for the same rank given after 2011 (provided that an eligibility list for that examination was certified by the City's Human Resources Department prior to the date when the Court enters this Consent Decree as final); and (c) at the time the promotion is offered, the Claimant is not disqualified from being promoted because of a disciplinary issue as set forth in the City's Civil Service Rules.  A

17

Claimant will be eligible for promotion to Lieutenant (Rescue) only if he or she is an African-American Smith Plaintiff and: (a) between 2004 and 2011 the Claimant took an examination for Lieutenant (Rescue); (b) scored at least a 70 on that examination or on an examination for the same rank given after 2011 (provided that an eligibility list for that examination was certified by the City's Human Resources Department prior to the date when the Court enters this Consent Decree as final); and (c) at the time the promotion is offered, the Claimant is not disqualified from being promoted because of a disciplinary issue as set forth in the City's Civil Service Rules. Being eligible for a Settlement Promotion does not mean the Claimant will be offered a Settlement Promotion.

**B.** **Eligibility Determinations Filed with the Court and Provided to the Parties**

38.      No later than fifteen (15) days after Final Entry of the Consent Decree, the United States will file with the Court and serve upon the Parties the following Proposed Individual Relief Lists:

      a.     Proposed Monetary Relief List identifying who has been deemed eligible for Monetary Relief without pension adjustment, including each Claimant's share of the $2,750,000;

      b.     Proposed Monetary Relief List identifying who has been deemed eligible for Monetary Relief with pension adjustment, including each Claimant's share of the $2,750,000; and

      c.     Proposed Settlement Promotion List identifying who has been deemed eligible for a Settlement Promotion.

39.      Upon the filing of the Proposed Individual Relief Lists, the United States shall move the Court to hold a Fairness Hearing on Individual Relief to allow the Court to determine whether the Proposed Individual Relief Lists should be approved or amended. The Court will provide the

Parties at least seventy-five (75) days' notice of the date and time set for the Fairness Hearing on Individual Relief.

**C.      Notice of Relief Determinations to Claimants**

40.     No later than sixty (60) days before the date set for the Fairness Hearing on Individual Relief, the United States will send, to the last known mailing address by first class U.S. Mail and last known email address, a Notice of Individual Relief Fairness Hearing Documents to each person who submitted an interest in relief form.  The notice will include:

      a.      A Letter to Claimants, in the format attached as Appendix 3 (Part 1), to PAG and PNAG Claimants, informing each Claimant of the Individual Relief for which the Claimant has been found eligible, as well as the reasons for which the Claimant was found ineligible for any particular Individual Relief sought.  The letter shall also specify the type and amount of Monetary Relief for which the Claimant was found eligible;

      b.      Notice of the scheduled Fairness Hearing on Individual Relief, Instructions for Filing an Objection, and an Objection to Individual Relief Form, in the formats attached as Appendix 3 (Part 2);

      c.      Information regarding the share of the $2,750,000 that has been allocated to the Claimant; and

      d.      Notification that any relief must first be approved by the Court.

41.     The Notice of Individual Relief Fairness Hearing Documents will include a document informing the Claimant of the group in which the Claimant has been placed (PAG or PNAG), and allowing PAG Claimants to reject the PAG designation and move to PNAG (PNAG Election).  The document will provide each PAG Claimant with the estimated adjusted pension benefit calculated using the formula agreed to by the Parties.

42.     Claimant's PNAG Election must be submitted via mail or email to the United States. PNAG Elections submitted by mail must be postmarked no later than thirty (30) days prior to the date set for the Fairness Hearing on Individual Relief.  PNAG Elections submitted via e-mail must be sent no later than thirty (30) days prior to the date set for the Fairness Hearing on Individual Relief.

43.     The Notice of Individual Relief Fairness Hearing Documents will be provided by the United States to the individual Claimants.  If a Claimant is known by the United States to be represented by counsel, the Claimant's counsel will receive a copy as well.

**D.     Objections to Proposed Individual Relief**

44.     A Claimant who wishes to object to any determination regarding Individual Relief as set out in his or her cover letter (Appendix 3 (Part 2)) must file a written objection in accordance with the requirements set forth in Appendix 3 (Part 2).  Objections shall be submitted to the United States and shall state the Claimant's name, mailing address, telephone number, and e-mail address; set forth a specific description of the Claimant's basis for disputing the relief determinations in the Proposed Individual Relief Lists; include copies of all documentation supporting the objection(s); state the name, mailing and e-mail addresses, and telephone number of the Claimant's counsel, if any; and state whether the Claimant wishes the opportunity to be heard in Court at the Fairness Hearing on Individual Relief.

45.     Objections submitted via U.S. Mail must be postmarked no later than thirty (30) days prior to the date set for the Fairness Hearing on Individual Relief, and objections submitted via e-mail must be transmitted electronically no later than thirty (30) days prior to the date set for the Fairness Hearing on Individual Relief.  Within four days of receipt of each timely or untimely objection, the United States will forward a copy of such objection to all Parties.

46.     Any Claimant who fails to submit a timely Objection to Individual Relief form shall be deemed to have waived any right to object to any determination on Individual Relief, unless there is good cause for the failure, as determined by the Court.

47.     No later than seven (7) business days prior to the Fairness Hearing on Individual Relief, the United States' counsel shall file with the Court copies of all objections received, and the Parties shall file their responses, if any, to timely objections, no later than seven (7) business days prior to the fairness hearing.

48.     At or after the Fairness Hearing on Individual Relief, the Court shall determine which, if any, objections to the Proposed Individual Relief Lists are well-founded.  The Court shall then approve the Lists as submitted or, if the Court finds that any objections are well-founded, shall amend the Lists consistent with such findings.

49.     The Court will find that an objection to the Proposed Individual Relief Lists, including an objection to the amount of Monetary Relief to be given to a Claimant, is well-founded only if the Court finds that the determination reflected in such List was not fair, adequate, reasonable, and consistent with federal law and the provisions of this Consent Decree.

50.     If the Court determines that the Proposed Individual Relief Lists (as submitted by the United States pursuant to Paragraph 38, or as amended by the Court pursuant to Paragraph 48, are fair, adequate, reasonable, and consistent with federal law and consistent with this Consent Decree, the Court shall approve the Individual Relief to Claimants at or after the Fairness Hearing on Individual Relief.  This approved relief shall be the Final Individual Relief Lists, and include a:

      a.     Final Monetary Relief List identifying who has been deemed eligible for Monetary Relief without pension adjustment, including each Claimant's share of the $2,750,000;

21

      b.      Final Monetary Relief List identifying who has been deemed eligible for

Monetary Relief with pension adjustment, including each Claimant's share of the

$2,750,000; and

      c.      Final Settlement Promotion List identifying who has been deemed eligible for a

Settlement Promotion.

## VII.   EXECUTION OF INDIVIDUAL RELIEF

### A.   Notice of Individual Relief and Release of Claims

51.    Within fifteen (15) days after the Court approves the Final Individual Relief Lists

pursuant to Paragraph 50, the United States shall send a notice of Individual Relief to each

Claimant via e-mail to the last-known e-mail address and via first-class U.S. mail to the last-

known mailing address.  The notice shall include a:

      a.      Notice of Individual Relief in the form set forth in Appendix 4; and an

      b.      Acceptance of Individual Relief and Release of Claims Form in the form set forth

         in Appendix 4.

52.    To receive the Individual Relief approved by the Court, a Claimant must return to the

United States an Acceptance of Individual Relief and Release of Claims Form as set forth in

Appendix 4 of this Consent Decree no later than forty-five (45) days after the Court approves the

Individual Relief to Claimants pursuant to Paragraph 50.

53.    A Claimant's failure to return an executed Acceptance of Individual Relief and Release

of Claims Form by the deadline set forth in Paragraph 52 shall constitute a rejection and forfeit

by the Claimant of the Individual Relief approved by the Court and shall release the Parties from

any further obligation under the Consent Decree to provide Individual Relief to the Claimant.

54.    No later than sixty (60) days after the Court approves the Final Individual Relief Lists,

the United States shall provide to the City and Union copies of all executed Acceptance of

Individual Relief and Release of Claims Forms that were returned. The United States shall also provide to all the Parties a list of all Claimants who submitted Acceptance of Individual Relief and Release of Claims Forms and a list of those Claimants who did not submit such forms.

**B.     Amended Final Individual Relief List**

55.     No later than seventy-five (75) days after the Court approves the Individual Relief to Claimants pursuant to Paragraph 50, the United States shall amend the Final Individual Relief Lists. The Amended Final Individual Relief Lists created by the United States shall include an:

     a.     Amended Final Monetary Relief List identifying who has been deemed eligible for Monetary Relief without pension adjustment, including each Claimant's share of the $2,750,000;

     b.     Amended Final Monetary Relief List identifying who has been deemed eligible for Monetary Relief with pension adjustment, including each Claimant's share of the $2,750,000; and

     c.     Amended Final Settlement Promotion List identifying who has been deemed eligible for a Settlement Promotion.

The Amended Final Individual Relief Lists shall not include any Claimant who failed to execute and return the Acceptance of Individual Relief and Release of Claims Forms in a timely manner as required by Paragraph 52.

56.     In establishing the Amended Final Monetary Relief Lists, the United States shall reallocate any Monetary Relief forfeited by Claimants who did not return Acceptance of Individual Relief and Release of Claims Forms among those who did in a manner keeping with the relative amounts given by the Court to those Claimants who returned an Acceptance of Individual Relief and Release of Claims Forms in a timely manner as required by Paragraph 52.

57.     No later than seventy-five (75) days after the Court approves the Individual Relief to Claimants pursuant to Paragraph 50, the United States shall provide the Parties the Amended Final Individual Relief Lists created pursuant to Paragraphs 55-56.

58.     The Amended Final Settlement Promotion List shall identify, for each rank to which Settlement Promotions will be made, the order in which offers of Settlement Promotion are to be extended to Claimants by the City.  The order will be determined solely by Plaintiffs.

**C.     Transfer of PNAG Funds to Qualified Settlement Fund**

59.     No later than thirty (30) days after the United States provides the Parties with the Amended Final Individual Relief List created pursuant to Paragraphs 55-57, but no earlier than October 15, 2018, the City shall send to the Qualified Settlement Fund all money in the Settlement Fund allocated to PNAG Claimants.

**D.     Distribution from Qualified Settlement Fund**

60.     No later than thirty (30) days after the Qualified Settlement Fund receives from the City the money described in Paragraph 59, the Qualified Settlement Fund shall make the following disbursements:

      a.     One Million Four Hundred Thousand Dollars ($1,400,000) to resolve attorney's fees and costs claimed by the NAACP, JBOF, the Baker Intervenors, and the Smith Plaintiffs up to, and including, the date when the Court enters this Consent Decree.  This amount shall be paid to the following entities pursuant to instructions to be provided by such entities to the Qualified Settlement Fund: (1) The Law Office of Kirsten Doolittle, P.A.; (2) The Lawyers' Committee for Civil Rights Under Law; (3) Miner, Barnhill & Galland, P.C.; and (4) Elfvin, Klingshirn, Royer & Torch, LLC.  This payment resolves claims by NAACP,

JBOF, the Baker Class, and the Smith plaintiffs for attorney's fees and costs for the period through the date of Final Entry of this Consent Decree.

    b.    Funds pursuant to Plaintiffs' Unopposed Motion for Distribution.

61.    No later than thirty (30) days after the Qualified Settlement Fund receives from the City the money referenced in Paragraph 59, the Qualified Settlement Fund shall send Monetary Relief award checks to PNAG Claimants.  The amount of the check shall be the amount shown for the Claimant on the Amended Final Monetary Awards List minus the amount of appropriately withheld taxes.

62.    The Qualified Settlement Fund shall be solely responsible for withholding and remitting to the appropriate taxing authorities the appropriate portion on any Monetary Relief award paid to PNAG Claimants.  The City will not be responsible for any taxes for Monetary Relief distributed to PNAG Claimants.

63.    No later than fifteen (15) days after the Qualified Settlement Fund sends Monetary Relief award checks to PNAG Claimants, the Qualified Settlement Fund shall provide to the United States a statement indicating the amount of the payment made to each PNAG Claimant, the amount withheld for taxes and other amount required to be withheld by law, and the purpose of each such withholding.

64.    No later than ninety days (90) days after the Qualified Settlement Fund sends Monetary Relief awards checks to PNAG Claimants, the Qualified Settlement Fund shall provide to the United States a list of all PNAG Claimants whose Monetary Relief payments are still outstanding.  The list shall identify which PNAG Claimants' checks appear to have been delivered (no returned check) but have not been cashed, and which PNAG Claimants' checks have been returned to the Qualified Settlement Fund as undeliverable. The Qualified Settlement Fund shall also provide a statement of the amount of funds that remain with the Fund.

65.    No later than one hundred twenty (120) days after the Qualified Settlement Fund sends Monetary Relief awards checks to PNAG Claimants, the United States shall deliver by e-mail and first class U.S. mail a letter to all PNAG Claimants whose Monetary Relief payments are still outstanding to inform such PNAG Claimants that their Monetary Relief may be redistributed or otherwise reallocated if they do not accept payment by a specified date that is one hundred eighty (180) days after issuance of the check.  The letter shall state that no further warnings regarding such distribution will be given.

66.    No later than two hundred ten (210) days after the Qualified Settlement Fund sends Monetary Relief awards checks to PNAG Claimants, the Qualified Settlement Fund shall provide the United States with a list of all PNAG Claimants whose Monetary Relief award checks were returned as undeliverable and/or uncashed, as well as a statement of the amount of funds remaining in the Qualified Settlement Fund.

67.    No later than two hundred forty (240) days after the Qualified Settlement Fund sends Monetary Relief awards checks to PNAG Claimants, the United States shall inform the Qualified Settlement Fund either that the remaining funds should be reallocated among the other PNAG Claimants who are listed on the Amended Final Monetary Relief List in a manner designed to preserve the relative proportions of the Claimants' shares of the portion of the Monetary Relief, or, if the remaining funds are *de minimis*, that the remaining funds should not be reallocated among the Claimants but rather shall be distributed to the JBOF and NAACP in equal shares consistent with the purposes of the Consent Decree.

**E.    Execution by the City**

68.    Within fifteen (15) days of the Parties submitting the Consent Decree for Final Entry, the City will provide the United States with all information in the City's control necessary to calculate the estimates in Appendix 3 for Claimants who have retired or entered the DROP

program as of that date.  In the event that additional Claimants retire or enter the DROP program between this date and the date the Court enters the Consent Decree, the City will provide the United States with all information in the City's control necessary to calculate the estimates in Appendix 3 for these Claimants within ten (10) days of Final Entry of the Consent Decree.

69.     Only PAG Claimants' Monetary Relief shall be treated as pensionable pursuant to this Consent Decree.

70.     No later than ninety (90) days after receipt of the amended Final Individual Relief List, the City will distribute the appropriate paychecks (containing the net Monetary Relief after all pension contributions and tax withholdings) to PAG Claimants, and, following Board approval, the Pension Fund will adjust the biweekly pension benefit of each PAG Claimant. The amount of the pension adjustment and contributions for the individual PAG Claimants will be derived using the agreed-to formula.  The net payment will be determined by the agreed-to formula subject to applicable tax withholding.

71.     Following pension adjustment, PAG Claimants' adjusted pension benefit will be treated as a regular pension benefit for all purposes going forward.

72.     Fifteen (15) days after issuing the paychecks and adjusting the pension benefits for all PAG Claimants referenced in Paragraph 70, the City shall send confirmation to the United States that all such paychecks were sent and pension benefits were adjusted.

73.     Ninety (90) days after the City sends the paychecks to the PAG Claimants, the City shall provide to the United States by email a list of any PAG Claimants whose checks have been returned or have not been cashed, if any.  The United States will contact the PAG Claimants and ascertain the reason for the outstanding payment.  The Parties will work cooperatively to address any issues and ensure payment to the PAG Claimants.

74.     The Office of General Counsel, as counsel for the City and the Pension Fund, confirms that the Police and Fire Pension Fund Board has the ability to and will carry out the obligations in Paragraphs 69-72 as directed by the ordinance approving the agreement to be passed by the City Council, and by the Court's entry of the Consent Decree as contemplated by this agreement.

75.     In the event that the obligations to make pension adjustments are not made within 120 days of the United States providing the Amended Final Individual Relief List to the City, the City will promptly confer with the United States and propose a remedy.  If the City and the United States cannot agree on a remedy, or the City does not execute the remedy within the time agreed with the United States, the United States may move the Court to impose a remedy on the City.

## VIII.   NEW PROMOTION EXAMINATIONS

### A.     Introduction

76.      The City will develop and use New Promotion Examinations for all Promotion Positions.

77.     Following the Court's Final Entry of the Consent Decree, the City will administer the first New Promotion Examination for each Promotion Position only upon agreement with the Reviewing Party(ies).  Such agreement from the Parties will not be unreasonably withheld.  If an agreement cannot be reached, the Parties will seek resolution from the Court.  Where applicable, the Court will use Title VII disparate impact standards to resolve disputes regarding the New Promotion Examinations.

### B.     Interim Selection Process

78.      The Parties recognize that the proper development of New Promotion Examinations for the Promotion Positions will take time, and that the City has immediate operational needs that require the selection of candidates into the Promotion Positions prior to the implementation of New Promotion Examinations in accordance with Paragraphs 81-107 of this Consent Decree.

79.      If the City requires candidates be placed in Promotion Positions while the Parties are still developing New Promotion Examinations and there is no existing eligibility list for the position or the conditions set forth in Paragraph 95 exist, the City must administer the examination using the format used on the prior examination for that position.

80.      Approval from the Reviewing Party(ies) is not required for the administration of the current promotion process during the Interim Selection Process in accordance with the terms of this Consent Decree.  The Parties to this Consent Decree will not challenge an examination given pursuant to the Interim Selection Process provisions.

**C.      Development of New Promotion Examinations**

81.      For purposes of developing New Promotion Examinations, the City will provide all relevant examination-development documents described in this section as follows:

      a.      For Engineer and Suppression examinations, to the United States and counsel for the NAACP, JBOF, Baker Plaintiffs, and Smith Plaintiffs;

      b.      For Rescue examinations, to the United States and counsel for the Smith Plaintiffs; and

      c.      For Prevention examinations, to the United States.

82.      The City will select an outside test developer pursuant to the City's procurement process in accordance with the Jacksonville Ordinance Code, to develop and administer New Promotion Examinations.

83.      The City will reference this Consent Decree as it pertains to New Promotion Examination development in any Request for Proposals ("RFP") for the retention of the test developer.

84.      At the time it issues any RFP for the outside test developer, the City will provide a copy of the RFP to counsel for all parties.

29

85.     The City's selected test developer will consult with the Reviewing Party's(ies') expert regarding his/her planned job analysis for each of the Promotion Positions.

86.     The City will provide the final planned job analysis to the Reviewing Party(ies) and other Parties' counsel in accordance with Paragraph 81.

87.     Within ten (10) business days of receipt of the planned job analysis, the Reviewing Party(ies) will provide input to the City (including objections), if any, as to the planned job analysis, and the Reviewing Party(ies) will promptly confer with the City telephonically or in person about same.

88.     If the Parties are unable to resolve the objections, such objections must be submitted to the Court within ten (10) business days of the conference.

89.     After objections (if any) to the planned job analysis are resolved, the City's test developer will conduct a new job analysis for each Promotion Position and provide a written report for each such Position to the City.  The City will provide the written report to the Reviewing Party(ies) and other Parties' counsel in accordance with Paragraph 81.

90.     Within ten (10) business days of receipt of the written report(s) referenced in Paragraph 89 from the City's test developer, the Reviewing Party(ies) will provide input to the City (including objections), if any, as to the job analysis(es), and the Reviewing Party(ies) will promptly confer with the City telephonically or in person regarding same.

91.     If the Parties are unable to resolve the objections, such objections must be submitted to the Court within ten (10) business days of the conference.

92.     One hundred fifty (150) days prior to the test administration of any New Promotion Examination, the City shall provide the Reviewing Party(ies) and other Parties' counsel, in accordance with Paragraph 81, with its proposal for the New Promotion Examination and the underlying documents supporting its proposal, including the types of selection components the

30

City plans to use, what knowledges, skills, abilities and other characteristics will be tested, linkages, the proposed weights, and the proposed use (e.g.; pass/fail, rank order) of the components.

93.     Within thirty (30) days of receiving the information outlined in Paragraph 92 the Reviewing Party(ies) shall provide input to the City on the proposal.  The Reviewing Party(ies) will provide notices of objection, if any, to the City regarding the City's proposal for a New Promotion Examination.

94.     The Reviewing Party(ies) will confer with the City regarding objections to the City's proposal for a New Promotion Examination.   If the Parties are unable to resolve the objections, such objections must be submitted to the Court within ten (10) business days of the conference.

95.     If any objections submitted to the Court for resolution pursuant to Paragraph 94 are not resolved by the Court at least sixty-one (61) days before a promotion examination must be administered by the City, the City must administer the examination using the format used on the prior examination for that position.

96.     After completion of the process for consultation and objection in Paragraph 94, including Court resolution, if necessary, the City may administer the New Promotion Examination and the Reviewing Party(ies) will not challenge validity.

97.     The content of each New Promotion Examination will depend on the results of the relevant job analysis.  The New Promotion Examination may include components such as: (a) job knowledge tests; (b) situational judgment tests; (c) video simulations; (d) in-basket exercises; and (e) tactical exercises that are given on paper or a computer but require a specific answer. The New Promotion Examination will not consist solely of a test that measures or purports to measure only job knowledge.

98.     Subject Matter Experts ("SMEs") employed, previously employed, having a known affiliation with a person employed or previously employed by the JFRD, residing in Florida, or having resided in Florida within the last three (3) years prior to the test development process for which they are being consulted will not be involved in the development of test questions and/or scenarios.  JFRD employees shall serve as SMEs only to assist in the development and update of each job analysis during the course of this Consent Decree.

99.     The components and weights of the New Promotion Examinations, for pass-fail and rank-order use, will be based on the results of the relevant job analysis.

100.    The New Promotion Examinations, in accordance with the Collective Bargaining Agreement in existence at the entry of the Consent Decree, will require objective (predetermined) answers and will not involve live assessors.

101.    For New Promotion Examinations, in accordance with the Collective Bargaining Agreement in existence at the entry of the Consent Decree: (a) examination questions may be asked on paper or a computer, but the examination will require examination takers to select an answer that will be recorded either on paper or by computer or comparable electronic device; (b) answers will not be recorded by audio or video means; and (c) examinations will be scored on-site and candidates will receive their raw scores the day of the test, at the test site.

102.    After the protest process concludes, in accordance with the Civil Service Rules and the relevant Collective Bargaining Agreement in existence at the time the examination is given, veterans' preference points and seniority points will be added to the raw scores of passing Candidates to arrive at a "final examination score."  Candidates will be placed on an eligibility list in rank order based on final examination score and will be offered promotion in that order.

103.    Within 30 days after the certification of the eligibility list following the first and the second regular administrations (e.g., not make-up examinations) of the New Promotion

Examination for any Promotion Position, the City will provide to the Reviewing Party(ies) and other Parties' counsel in accordance with Paragraph 81 the following information for each candidate: employee identification number, race, gender, ethnicity, overall score, score on any sub-part of the examination, answer selected for each question on the test, and whether that answer was correct.  This information will be provided in machine-readable format.

104.    If, after the administration of the first or second New Promotion Examination for any Promotion Position, the Reviewing Party(ies) choose to recommend alternatives, they must satisfy the third prong of Title VII's disparate impact provision, and the proposed alternative must be in compliance with the New Promotion Examination requirements set forth in this Consent Decree.  Any such recommended alternatives must be submitted to the City with a copy to the Union within one hundred eighty (180) days of the City providing the information required in Paragraph 103, and must include the justification for the recommended alternative(s), as well the data upon which the Reviewing Party(ies) rely in making the recommendation.  The City will evaluate whether the alternative promotion examination recommended by the Reviewing Party(ies) will be adopted and inform the Reviewing Party(ies), the Union, and other Parties' counsel in accordance with Paragraph 81 of its decision within ninety (90) days of receiving the Reviewing Party's(ies') recommendation, justification and data upon which the Reviewing Party(ies) rely in making the recommendation.  The Union may object to the City's notification on the grounds that the proposed alternative would not comply with the Collective Bargaining Agreement, the law or the terms of this Consent Decree.  Objections by the Reviewing Party(ies) or the Union must be made within twenty (20) days of the City's notification and must be submitted to the Court for resolution.

105.    The process described in this Consent Decree will be used for the administration of any New Promotion Examination during the pendency of the Consent Decree.  The City will consult

with the Reviewing Party(ies), and provide information and documents to the Reviewing

Party's(ies) and other Parties' counsel in accordance with Paragraph 81 only for the development

and administration of the first two New Promotion Examinations for each Promotion Position.

106.    Any additional test development materials created by the City and its experts and

consultants related to the New Promotion Examinations will be made available to the Reviewing

Party(ies) upon request.

107.    All attorneys and experts in receipt of examination development materials pursuant to the

provisions of this Consent Decree, recognize the highly sensitive nature of examination

development materials, and will maintain their confidentiality and will not disclose the

examination development materials to any other entity or person, including their respective

clients.  Should litigation ensue warranting the Court's review of the examination development

materials, the Parties will file such materials under seal.

## IX.    SETTLEMENT PROMOTIONS

108.    Within fifteen (15) days of receiving the Amended Final Settlement Promotion List from

the United States, the City shall create up to forty (40) roving positions (26 Engineers, 7

Suppression Lieutenants, 4 Suppression Captains, 2 Suppression District Chiefs, 1 Rescue

Lieutenant) which shall be labeled "Settlement Promotion Positions" and will be offered to the

individuals listed in the Amended Final Settlement Promotion List created by the United States

pursuant to Paragraph 55.  Within twenty (20) days of receiving the Amended Final Settlement

Promotion List from the United States, the City will contact the Claimants on the Amended Final

Settlement Promotions List in the normal manner (i.e., by telephone) to extend the offer of

promotion, and each Claimant will be expected to accept or decline the offer during the

telephone conversation.  The City will explain that the offer is for a Settlement Promotion

pursuant to this Consent Decree.  The City will also send a confirmatory written offer, by e-mail

to the Claimant's work e-mail address (@coj.net), prominently indicating: (i) that the offer is an offer of Settlement Promotion being made pursuant to the Consent Decree entered by the Court and (ii) that the Claimant must accept or reject the offer by replying to the e-mail containing the offer.  During the telephone conversation, the City will ask the Claimant to confirm the acceptance/rejection of the offer by replying to the e-mailed offer.  On the date that such an offer of Settlement Promotion is sent to a Claimant, the City shall also notify the United States and counsel for the Claimant, if the Claimant is represented.  Claimants who accept Settlement Promotion offers will move into those positions the Saturday following acceptance of the offer. If, after the Fairness Hearing on Individual Relief, Claimants eligible for Settlement Promotions become ineligible prior to being offered a Settlement Promotion, they will be removed from the Amended Final Settlement Promotion List, and the positions that they would have occupied will be offered to other eligible Claimants on the Settlement Promotion Position List.

109.    Offers of Settlement Promotion will be extended by the City to the Claimants on the Amended Final Settlement Promotion List in the order in which the names appear on the list compiled by the United States until either all roving assignments have been filled for each position, or the City exhausts the Amended Final Settlement Promotion List for each position.  If any roving position created pursuant to Paragraph 108 remains unfilled after the City exhausts the Amended Final Settlement Promotion List for the applicable position, the roving position will be eliminated, and the number of Settlement Promotion Positions required under this Consent Decree will be reduced accordingly.

110.    Nothing in this Consent Decree shall preclude any Claimant from applying for a promotion or being promoted under the City's regular process (i.e. the promotion process used prior to the Court's final entry of this Consent Decree), Interim Selection Process, or New Promotion Examination.  However, promotion of a Claimant under the City's regular process,

Interim Selection Process or New Promotion Examination shall not count toward the fulfillment of the City's Settlement Promotion obligations under this Consent Decree.  The City also may not refuse to select a Claimant under its regular process, Interim Selection Process or New Promotion Examination on the basis that the Claimant is eligible for a Settlement Promotion or Monetary Relief under this Consent Decree.

111.    A Claimant who holds a Settlement Promotion Position will be treated the same as other individuals in the same position or rank for all employment purposes.

112.    Nothing in this Consent Decree shall be construed to mean that any Claimant who receives a Settlement Promotion is to receive or is entitled to retroactive seniority.

113.    The Union agrees that none of its members has an expectation of receiving a Settlement Promotion position as these are newly created positions for this Consent Decree.  Claimants who are Union members have a right to indicate interest in Settlement Promotion relief but are not guaranteed a Settlement Promotion Position.

114.    In accordance with the JFRD regular policies and procedures, after serving for one (1) year in a Settlement Promotion Position, a Claimant who qualifies in all other respects to take the next rank promotion examination may sit for such examination and, if selected, will be promoted as any other candidate would be promoted.

115.    If a Claimant in a roving assignment bids to transfer to a non-roving assignment, the Claimant's bid will be treated as would a bid from a non-Claimant in that position.

116.    To be awarded a Settlement Promotion under this Consent Decree, the Claimant must have met the qualifications set forth in the Professional Growth and Development Plan ("PGDP"), as they existed at the time the Claimant took the earliest promotion examination on which he/she relies for Settlement Promotion eligibility, assuming that any PGDP requirements

were in effect at the time of that examination, and must have scored at least a 70 on that examination.

117.    Settlement Promotion Positions will be new promotion positions created for purposes of complying with this Consent Decree.  Once a Claimant who received a Settlement Promotion Position separates from JFRD, the Settlement Promotion Position created pursuant to this Consent Decree will revert to its original designation.

## X.    DURATION OF THE CONSENT DECREE

118.    Absent pending motions, this Consent Decree shall expire after the occurrence of the latter of the following:

      a.      The distribution of the Settlement Fund;

      b.      Fulfillment of the Parties' obligation to create and attempt to fill the 40 Settlement Promotion positions addressed in Paragraph 108; and

      c.      Completion of the second regular test administration of the New Promotion Examination for each Promotion Position, the City's response to the Reviewing Party's (ies') alternative promotion process recommendations as set forth in Paragraph 104-105, and any Court resolution, if necessary, if related to the second administration or alternative process recommendation thereto.

## XI.    LEGAL PROVISIONS

119.    The Court shall retain jurisdiction over this Consent Decree for the purpose of resolving any disputes or entering any orders that may be appropriate to implement the Consent Decree.

120.    If there is any conflict between this Consent Decree and the requirements of any local law or regulation, the terms of this Consent Decree shall control.

121.    This Consent Decree constitutes the entire agreement of the Parties, and supersedes all prior representations, negotiations, and undertakings not set forth or incorporated herein.

122.     Nothing in this Consent Decree is intended to contradict or alter, nor does it contradict or alter, the terms or conditions of the Collective Bargaining Agreement, Article 13 "Promotions," applicable to Firefighter, Engineer, Lieutenant and Captain, or the Collective Bargaining Agreement, Article 13 "Promotions," applicable to District Chief, both of which are attached hereto as Appendix 5 and incorporated herein by reference.

123.     The Plaintiffs and the City agree that they will defend the provisions of this Consent Decree if it or its implementation is challenged.

124.     If the Court reallocates the distribution of monies under this Consent Decree, all redistributed monies will be distributed among eligible Claimants.

125.     Any interest earned from the Qualified Settlement Fund established pursuant to this Consent Decree will be allocated by the United States among eligible PNAG claimants pursuant to Paragraph 34.

126.     The City agrees that it will not retaliate, as defined by existing law at the time of any alleged act of retaliation, against any individual because he or she received a benefit under this Consent Decree.  Should there be an allegation of such retaliation, the City will investigate and seek to resolve the matter pursuant to its already existing policies.  During the life of the Consent Decree, the United States or private counsel may bring to the City's attention in writing any allegation or claim of retaliation.  The Parties agree that they shall work collaboratively to amicably resolve any such allegation or claim.  Nothing in this Paragraph shall be construed to create an entitlement to attorney's fees under this Consent Decree, for work done to address such claims of retaliation, or for non-economic damages.

127.     In the event of a failure by a party to perform in a timely manner any act required by this Consent Decree or otherwise to act in conformance with any provisions thereof, the opposing

party may move this Court to impose any remedy authorized by law or equity, except as limited in Paragraph 126.

128.    Except as provided elsewhere in this Consent Decree (i.e., Paragraph 136-141) or ordered by the Court, the City is not obligated to pay any amounts on behalf or on account of this settlement to the Plaintiffs or Claimants in excess of the Settlement Fund provided for purposes of this Consent Decree.  If the relief provided under this Consent Decree requires contributions to the Police and Fire Pension Fund, all contributions on behalf of the City and individual PAG Claimants will come out of the Settlement Fund and will be derived from the agreed-to formula. Similarly, all Medicare payments, on behalf of the City and individual Claimants, will come out of the Settlement Fund.

## XII.    RECORD KEEPING

129.    While this Consent Decree remains in effect the City and Plaintiffs shall maintain all of the following records:

    a.    All documents relating to the screening, evaluation, or selection of candidates to the Promotion Positions including all documents relating to the development and/or validation of New Promotion Procedures pursuant to Paragraphs 81-107 of this Consent Decree;

    b.    All documents relating to written or verbal complaints made by any person or entity regarding discrimination on the basis of race in the selection of candidates to the Promotion Positions; and

    c.    All other documents relating to the Parties' compliance with the requirements of this Consent Decree.

130.    In addition to the items above, during the duration of the Consent Decree, the City shall maintain all documents relating to the promotion of Claimants who accept offers of Settlement Promotions under this Consent Decree.

131.    Except as otherwise provided in this Consent Decree, any Party shall make available to a requesting Party, no later than thirty (30) days after the requests is presented in writing, any records maintained in accordance with this Consent Decree.

132.    Any documents provided to another Party pursuant to the record-keeping provisions of this Consent Decree shall be redacted to protect personally identifiable information such as birthdate, social security number, and home address.

## XIII.   MAILINGS AND NOTIFICATIONS

133.    Unless otherwise stated, for all mailings by the Parties pursuant to this Consent Decree, the Parties shall keep records of all documents that are returned as undeliverable.  If any documents are returned as undeliverable, the mailing Party shall promptly notify the other Parties and attempt to identify an updated email or mailing address as soon as practicable.  If any Party identifies an alternate email or mailing address, that address shall be shared with all Parties.  Within five (5) days of receipt of an alternate address, the mailing Party shall re-mail the document.

134.    In the event that a Claimant is deceased, all notifications and applicable relief will be provided to the individual so designated by the Jacksonville Ordinance Code (PAG Claimants), or the individual required by law (PNAG Claimants).

135.    All written information and documents required to be delivered under the Consent Decree to the United States by Claimants and Objectors shall be sent:

by email:

Jacksonville.Settlement@usdoj.gov

40

by United States Mail:

> U.S. Department of Justice
> Consolidated City of Jacksonville Litigation Team
> Civil Rights Division/ELS
> P.O. Box 14400
> Washington, D.C. 20044-4400

## XIV.  ATTORNEY'S FEES AND COSTS (INCLUDING EXPERT COSTS) FOR TEST DEVELOPMENT REVIEW AND MONITORING

136.    The United States and the City will not seek recovery of attorney's fees or costs (including expert costs) from each other or any other party for any work incurred as part of test development review and monitoring.

137.    In the event the United States is not a Reviewing Party but counsel for the NAACP, JBOF, or Smith plaintiffs become Reviewing Party(ies) for any examination(s) pursuant to Paragraph 11, the remaining plaintiff Reviewing Party(ies) will use a single expert to review the examinations at issue.  The City agrees to pay such expert at the rate set forth below:

   a.     For review and consultation for the first New Promotion Examination for each rank  pursuant to this Consent Decree, not more than $15,000 per examination with a maximum of 6 examinations (Engineer, Lieutenant Suppression, Captain Suppression, District Chief Suppression, Captain Rescue, and District Chief Rescue).

   b.     For review and consultation for the second New Promotion Examination for each rank, and for recommendations relating to the future development and administration of a third examination, for each rank , not more than $7,500 per examination with a maximum of 6 examinations (Engineer, Lieutenant Suppression, Captain Suppression, District Chief Suppression, Captain Rescue, and District Chief Rescue).

41

138.    If counsel for the NAACP, JBOF, or Smith plaintiffs become Reviewing Party(ies) for any examination(s) pursuant to Paragraph 11 of this Consent Decree, they shall be entitled to recover attorney's fees and attorney's costs for test development review and/or monitoring of the Consent Decree up to a collective monetary cap of $20,000 for the remaining duration of the Consent Decree.

## XV.    ATTORNEY'S FEES FOR POST-CONSENT DECREE MOTIONS

139.    The Parties shall endeavor in good faith to resolve informally any differences concerning compliance with this Consent Decree, test development, review, and/or monitoring, prior to bringing such matters to the Court for resolution.

140.    If motion practice relating to any issue occurs after Final Entry of the Consent Decree, any party who prevails on a motion may petition the Court for an award of attorney's fees and costs pursuant to applicable law. Parties are only entitled to attorney's fees should they prevail as to the motion brought before the Court or by agreement.

141.    No monetary cap shall apply to claims for attorney's fees or costs stemming from motion practice following Final Entry of the Consent Decree, with the following exceptions:

    a.  Attorney's fees shall not exceed $325 per hour per attorney, with a cap of twenty (20) hours per motion, and forty (40) total attorney hours per year; and

    b.  An award of costs shall not include travel time, travel expenses, meals, mileage, or lodging.

142.     Other than this paragraph, neither this Consent Decree, nor any part thereof, becomes binding or enforceable in any manner against any party to the Consent Decree until the Final Entry of this Consent Decree.  The NAACP, JBOF, Baker Intervenors, and Smith Plaintiffs agree that no other claims that fall within the scope of their respective releases set out in Paragraph 17 will be filed before the Court has ruled on the Final Entry of the Decree.  If the NAACP, JBOF,

a Baker Intervenor, and/or a Smith Plaintiff has a claim that falls within their respective Paragraph 17 release for which the statute of limitations would run if not filed prior to the Court's ruling on the Decree, it will be reported to their respective counsel, who will provide the Defendant against whom the claim would be asserted with notice of the claim and that the claim is not being filed solely because of this paragraph of the Consent Decree.  The parties agree that time for filing that claim shall be tolled until the Court decides whether it will enter the Consent Decree as final.  If, after a hearing on the terms of the Consent Decree, the Court decides not to enter the Consent Decree and the NAACP, JBOF, any Baker Intervenor, or any Smith Plaintiff subsequently files the claim that falls within the scope of their respective releases listed in Paragraph 17 and which was identified to a Defendant as not being filed solely because of this paragraph of the Consent Decree, the Defendant against whom the claim was filed will not object to that claim on the grounds that it was not timely submitted.  If the NAACP, JBOF, any Baker Intervenor, and/or any Smith Plaintiff files a claim within the scope of their respective release in Paragraph 17 against a Defendant before the Court has ruled on Final Entry of the Decree, the Defendant against which the claim was filed may send written notice to all the other parties requesting a conference be promptly held regarding the claim.  If, following the conference, the Defendant against whom the claim was filed requests that the claim be withdrawn, and the claim is not successfully withdrawn (i.e., either the complaining party or the relevant agency continues to pursue the claim in any manner), the Defendant may withdraw from this Consent Decree prior to its final entry.

It is so **ORDERED**, this _____ day of _____, 2018

_____
Judge Timothy J. Corrigan
United States District Judge

43

AGREED AND CONSENTED TO BY:

**FOR PLAINTIFF UNITED STATES OF AMERICA:**

JOHN M. GORE
Acting Assistant Attorney General

DELORA L. KENNEBREW
Chief

SHARYN TEJANI
Deputy Chief

_____
HECTOR F. RUIZ, JR
(TX Bar No. 24029814 )
hector.ruiz@usdoj.gov
BRIAN G. MCENTIRE
(VA Bar No. 48552)
brian.mcentire@usdoj.gov
JEREMY P. MONTEIRO
(DC Bar No. 977628)
jeremy.monteiro@usdoj.gov
Trial Attorneys
U.S. Department of Justice
Civil Rights Division
Employment Litigation Section
601 D Street, NW, Room 4034
Washington, DC 20530
Telephone: (202) 514-3851
Facsimile: (202) 514-1005


Dated: _April 11, 2018_____

**FOR PLAINTIFF EQUAL
EMPLOYMENT OPPORTUNITY
COMMISSION:**

Robert E. Weisberg, Regional Attorney
robert.weisberg@eeoc.gov
Miami District, EEOC
100 SE 2nd Street, Suite 1500
Miami, FL 33131-2216

Dated: 4/10/18

45

FOR PLAINTIFF NATIONAL
ASSOCIATION FOR THE
ADVANCEMENT OF COLORED
PEOPLE, JACKSONVILLE BRANCH:

ISAIAH RUMLIN
President, NAACP, Jacksonville Branch

Dated: _4-10-2018_

COUNSEL FOR THE NATIONAL
ASSOCIATION FOR THE
ADVANCEMENT OF COLORED
PEOPLE, JACKSONVILLE BRANCH:

DARIELY RODRIGUEZ
Lawyers Committee for Civil Rights
1401 New York Avenue, NW #400,
Washington, DC 20005
(202) 662-8600

BENJAMIN J. BLUSTEIN
ROBERT S. LIBMAN
Miner, Barnhill & Galland, P.C.
14 W. Erie St.
Chicago, IL 60654
Telephone: 312.751.1170
Telefax: 312.751.0438

KIRSTEN DOOLITTLE  (Fla. Bar No. 0942391)
207 North Laura St, Suite 240
Jacksonville, FL 32202
Telephone: (904) 551-7775
Email: kd@kdlawoffice.com

Dated: _4-11-2018_

46

**FOR PLAINTIFF JACKSONVILLE**
**BROTHERHOOD OF FIREFIGHTERS:**

JAMES EDWARDS
President, Jacksonville Brotherhood of Firefighters

Dated: 4 – 09 – 2018

**COUNSEL FOR THE JACKSONVILLE BROTHERHOOD OF FIREFIGHTERS AND**
**THE BAKER INTERVENORS**

KIRSTEN DOOLITTLE
Fla. Bar No. 0942391
207 North Laura St, Suite 240
Jacksonville, FL 32202
Telephone: (904) 551-7775
Email: kd@kdlawoffice.com

Dated: 4-9-2018

47

**INDIVIDUAL BAKER INTERVENORS**

_____
Esley L. Baker, Jr., Baker Intervenor

Dated: 9 Apr 18

_____
Dominique S. Bartley, Baker Intervenor

Dated: 4/11/18

_____
King R. Davis, Baker Intervenor

Dated: 4-10-18

_____
Ernest Glover, Jr., Baker Intervenor

Dated: 4-9-18

_____
Sharon A. Gould, Baker Intervenor

Dated: 4-9-18

_____
Michael K. Harris, Baker Intervenor

Dated: 4-9-18

_____
Byron A. Jackson, Baker Intervenor

Dated: 4-9-18

_____
Corey K. McKinney, Baker Intervenor

Dated: 4/9/18

_____
Gregory A. Neal, Baker Intervenor

Dated: 4-09-18

_____
Emanuel Porter, Baker Intervenor

Dated: 4/9/18

_____
Roosevelt Prier, Jr., Baker Intervenor

Dated: 9 April '18

_____
Howard Smothers, Jr., Baker Intervenor

Dated: 4-9-18

_____
Ervin J. Young, Jr., Baker Intervenor

Dated: 04-9-2018

48

Dated: _____

Dated: _____

_____

_____

Dominique S. Bartley, Baker Intervenor

Gregory A. Neal, Baker Intervenor

Dated: _____

Dated: _____

_____

_____

King R. Davis, Baker Intervenor

Emanuel Porter, Baker Intervenor

Dated: _____

Dated: _____

_____

_____

Ernest Glover, Jr., Baker Intervenor

Roosevelt Prier, Jr., Baker Intervenor

Dated: _____

Dated: _____

_____

_____

Sharon A. Gould, Baker Intervenor

Howard Smothers, Jr., Baker Intervenor

Dated: _____

Dated: _____

_____

_____

Michael K. Harris, Baker Intervenor

Ervin J. Young Jr. , Baker Intervenor

Dated: _____

Dated: _____

_____

Byron A. Jackson, Baker Intervenor

Dated: _____

**INDIVIDUAL SMITH PLAINTIFFS:**

_____

_____

Sari Nelson, Smith Plaintiff

Timothy Bynum, Smith Plaintiff

49

Dated: 4/3/18

_____
Rickey Adams, Smith Plaintiff

Dated: 4-3-2018

_____
Kevin Baker, Smith Plaintiff

Dated: 4-3-2018

_____
George Bartley, Smith Plaintiff

Dated: 4/3/18

_____
Johnny Battle, Smith Plaintiff

Dated: 4/3/2018

_____
Damian Bell, Smith Plaintiff

Dated: 4/3/2018

_____
Johnny Buchanan, Smith Plaintiff

Dated: 4-4-18

Dated: 4-3-2018

_____
Alfred Davis, Smith Plaintiff

Dated: 4-4-2018

_____
Tracy Ellison, Smith Plaintiff

Dated: 4/3/2018

_____
Prudencia Fray-Savage, Smith Plaintiff

Dated: 4-3-2018

_____
Perman Hagans, Smith Plaintiff

Dated: 4/3/2018

_____
Robert Hickson, Smith Plaintiff

Dated: 4-4-18

_____
Rudolph Johnson, Smith Plaintiff

Dated: 3 APR 18

_____
Winston Judge, Smith Plaintiff

_____
Brian Ragin, Smith Plaintiff

50

Dated: 4-3-2018

_____
Francine Lafavor, Smith Plaintiff

Dated: 4/3/2018

_____
Roderick Laws, Smith Plaintiff

Dated: 4/4/2015

_____
Marck Narcho, Smith Plaintiff

Dated: 4/4/2018

_____
Timothy Norris, Smith Plaintiff

Dated: 4/4/18

_____
Antonio Pate, Smith Plaintiff

Dated: 4/3/2018

Dated: 4/03/2018

_____
Rufus Smith, Smith Plaintiff

Dated: 4/3/2018

_____
Roderick Spann, Smith Plaintiff

Dated: 4/3/2018

_____
Marcel White, Smith Plaintiff

Dated: 4/4/2018

_____
Dwight Williams, Smith Plaintiff

Dated: 4/3/18

_____
Marvin Wilson, Smith Plaintiff

Dated: 4/3/2018

COUNSEL FOR THE SMITH PLAINTIFFS

_____
BRUCE B. ELFVIN (Ohio Reg. #0015694)

51

Elfvin, Klingshirn, Royer & Torch
4700 Rockside Road, Suite 530
Independence, Ohio  44131
Telephone: 216-382-2500
Email: bruce@ekrtlaw.com

Dated: _4 – 8 – 2018_____

**FOR THE JACKSONVILLE ASSOCIATION OF FIRE FIGHTERS,
LOCAL 122, IAFF:**

52

**FOR THE JACKSONVILLE ASSOCIATION OF FIRE FIGHTERS, LOCAL 122, IAFF:**

RANDY WYSE
President, Jacksonville Association of Fire Fighters, Local 122, IAFF

Dated:  April 10, 2018

**COUNSEL FOR THE JACKSONVILLE ASSOCIATION OF FIRE FIGHTERS, LOCAL 122, IAFF:**

PAUL A. DONNELLY
Florida Bar No. 813613
paul@donnellygross.com
Donnelly & Gross
2421 NW 41st Street, Suite A-1
Gainesville, FL 32606
Telephone: (352) 374-4001
Facsimile: (352) 374-4046

Dated:  April 10, 2018

**FOR THE CITY OF JACKSONVILLE:**

_(signature)_ 7/17/19

(sign)                              (Dated)

_Lenny Curry_

(print name)

                            Sam E. Mousa
                            Chief Administrative Officer
                            For: Mayor Lenny Curry
                            Under Authority of:
                            Executive Order No. 2015-05

_Mayor_

(print title)

STATE OF FLORIDA
COUNTY OF DUVAL

The foregoing instrument was acknowledged before me this _17th_ day of ~~March~~ _July_, 2018, by
_____Sam E. Mousa_____ , who is: ☒ personally known to me; ☐ produced identification.

Type of identification produced: _____

                            ┌─────────────────────────────┐
                            │ ALICE W. NEWMAN │
                            │ MY COMMISSION # GG 187618 │
_(Notary signature)_        │ EXPIRES: June 19, 2022 │
                            │ Bonded Thru Notary Public Underwriters │
Signature of Notary Public   └─────────────────────────────┘

      State of Florida

Approved as to form by:

Jon Phillips
Deputy General Counsel
Florida Bar No.: 273813

53

# APPENDIX 1 (PART 1)

## [COVER LETTER TO CLAIMANTS]

Mr. XXXXXX
XXXXXXXX
Jacksonville, Florida XXXX

Re:    <u>United States et al. v. Consolidated City of Jacksonville et al.</u>,
        Civil Action 3:12-cv-451-J-32MCR (M.D. Fla.), <u>Smith et al. v. Consolidated City of</u>
        <u>Jacksonville et al.,</u> Civil Action 3:11-cv-345-J-32MCR (M.D. Fla.), and <u>EEOC v.</u>
        <u>Jacksonville Association of Fire Fighters Local 122, IAFF</u>, Civil Action 3:12-cv-491-J-
        32MCR (M.D. Fla.).

Dear:

        **Please read these documents carefully.**

        This letter is to notify you of the settlement of civil lawsuits among Plaintiffs United States of America, National Association for the Advancement of Colored People, Jacksonville Branch ("NAACP"), Jacksonville Brotherhood of Firefighters ("JBOF"), the Equal Employment Opportunity Commission ("EEOC"), and two groups of private plaintiffs (the Smith Plaintiffs and Baker Intervenors), and Defendants Consolidated City of Jacksonville and Jacksonville Association of Fire Fighters, Local 122, IAFF ("Union") that may affect you.  You may be eligible for relief from this settlement.

        Enclosed please find four documents:

1. **<u>NOTICE OF SETTLEMENT AND FAIRNESS HEARING</u>**
This document describes the basis of the lawsuit and a summary of the terms of the settlement.  The settlement agreement itself is available at: <u>www._____</u>.

        In addition, the document provides the time and place of a **Fairness Hearing** regarding the settlement and tells you how to make an objection to the terms of the settlement if you choose to do so.

2. **<u>INSTRUCTIONS FOR FILING AN OBJECTION PRIOR TO THE FAIRNESS HEARING</u>**

3. **<u>OBJECTION FORM</u>**

        *If you do not return the form on time, you may lose your opportunity to object.*

**4.** <u>**INTEREST IN RELIEF FORM**</u>

If the Court approves the settlement of this case after the **Fairness Hearing**, you may be eligible for relief.  If you are interested in relief, you **MUST** return the enclosed form by **[date]**.

*If you do not return the form on time, you may lose your opportunity to get relief.*

*If you have questions, you may contact the Employment Litigation Section of the Civil Rights Division of the United States Department of Justice at 1-833-341-4673.  The Department of Justice can provide information on the settlement, however, it is not authorized to provide legal advice to individuals.*

Sincerely,


Employment Litigation Section
Civil Rights Division
U.S. Department of Justice


Enclosures

**APPENDIX 1 (PART 2)**

**NOTICE OF SETTLEMENT AND FAIRNESS HEARING**

On _____, 2018, the Parties (United States of America; the National Association for the Advancement of Colored People, Jacksonville Branch ("NAACP"), the Jacksonville Brotherhood of Firefighters ("JBOF"); the Equal Employment Opportunity Commission ("EEOC"), two groups of private individuals (Smith Plaintiffs and Baker Intervenors), the Consolidated City of Jacksonville ("City"), and the Jacksonville Association of Fire Fighters, Local 122, IAFF ("Union") settled civil lawsuits.

**What are these lawsuits about?**
The United States, the NAACP, the JBOF, the Smith Plaintiffs and Baker Intervenors brought lawsuits claiming that the City discriminated against African-American firefighters in promotions in the fire department because certain promotion tests that the City used violated the law (Title VII of the Civil Rights Act).

In their lawsuit, the United States, Baker Intervenors, the NAACP, and the JBOF allege that the City used promotional exams that had a disparate impact on African-American candidates, and that the exams were not sufficiently job related nor consistent with business necessity.  The United States, Baker Intervenors, the NAACP, and the JBOF do not, however, allege that the City has intentionally discriminated against any person or group of persons.

The Smith Plaintiffs brought a separate lawsuit against the City and the Union claiming that the City used promotional exams that had a disparate impact on African-American and Native-American candidates, and that the exams were not sufficiently job related nor consistent with business necessity.  The Smith Plaintiffs also alleged disparate treatment claims.

The Equal Employment Opportunity Commission ("EEOC") brought a lawsuit against the Union claiming that the Union negotiated and advocated for a discriminatory promotional process that resulted in disparate impact against African Americans.

The City and the Union dispute the Plaintiffs' claims and allegations, and deny that they have violated Title VII.  The Defendants contend that the promotional process and tests in use at JFRD did not have disparate impact against African Americans, and were content valid, job-related, and consistent with the City's business necessity, or otherwise consistent with the requirements of Title VII.  However, in the interest of resolving these matters, the Parties have voluntarily entered into a Consent Decree settling the lawsuits.

**Why did I get this notice?**
You received this notice because you may be affected by the terms in the Consent Decree. This notice summarizes the terms of the Consent Decree.  It also explains how you may object to it, if you wish.  The Court will consider objections before approving the Consent Decree.

**What are the terms of the Consent Decree?**
If the Court approves the Consent Decree, the City has agreed to:

1. Develop new promotional examinations for the positions of Engineer, Lieutenant, Captain, and District Chief in all divisions.
2. Expend a total sum of $4,900,000.00 as set forth in this Decree to cover Monetary Relief to eligible individuals, other specific settlement relief to named plaintiffs, and attorneys' fees.
3. Create up to 40 new Settlement Promotion positions.  These newly-created positions will be roving assignments, and will result in an overall increase of up to 40 additional JFRD positions.

**What will the new promotional examinations look like?**
Under the terms of the Decree, the content of the new promotion examinations for each position will depend on the results of a job analysis for that position.  New promotion examinations will measure more than job knowledge.  All new examinations must comply with requirements of the collective bargaining agreements currently in place for the positions of Engineer, Lieutenant, Captain, and District Chief.

**Which individuals are eligible to receive Monetary Relief and/or Settlement Promotion Positions under the Consent Decree?**
Claimants are eligible for relief.  Claimants are African Americans and private plaintiffs who took any of the Engineer, Lieutenant (Suppression), Captain (Suppression), and/or District Chief (Suppression) examinations between 2004 and 2011, and Smith plaintiffs who took the 2008 Captain (Rescue) and/or the 2008 District Chief (Rescue) examinations.  Claimants must return the necessary forms within specific time periods to be eligible for relief.  Claimants seeking Settlement Promotions must meet other requirements as well.

**How will the $4.9 million Settlement Fund be distributed?**
The money in the Settlement Fund shall be distributed as follows:
a.  Two Million Seven Hundred Fifty Thousand Dollars ($2,750,000) to be allocated among eligible Claimants seeking Monetary Relief;
b.  Five Hundred Twenty Thousand Dollars ($520,000) to be distributed equally among the Smith Plaintiffs as specific settlement relief;
c.  One Hundred Thirty Thousand Dollars ($130,000) to be distributed equally among the Baker Intervenors as specific settlement relief;
d.  Sixty Thousand Dollars ($60,000) to the JBOF organization as specific settlement relief;
e.  Forty Thousand Dollars ($40,000) to the NAACP organization as specific settlement relief; and
f.  One Million Four Hundred Thousand Dollars ($1,400,000) to resolve attorneys' fees and costs claimed by the NAACP, JBOF, Baker Intervenors, and Smith Plaintiffs.

**How will the $2,750,000 in Monetary Relief be allocated among the Claimants eligible to receive Monetary Relief?**
The United States will initially determine each Claimant's share of the amount available for Monetary Relief.  Under the Decree, the United States will take into account the date of the promotion examination which the Claimant took and subsequent personnel action with respect to

the Claimant (i.e., promotion, retirement, separation from service).  The Court will make the final decision on each Claimant's share of the $2,750,000 available for Monetary Relief.

**What are the new Settlement Promotion positions?**
The City will create up to 26 Engineer positions, 7 Lieutenant (Suppression) positions, 4 Captain (Suppression) positions, 2 District Chief (Suppression) positions, and 1 Lieutenant (Rescue) position.  All newly-created positions will be roving assignments.  Once a Claimant vacates the roving assignment, that position will remain budgeted for regular promotions until the Claimant who initially filled the position separates from JFRD.

**Who is eligible for the Settlement Promotions?**
African Americans who scored a 70 or above on an examination for a promotional position and were not promoted to that position, or to an equal (or higher) ranking position in another division, are eligible for a Settlement Promotion.  Eligibility for Settlement Promotion depends on several other factors, including whether the Claimant is still employed at JFRD, the Claimant's current rank, the Claimant's disciplinary history, and whether the Claimant met the qualifications set forth in the Professional Growth and Development Plan at the time the Claimant took the examination.

**Will the Settlement Promotions created by the Consent Decree mean fewer promotions for other people?**
No. The Settlement Promotions are newly-created positions that do not take positions away from individuals on the eligibility lists developed from promotion examinations.

**Will the people who get Settlement Promotions have more seniority than people already in the rank?**
No.  The Settlement Promotions do not come with retroactive seniority.  The relief in the Decree does not affect the competitive seniority benefits of any JFRD employee.  Seniority will accrue only for time actually spent in rank.

**Is there any other type of relief provided?**
Yes.  Claimants who receive Monetary Relief may also be eligible to have their pension benefits adjusted.  Pension adjustment is available only to those Claimants who: (1) have entered the Deferred Retired Option Program ("DROP") or retired (thereby establishing the Claimant's bi-weekly pension benefit) by Final Entry of the Decree; (2) were not promoted after last taking a challenged exam; and (3) do not elect a lump-sum distribution.  All employer-side and employee-side contributions to adjust pension benefits will come from the Claimant's share of the $2,750,000 available for Monetary Relief and shall be based on a formula agreed to by the parties.

**What happens next?**
The Court will hold a "Fairness Hearing" to determine whether the terms of the Consent Decree are fair, reasonable, adequate, and otherwise consistent with federal law.  The hearing will be on [date].  If the Court approves the Decree, the parties will take the actions in the Decree and execute the relief.

**What if I object to the terms of the Consent Decree?**
You may submit an objection to any of the terms of the Decree. Any objections must be submitted in writing. Instructions for filing an objection are enclosed with this notice. **Making an objection is voluntary, but if you do not object by [DATE] you may be prohibited from taking any action challenging this Decree in the future.**

**What if I agree with the terms of the Consent Decree?**
If you wish to receive relief, you must complete an interest in relief form.

**How do I file an objection?**
Follow the instructions in the enclosed objection forms.

**If I file an objection, will it affect my ability to receive relief under the Consent Decree if the Court approves the Decree?**
No.

**Can I attend the Fairness Hearing?**
Yes. The Fairness Hearing will be held on _____ at ___ a.m., at the Bryan Simpson United States Courthouse, 300 North Hogan Street, Jacksonville, Florida 32202.

**Can I speak at the Fairness Hearing?**
The judge may allow individuals to speak at the hearing. If you are interested in doing so, please indicate that on your objection form.

**Do I need a lawyer to object to the Consent Decree?**
No, you do not need a lawyer, but you may consult one or retain one at your own cost if you wish to do so.

**Can I obtain a copy of the Consent Decree settling the lawsuit?**
Yes. A publicly-accessible link to a pdf version of the Consent Decree has been posted on the City's website. You may also contact the Department of Justice at 1-833-341-4673 for a copy.

**APPENDIX 1 (PART 3)**

**INSTRUCTIONS FOR FILING AN OBJECTION
PRIOR TO THE FAIRNESS HEARING**

1.      You may object to the terms of the Consent Decree.  **Making an objection is voluntary, but if you do not object by [DATE], you may be prohibited from taking any action challenging this Consent Decree in the future.**  If you decide to object, you **must** follow the instructions set out on this page.  If you choose to object, the judge will consider your objection before deciding whether to approve the terms of the Consent Decree.

2.      **All objections must be submitted by [DATE].**  You may submit your objection by mail or by email.  **If your objection is not submitted by this date, your objection may not be considered and you may be prohibited from objecting at a later time.  The submission date of the objection will be the date of the postmark by United States Postal Service or the date on the email you send.**

3.      **All objections must be made in writing.**  Your objection should be made on the attached form, showing the caption of the case.  You must fill out this page completely.  You must include a description of the basis of your objection.  If you have retained an attorney to assist you in this matter, indicate with your objection the name, address and phone number of your attorney.  You may attach additional pages to the caption page/form if necessary.

4.      Objections must be sent to the following:

        **By EMAIL**

        If you submit an objection by email, it must be sent to:

                        Jacksonville.Settlement@usdoj.gov

        **By Mail**

        If you submit an objection by mail, submit your objection to the following address:

                        U.S. Department of Justice
                        Consolidated City of Jacksonville Litigation Team
                        Civil Rights Division/ELS
                        P.O. Box 14400
                        Washington, D.C. 20044-4400

5.      The court will hold the Fairness Hearing on _____ at ____ a.m., at the Bryan Simpson United States Courthouse, 300 North Hogan Street, Jacksonville, Florida 32202.

You may attend this hearing if you wish, but you need not attend to have the Court consider any written objections you have submitted.

6.    If you have any questions concerning the procedure to submit an objection, you may consult with an attorney of your own choosing and at your own expense.  You also may call the Employment Litigation Section of the Civil Rights Division of the Department of Justice at 1-833-341-4673.  If you do call this number, please leave your name, a brief explanation of the reason for your call, your telephone number, and a time when you can be reached.  Your call will be returned as soon as possible.  The Department of Justice can provide information on settlement, however, it is not authorized to provide legal advice to individuals.

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, *et al.*, ) | |
| ) | |
| **Plaintiffs**, ) | **No. 3:12-cv-451-J-32MCR** |
| ) | |
| ) | **No. 3:11-cv-345-J-32MCR** |
| **v.** ) | |
| ) | **No. 3:12-cv-491-J-32MCR** |
| **CONSOLIDATED CITY OF JACKSONVILLE**,) | |
| *et al.*, ) | |
| ) | |
| **Defendants**. ) | |

### OBJECTION TO THE ENTRY OF THE CONSENT DECREE

I am objecting to the terms of settlement of this case included in the Consent Decree agreed to by the United States of America, the EEOC, the National Association for the Advancement of Colored People, Jacksonville Branch, Jacksonville Brotherhood of Firefighters, private plaintiffs, the Consolidated City of Jacksonville and the Jacksonville Association of Fire Fighters, Local 122.

Name: _____     Attorney's name (if any): _____

Address: _____     Attorney's address:     _____
            _____                            _____

Email address: _____

Telephone: _____     Attorney's Telephone:   _____

Basis of my objection:

Are you requesting the opportunity for you (or your attorney if you have one) to state your objection in person at the Fairness Hearing?    [   ] Yes        [   ] No

YOU MAY USE ADDITIONAL PAGES TO EXPLAIN THE BASIS OF YOUR OBJECTION IF NECESSARY.  **YOU MUST SEND YOUR OBJECTION TO THE DEPARTMENT OF JUSTICE AT THE ADDRESS PROVIDED IN THE INSTRUCTIONS.  YOUR OBJECTION MUST BE POSTMARKED BY [DATE] IF MAILED, AND TRANSMITTED BY [DATE] IF SUBMITTED BY EMAIL.**

## APPENDIX 1 (PART 4)

### Interest in Relief Notification and Form

On __**[insert date]**__, the Court will hold a Fairness Hearing regarding the Consent Decree resolving lawsuits brought by Plaintiffs United States of America, National Association for the Advancement of Colored People ("NAACP"), Jacksonville Branch, Jacksonville Brotherhood of Firefighters ("JBOF"), the Equal Employment Opportunity Commission ("EEOC"), and two groups of private individuals (Smith Plaintiffs and Baker Intervenors) against Defendants Consolidated City of Jacksonville ("City") and Jacksonville Association of Fire Fighters, Local 122, IAFF ("Union").

**If the Court approves the Consent Decree, you may be eligible for relief.**

**Which individuals are eligible to receive Monetary Relief and Settlement Promotion Positions under the Consent Decree?**
Claimants are eligible for relief. Claimants are African Americans and private plaintiffs who took any of the Engineer, Lieutenant (Suppression), Captain (Suppression), and/or District Chief (Suppression) examinations between 2004 and 2011, and private plaintiffs who took the Captain (Rescue) and District Chief (Rescue) examinations between 2007 and 2011. Claimants must return the necessary forms within specific time periods to be eligible for relief. Claimants seeking Settlement Promotions must meet other requirements as well.

**What types of relief does the Consent Decree provide?**
The Consent Decree provides for:

1. $4.9 million dollars to cover Monetary Relief to Claimants, other specific settlement relief to named plaintiffs, and attorneys' fees. The money will be distributed as follows:
   a. Two Million Seven Hundred Fifty Thousand Dollars ($2,750,000) to be allocated among eligible Claimants seeking Monetary Relief;
   b. Five Hundred Twenty Thousand Dollars ($520,000) to be distributed equally among the Smith Plaintiffs as specific settlement relief;
   c. One Hundred Thirty Thousand Dollars ($130,000) to be distributed equally among the Baker Intervenors as a specific settlement relief;
   d. Sixty Thousand Dollars ($60,000) to the JBOF organization as specific settlement relief;
   e. Forty Thousand Dollars ($40,000) to the NAACP organization as specific settlement relief; and
   f. One Million Four Hundred Thousand Dollars ($1,400,000) to resolve attorneys' fees and costs claimed by the NAACP, JBOF, the Baker Intervenors, and the Smith Plaintiffs.

2. The City will create up to 26 Engineer positions, 7 Lieutenant (Suppression) positions, 4 Captain (Suppression) positions, 2 District Chief (Suppression) positions, and 1 Lieutenant (Rescue) position. All newly-created positions will be roving

assignments.  Once a Claimant vacates the roving assignment, that position will remain budgeted for regular promotions until the Claimant who initially filled the position separates from JFRD.

3. The ability, in some instances, for a Claimant's pension benefits to be adjusted.

**What type of relief am I eligible for?**
That depends on several factors, including whether you are a named plaintiff, whether you are currently employed by JFRD, whether you have retired, whether you are in the DROP program, and whether you were eventually promoted.  The United States will make preliminary eligibility determinations.  The Court will make the final decision on Claimant eligibility.

**If the Consent Decree is approved, how much Monetary Relief will I get?**
The United States will initially determine each Claimant's share of the amount available for Monetary Relief from the $2,750,000 million dollars for this purpose.  Under the Decree, the United States will take into account the date of the promotion examination which the Claimant took and subsequent personnel action with respect to the Claimant (i.e., promotion, retirement, separation from service).  The Court will make the final decision on each Claimant's share of the $2,750,000 available for Monetary Relief.

**If the Consent Decree is approved, will I get a Settlement Promotion?**
Eligibility for promotion relief depends on several factors.  African Americans who scored a 70 or above on an examination for a promotional position and were not promoted to that position, or to an equal (or higher) ranking position in another division, are eligible for a Settlement Promotion.  Eligibility for Settlement Promotion depends on several other factors, including whether the Claimant is still employed at JFRD, the Claimant's current rank, the Claimant's disciplinary history, and whether the Claimant met the qualifications set forth in the Professional Growth and Development Plan at the time the Claimant took the examination.

**Does the Consent Decree provide for retroactive seniority for Claimants who receive a Settlement Promotion?**
No.

**If the Consent Decree is approved, will I get the opportunity to adjust my pension benefit?**
Claimants who receive Monetary Relief may also be eligible to have their pension benefits adjusted.  Pension adjustment is available only to those Claimants who: (1) have entered the Deferred Retired Option Program ("DROP") or retired (thereby establishing the Claimant's bi-weekly pension benefit) by Final Entry of the Decree; (2) were not promoted after last taking a challenged exam; and (3) do not elect a lump-sum distribution.  All employer-side and employee-side contributions to adjust pension benefits will come from the Claimant's share of the $2,750,000 available for Monetary Relief and shall be based on a formula agreed to by the parties.

**How will I know what type(s) of relief I am eligible for, including how much Monetary Relief I may receive and what my pension adjustment will be?**

If the Court approves the Consent Decree and you submit an Interest-in-Relief form, you will receive a notification from the United States specifying the amount and type(s) of relief for which you are eligible.

**Do I need a lawyer to get relief under the Consent Decree?**
No.  You do not need a lawyer to ask for or obtain relief under the Consent Decree, but you may consult one or retain one at your own cost if you wish to do so.

**If I am interested in relief, what is the next step?**
You **MUST** return the enclosed "Interest in Relief" Form by [date].  You may return it to:

> By email:
>
> > Jacksonville.Settlement@usdoj.gov
>
> By United States Mail:
>
> > U.S. Department of Justice
> > Consolidated City of Jacksonville Litigation Team
> > Civil Rights Division/ELS
> > P.O. Box 14400
> > Washington, D.C. 20044-4400

If you have questions, you may call the Employment Litigation Section of the Civil Rights Division of the Department of Justice at 1-833-341-4673.  If you do call this number, please leave your name, a brief explanation of the reason for your call, your telephone number, and a time when you can be reached.  Your call will be returned as soon as possible. The Department of Justice can provide information on the settlement, it is not authorized, however, to provide legal advice to individuals.

SUBMITTING THE CLAIM FORM BY   **[insert date]**   , DOES NOT GUARANTEE THAT YOU ARE ENTITLED TO OR WILL RECEIVE ANY RELIEF.  HOWEVER, **IF YOU FAIL TO SUBMIT A CLAIM FORM BY   [insert date]    YOU MAY BE BARRED FROM OBTAINING RELIEF.**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** *et al.*, | ) |
| | ) |
| **Plaintiffs,** | ) **No. 3:12-cv-451-J-32MCR** |
| | ) |
| | ) **No. 3:11-cv-345-J-32MCR** |
| **v.** | ) |
| | ) **No. 3:12-cv-491-J-32TEM** |
| **CONSOLIDATED CITY OF JACKSONVILLE,** | ) |
| *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

**INTEREST IN RELIEF FORM**

I am interested in obtaining relief under the Consent Decree agreed to by the United States of America, National Association for the Advancement of Colored People, Jacksonville Branch, Jacksonville Brotherhood of Firefighters, the Equal Employment Opportunity Commission, private plaintiffs, Consolidated City of Jacksonville, and Jacksonville Association of Fire Fighters, Local 122, IAFF and entered by the Court in the above-captioned case.

Name: _____        Email: _____

Other name(s) used: _____        Address: _____

Telephone: _____

I wish to be considered for the following forms of relief

**SELECT ALL THAT APPLY**

[ ] Monetary Relief   [ ] Settlement Promotion   [ ] Pension Adjustment*  [ ] None

I understand that my interest in relief does not guarantee me relief.  I also understand that to obtain relief I will be asked to sign a release of claims.

Dated: _____        Name: _____

*Pension Adjustment is not available to all Claimants.  Only Claimants who have retired or who have entered the Deferred Retirement Option Program ("DROP") (thereby establishing the Claimant's bi-weekly pension benefit) by Final Entry of the Decree will be eligible for this type of relief.

Any personally identifiable information other than name (i.e., address and telephone number) shall be redacted.

## APPENDIX 2 (PART 1)

## (COVER LETTER TO NON-CLAIMANTS)

Re:     <u>United States et al. v. Consolidated City of Jacksonville et al.</u>,
        Civil Action 3:12-cv-451-J-32MCR (M.D. Fla.), <u>Smith et al. v. Consolidated City of Jacksonville et al.</u>, Civil Action 3:11-cv-345-J-32MCR (M.D. Fla.), and <u>EEOC v. Jacksonville Association of Fire Fighters Local 122, IAFF</u>, Civil Action 3:12-cv-491-J-32MCR (M.D. Fla.).

**Please read these documents carefully.**

This letter is to notify you of the settlement of civil lawsuits among Plaintiffs United States of America, National Association for the Advancement of Colored People, Jacksonville Branch ("NAACP"), Jacksonville Brotherhood of Firefighters ("JBOF"), the Equal Employment Opportunity Commission ("EEOC"), and two groups of private plaintiffs (the Smith Plaintiffs and Baker Intervenors), and Defendants Consolidated City of Jacksonville and Jacksonville Association of Fire Fighters, Local 122, IAFF ("Union") that may affect you.

Enclosed please find three documents:

1. **NOTICE OF SETTLEMENT AND FAIRNESS HEARING**
   This document describes the basis of the lawsuit and a summary of the terms of the settlement.  The settlement agreement itself is available at: <u>www._____</u>.

   In addition, the document provides the time and place of a **Fairness Hearing** regarding the settlement and tells you how to make an objection to the terms of the settlement if you choose to do so.

2. **INSTRUCTIONS FOR FILING AN OBJECTION PRIOR TO THE FAIRNESS HEARING**

3. **OBJECTION FORM**

   ***If you do not return the form on time, you may lose your opportunity to object.***

                        Sincerely,

                        City of Jacksonville

Enclosures

**APPENDIX 2 (PART 2)**

**NOTICE OF SETTLEMENT AND FAIRNESS HEARING**

On _____, 2018, the Parties (United States of America; the National Association for the Advancement of Colored People, Jacksonville Branch ("NAACP"), the Jacksonville Brotherhood of Firefighters ("JBOF"); the Equal Employment Opportunity Commission ("EEOC"), two groups of private individuals (Smith Plaintiffs and Baker Intervenors), the Consolidated City of Jacksonville ("City"), and the Jacksonville Association of Fire Fighters, Local 122, JAFF ("Union")) settled civil lawsuits.

**What are these lawsuits about?**
The United States, the NAACP, the JBOF, the Smith Plaintiffs and Baker Intervenors brought lawsuits claiming that the City discriminated against African-American firefighters in promotions in the fire department because certain promotion tests that the City used violated the law (Title VII of the Civil Rights Act).

In their lawsuit, the United States, Baker Intervenors, the NAACP, and the JBOF allege that the City used promotional exams that had a disparate impact on African-American candidates, and that the exams were not sufficiently job related nor consistent with business necessity. The United States, Baker Intervenors, the NAACP, and the JBOF do not, however, allege that the City has intentionally discriminated against any person or group of persons.

The Smith Plaintiffs brought a separate lawsuit against the City and the Union claiming that the City used promotional exams that had a disparate impact on African-American and Native-American candidates, and that the exams were not sufficiently job related nor consistent with business necessity. The Smith Plaintiffs also alleged disparate treatment claims.

The Equal Employment Opportunity Commission ("EEOC") brought a lawsuit against the Union claiming that the Union negotiated and advocated for a discriminatory promotional process that resulted in disparate impact against African Americans.

The City and the Union dispute the Plaintiffs' claims and allegations, and deny that they have violated Title VII. The Defendants contend that the promotional process and tests in use at JFRD did not have disparate impact against African Americans, and were content valid, job-related, and consistent with the City's business necessity, or otherwise consistent with the requirements of Title VII. However, in the interest of resolving these matters, the Parties have voluntarily entered into a Consent Decree settling the lawsuits.

**Why did I get this notice?**
You received this notice because you <u>may</u> be affected by the terms in the Consent Decree. This notice summarizes the terms of the Consent Decree. It also explains how you may object to it, if you wish. The Court will consider objections before approving the Consent Decree.

**What are the terms of the Consent Decree?**
If the Court approves the Consent Decree, the City has agreed to:

1. Develop new promotional examinations for the positions of Engineer, Lieutenant, Captain, and District Chief in all divisions.
2. Expend a total sum of $4,900,000.00 as set forth in this Decree to cover Monetary Relief to eligible individuals, other specific settlement relief to named plaintiffs, and attorneys' fees.
3. Create up to 40 new Settlement Promotion positions.  These newly-created positions will be roving assignments, and will result in an overall increase of up to 40 additional JFRD positions.

**What will the new promotional examinations look like?**
Under the terms of the Decree, the content of the new promotion examinations for each position will depend on the results of a job analysis for that position.  New promotion examinations will measure more than job knowledge.  All new examinations must comply with requirements of the collective bargaining agreements currently in place for the positions of Engineer, Lieutenant, Captain, and District Chief.

**Which individuals are eligible to receive Monetary Relief and/or Settlement Promotion Positions under the Consent Decree?**
Claimants are eligible for relief.  Claimants are African Americans and private plaintiffs who took any of the Engineer, Lieutenant (Suppression), Captain (Suppression), and/or District Chief (Suppression) examinations between 2004 and 2011, and Smith plaintiffs who took the 2008 Captain (Rescue) and/or the 2008 District Chief (Rescue) examinations.  Claimants must return the necessary forms within specific time periods to be eligible for relief.  Claimants seeking Settlement Promotions must meet other requirements as well.

**How will the $4.9 million Settlement Fund be distributed?**
The money in the Settlement Fund shall be distributed as follows:
a. Two Million Seven Hundred Fifty Thousand Dollars ($2,750,000) to be allocated among eligible Claimants seeking Monetary Relief;
b. Five Hundred Twenty Thousand Dollars ($520,000) to be distributed equally among the Smith Plaintiffs as specific settlement relief;
c. One Hundred Thirty Thousand Dollars ($130,000) to be distributed equally among the Baker Intervenors as specific settlement relief;
d. Sixty Thousand Dollars ($60,000) to the JBOF organization as specific settlement relief;
e. Forty Thousand Dollars ($40,000) to the NAACP organization as specific settlement relief; and
f. One Million Four Hundred Thousand Dollars ($1,400,000) to resolve attorneys' fees and costs claimed by the NAACP, JBOF, Baker Intervenors, and Smith Plaintiffs.

**How will the $2,750,000 in Monetary Relief be allocated among the Claimants eligible to receive Monetary Relief?**
The United States will initially determine each Claimant's share of the amount available for Monetary Relief.  Under the Decree, the United States will take into account the date of the promotion examination which the Claimant took and subsequent personnel action with respect to

the Claimant (i.e., promotion, retirement, separation from service). The Court will make the final decision on each Claimant's share of the $2,750,000 available for Monetary Relief.

**What are the new Settlement Promotion positions?**
The City will create up to 26 Engineer positions, 7 Lieutenant (Suppression) positions, 4 Captain (Suppression) positions, 2 District Chief (Suppression) positions, and 1 Lieutenant (Rescue) position. All newly-created positions will be roving assignments. Once a Claimant vacates the roving assignment, that position will remain budgeted for regular promotions until the Claimant who initially filled the position separates from JFRD.

**Who is eligible for the Settlement Promotions?**
African Americans who scored a 70 or above on an examination for a promotional position and were not promoted to that position, or to an equal (or higher) ranking position in another division, are eligible for a Settlement Promotion. Eligibility for Settlement Promotion depends on several other factors, including whether the Claimant is still employed at JFRD, the Claimant's current rank, the Claimant's disciplinary history, and whether the Claimant met the qualifications set forth in the Professional Growth and Development Plan at the time the Claimant took the examination.

**Will the Settlement Promotions created by the Consent Decree mean fewer promotions for other people?**
No. The Settlement Promotions are newly-created positions that do not take positions away from individuals on the eligibility lists developed from promotion examinations.

**Will the people who get Settlement Promotions have more seniority than people already in the rank?**
No. The Settlement Promotions do not come with retroactive seniority. The relief in the Decree does not affect the competitive seniority benefits of any JFRD employee. Seniority will accrue only for time actually spent in rank.

**Is there any other type of relief provided?**
Yes. Claimants who receive Monetary Relief may also be eligible to have their pension benefits adjusted. Pension adjustment is available only to those Claimants who: (1) have entered the Deferred Retired Option Program ("DROP") or retired (thereby establishing the Claimant's bi-weekly pension benefit) by Final Entry of the Decree; (2) were not promoted after last taking a challenged exam; and (3) do not elect a lump-sum distribution. All employer-side and employee-side contributions to adjust pension benefits will come from the Claimant's share of the $2,750,000 available for Monetary Relief and shall be based on a formula agreed to by the parties.

**What happens next?**
The Court will hold a "Fairness Hearing" to determine whether the terms of the Consent Decree are fair, reasonable, adequate, and otherwise consistent with federal law. The hearing will be on [date]. If the Court approves the Decree, the parties will take the actions in the Decree and execute the relief.

**What if I object to the terms of the Consent Decree?**
You may submit an objection to any of the terms of the Decree.  Any objections must be submitted in writing.  Instructions for filing an objection are enclosed with this notice.  **Making an objection is voluntary, but if you do not object by [DATE] you may be prohibited from taking any action challenging this Decree in the future.**

**How do I file an objection?**
Follow the instructions in the enclosed objection forms.

**Can I attend the Fairness Hearing?**
Yes.  The Fairness Hearing will be held on _____ at ___ a.m., at the Bryan Simpson United States Courthouse, 300 North Hogan Street, Jacksonville, Florida 32202.

**Can I speak at the Fairness Hearing?**
The judge may allow individuals to speak at the hearing.  If you are interested in doing so, please indicate that on your objection form.

**Do I need a lawyer to object to the Consent Decree?**
No, you do not need a lawyer, but you may consult one or retain one at your own cost if you wish to do so.

**Can I obtain a copy of the Consent Decree settling the lawsuit?**
Yes.  A publicly-accessible link to a pdf version of the Consent Decree has been posted on the City's website.   You may also contact the Department of Justice at 1-833-341-4673 for a copy.

**APPENDIX 2 (PART 3)**

**INSTRUCTIONS FOR FILING AN OBJECTION
PRIOR TO THE FAIRNESS HEARING**

1.  You may object to the terms of the Consent Decree. **Making an objection is voluntary, but if you do not object at this time, you may be prohibited from taking any action challenging this Consent Decree in the future.** If you decide to object, you **must** follow the instructions set out on this page. If you choose to object, the judge will consider your objection before deciding whether to approve the terms of the Consent Decree.

2.  **All objections must be submitted by [DATE].** You may submit your objection by mail or by email. **If your objection is not submitted by this date, your objection may not be considered and you may be prohibited from objecting at a later time. The submission date of the objection will be the date of the postmark by United States Postal Service or the date on the email you send.**

3.  **All objections must be made in writing.** Your objection should be made on the attached form, showing the caption of the case. You must fill out this page completely. You must include a description of the basis of your objection. If you have retained an attorney to assist you in this matter, indicate with your objection the name, address and phone number of your attorney. You may attach additional pages to the caption page/form if necessary.

4.  Objections must be sent to the following:

    **By EMAIL**

    If you submit an objection by email, it must be sent to:

    > Jacksonville.Settlement@usdoj.gov

    **By Mail**

    If you submit an objection by mail, submit your objection to the following address:

    > U.S. Department of Justice
    > Consolidated City of Jacksonville Litigation Team
    > Civil Rights Division/ELS
    > P.O. Box 14400
    > Washington, D.C. 20044-4400

5.  The court will hold the Fairness Hearing on _____ at _____ a.m., at the Bryan Simpson United States Courthouse, 300 North Hogan Street, Jacksonville, Florida 32202.

You may attend this hearing if you wish, but you need not attend to have the Court consider any written objections you submit.

6.  If you have any questions concerning the procedure to submit an objection, you may consult with an attorney of your own choosing and at your own expense, or you may call the Employment Litigation Section of the Civil Rights Division of the Department of Justice at 1-833-341-4673.  If you do call this number, please leave your name, a brief explanation of the reason for your call, your telephone number, and a time when you can be reached.  Your call will be returned as soon as possible.  The Department of Justice can provide information on the settlement, it is not authorized, however, to provide legal advice to individuals.

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** *et al.*, | ) |
| | ) |
| **Plaintiffs,** | ) **No. 3:12-cv-451-J-32MCR** |
| | ) |
| | ) **No. 3:11-cv-345-J-32MCR** |
| **v.** | ) |
| | ) **No. 3:12-cv-491-J-32MCR** |
| **CONSOLIDATED CITY OF JACKSONVILLE,** | ) |
| *et al.*, | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**OBJECTION TO THE ENTRY OF THE CONSENT DECREE**

I am objecting to the terms of settlement of this case included in the Consent Decree agreed to by the United States of America, the EEOC, National Association for the Advancement of Colored People, Jacksonville Branch, Jacksonville Brotherhood of Firefighters, private plaintiffs, the Consolidated City of Jacksonville and the Jacksonville Association of Fire Fighters, Local 122.

Name: _____     Attorney's name (if any): _____

Address: _____     Attorney's address:   _____

_____                     _____

Email address: _____                     _____

Telephone: _____     Attorney's Telephone: _____

Basis of my objection:

Are you requesting the opportunity for you (or your attorney if you have one) to state your objection in person at the Fairness Hearing?   [  ] Yes        [  ] No

YOU MAY USE ADDITIONAL PAGES TO EXPLAIN THE BASIS OF YOUR OBJECTION IF NECESSARY.  **YOU MUST SEND YOUR OBJECTION TO THE DEPARTMENT OF JUSTICE AT THE ADDRESS PROVIDED IN THE INSTRUCTIONS.  YOUR OBJECTION MUST BE POSTMARKED BY [DATE] IF MAILED, AND TRANSMITTED BY [DATE] IF SUBMITTED BY EMAIL.**

Any personally identifiable information other than name (i.e., address and telephone number) shall be redacted.

# APPENDIX 3 (PART 1)
# LETTER TO CLAIMANTS

Mr. XXXXXXXX
1234 XXXXXXX
Jacksonville, Florida XXXX

Re:    <u>United States et al. v. Consolidated City of Jacksonville et al.</u>,
       Civil Action 3:12-cv-451-J-32MCR (M.D. Fla.), <u>Smith et al. v. Consolidated City of
       Jacksonville et al.</u>, Civil Action 3:11-cv-345-J-32MCR (M.D. Fla.), and <u>EEOC v.
       Jacksonville Association of Fire Fighters Local 122, IAFF</u>, Civil Action 3:12-cv-491-J-
       32MCR (M.D. Fla.).

Dear Mr. or Ms. XXXXX:

You are receiving this notice because you submitted an Interest-in-Relief Form indicating your interest in relief in the above-referenced case.  **PLEASE READ THIS DOCUMENT VERY CAREFULLY**.

On [DATE XX], after holding a Fairness Hearing on the Terms of the Consent Decree, the Court approved the Consent Decree in <u>United States et al. v. Consolidated City of Jacksonville et al.</u>, Civil Action 3:12-cv-451-J-32MCR (M.D. Fla.), <u>Smith et al. v. Consolidated City of Jacksonville et al.</u>, Civil Action 3:11-cv-345-J-32MCR (M.D. Fla.), and <u>EEOC v. Jacksonville Association of Fire Fighters Local 122, IAFF</u>, Civil Action 3:12-cv-491-J-32MCR (M.D. Fla.).  Pursuant to the terms of the Consent Decree, the United States has reviewed the Interest-in-Relief Form you submitted, and made certain determinations concerning your eligibility for relief under the terms of the Consent Decree.  This document:

1. Describes the type(s) of relief and amount of relief for which the United States has determined you are eligible, or explains the reason(s) why the United States determined you are ineligible for the relief you seek.
2. Explains what to do if you object to the United States' Relief Determination.
3. Explains your options regarding using any Monetary Relief to adjust your pension benefit.

The United States' relief determinations are subject to the Court's review and approval.  On **[DATE]**, the Court will hold a Fairness Hearing on Individual Relief to determine whether the United States' individual relief determinations should be approved or amended.  Prior to the hearing, you may submit a written objection to the United States' individual relief determination for the Court to consider.  **Submitting a written objection is voluntary.  However, if you do not submit an objection by [DATE], you may be prohibited from objecting in the future.**

The United States has made the following determinations:

1.      **ELIGIBILITY FOR MONETARY RELIEF.**  The United States has made a
       preliminary determination that you [  ] are [  ] are not eligible to share in the amount of

the settlement being distributed to Claimants seeking Monetary Relief under the Consent Decree.

[FOR NAMED PLAINTIFFS, ADD THE FOLLOWING SENTENCE]

Monetary Relief is separate and distinct from the Specific Settlement Relief the Court has already approved for you.  You must still execute an Acceptance of Relief and Release of Claims to receive any relief approved by the Court.

2.      **SHARE OF MONETARY RELIEF.**  At this time, your estimated share of the Monetary Relief is $XX.XX.  Your share of the Monetary Relief will ultimately be determined by the Court, following a Fairness Hearing on Individual Relief.  All Monetary Relief will be subject to appropriate withholding for taxes.

[DO NOT INCLUDE NO. 2 IF CLAIMANT IS NOT ELIGIBLE FOR A SHARE]

3.      **PENSION ADJUSTMENT.**  If, by the time the Court approves and enters the Consent Decree, you have retired or entered the Deferred Retirement Option Program ("DROP") while still holding the rank directly below the rank you were seeking when you last took a challenged exam, your share of Monetary Relief **WILL BE USED** to adjust your pension benefit as described below **UNLESS** you request that your share of the Monetary Relief be distributed directly to you in a lump sum (which will be subject to appropriate withholding for taxes).

**ADJUSTED PENSION BENEFIT ESTIMATE**
The accompanying document explains how your share of the Monetary Relief will be used to adjust your annual pension, including what amounts from your share will be applied to the costs associated with adjusting your pension benefit, and the effect on your bi-weekly pension benefit.  The document also states what amount, if any, of your share of the Monetary Relief will be left over for distribution directly to you by the City.  Any amount left over for direct distribution to you is subject to appropriate withholding for taxes.  All costs associated with adjusting your pension benefit, including those costs paid by the City, will be deducted from your share of the Monetary Relief.

**OPTIONAL LUMP SUM DISBURSEMENT**
You may request that the Monetary Relief be distributed directly to you in a lump sum (minus appropriate withholding for taxes), rather than being used to adjust your pension benefit.  To have your Monetary Relief share distributed directly to you, sign the accompanying OPTIONAL REQUEST FOR DIRECT DISTRIBUTION OF MONETARY RELIEF form, and return the executed form no later than **[DATE]** to the following address:

U.S. Department of Justice
Consolidated City of Jacksonville Litigation Team

Civil Rights Division/ELS
P.O. Box 14400
Washington, D.C. 20044-4400

or by EMAIL at:

Jacksonville.Settlement@usdoj.gov

**IMPORTANT NOTICE REGARDING PENSION ADJUSTMENT**
If you do not file the form requesting the lump sum payment, your Monetary Relief will
be used to adjust your pension benefit.

Requests that Monetary Relief be distributed directly in a lump sum (minus appropriate
withholding for taxes), rather than being used to adjust pension benefits are **FINAL,** and
cannot be changed.

[DO NOT INCLUDE NO. 3 IF CLAIMANT IS NOT ELIGIBLE FOR A SHARE OF
MONETARY RELIEF]

4.      **If, by the time the Court approves and enters the Consent Decree, you have NOT
retired or NOT entered the Deferred Retirement Option Program ("DROP")** while
still holding the rank directly below the rank you were seeking when you last took a
challenged exam**,** your share of the Monetary Relief cannot be used to adjust your
pension benefits.  Your share will be distributed directly to you, minus appropriate
withholdings.

[DO NOT INCLUDE NO. 4 IF CLAIMANT IS NOT ELIGIBLE FOR A SHARE OF
MONETARY RELIEF]

5.      **SETTLEMENT PROMOTION.**  The United States has made a preliminary
determination that you [  ] are [  ] are not eligible for a settlement promotion to the
position of _____.  If the United States has determined preliminarily that you are
eligible for a promotion, this does not ensure that you will be promoted.

6.      To the extent that the United States has determined that you are not eligible for Monetary
Relief or has determined that you are not eligible for a settlement promotion, the
reason(s) for this determination are:

_____
_____
_____

[INCLUDE NO. 6 ONLY IN INSTANCES IN WHICH A CLAIMANT IS DENIED
RELIEF FOR WHICH HE/SHE APPLIED.]

**Next Steps:**

The Court will hold a **Fairness Hearing on Individual Relief** which will be held on   **[insert date]**   , at the Bryan Simpson United States Courthouse, 300 North Hogan Street, Jacksonville, Florida 32202.  **You have the right to attend this Fairness Hearing.**

**What will happen at the hearing?**
The United States will ask the Court to approve all of the United States' determinations regarding individual relief.  The Court may approve them or may adjust them with respect to you and/or other Claimants under the procedures set forth in the Consent Decree.

**What should I do if I object to the relief determination made by the United States?**
If you wish to object to the United States' preliminary relief determinations in any respect, you must take action, as explained in the enclosed "**INSTRUCTIONS FOR FILING AN OBJECTION TO INDIVIDUAL RELIEF**" by no later than [DATE].  **Submitting a written objection is voluntary.  However, if you do not submit an objection by [DATE], you may be prohibited from objecting in the future.**  You may request an opportunity to be heard at the Fairness Hearing, but you do not need to appear at the Fairness Hearing for the Court to consider your objections.

**What should I do if I agree with the determination made by the United States?**
You do not need to take any action at this time.  You will be notified once the Court has made its determination.

**What do I do if I do not want my share of the Monetary Relief to be used to adjust my pension benefit?**
You must sign and return the **OPTIONAL REQUEST FOR DIRECT DISTRIBUTION OF MONETARY RELIEF** form below no later than [DATE].

**What should I do if I have questions?**
You can call the Employment Litigation Section of the Civil Rights Division of the Department of Justice at 1-833-341-4673.  If you do call this number, please leave your name, address, and telephone number and a time when you can be reached.  Your call will be returned as soon as possible.  The Department of Justice can provide information on the settlement, however, it is not authorized to provide legal advice to individuals.


Sincerely,

Employment Litigation Section
Civil Rights Division
United States Department of Justice


Enclosures

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**CONSOLIDATED CITY OF JACKSONVILLE,** *et al.*,<br><br>Defendants. | )<br>)<br>)<br>) **No. 3:12-cv-451-J-32MCR**<br>)<br>) **No. 3:11-cv-345-J-32MCR**<br>)<br>) **No. 3:12-cv-491-J-32MCR**<br>)<br>)<br>)<br>)<br>) |

**ESTIMATED ADJUSTED PENSION BENEFIT**

Dear Mr. or Ms. XXXXX:

You have been found eligible to share in the amount of the settlement being distributed to Claimants seeking Monetary Relief under the Consent Decree.  Because you have retired or entered the Deferred Retirement Option Program ("DROP") while holding the same rank you had when you last took a challenged exam, your share will **automatically** be used to adjust your pension benefit.  This document describes how your share will be used to affect your pension benefit.  If you do not want your Monetary Relief to be used to affect your pension benefit, you **must return** the OPTIONAL REQUEST FOR DIRECT DISTRIBUTION OF MONETARY RELIEF by [DATE].

Under the Consent Decree, *all costs* associated with adjusting your pension benefit, *including those paid by City*, will be deducted from your share of the Monetary Relief.  The amount to be deducted from your share and the resulting pension benefit adjustment have been computed using a formula agreed to by the parties in this case.

In addition to the pension adjustment, you will receive a net cash payment.  This amount is subject to appropriate withholding for taxes.  Pursuant to the Consent Decree, both employer-side and employee-side withholding for taxes will be deducted from your share of the Monetary Relief.

**PLEASE NOTE: THE NUMBERS INCLUDED IN THIS DOCUMENT ARE
ESTIMATES.  THEY MAY CHANGE.**

Your estimated adjusted pension benefit amount will be:

Your estimated net payment (amount that you will receive as paycheck from the City) will be:

Your estimated adjusted pension benefit and net payment amount are based on an agreed-to
formula using the following factors:

> Pension Hire Date:
> Date entered DROP/Retirement Date:
> Current Pension benefit:
> Settlement/Benefit Calculation Effective Date:
> Total Monetary Relief Amount:

The agreed-to formula also takes into account the required pension contribution rates depending
on the years at issue, interest, and estimated withholding for tax and medicare.

Based on the agreed-to formula, $_____ out of your total Monetary Relief will be considered
Pensionable Earnings.

Based on the agreed-to formula, the following amounts would be deducted from your total Monetary
Relief Amount $_____:

> Estimated City Contributions (with interest):
> Estimated Employer Medicare Payroll Tax:
> Estimated Employee Contributions (with interest):
> Estimated Federal Income Tax (Estimated at 25% of Pensionable Earnings):
> Estimated Employee Medicare tax withholding:

If you have questions regarding the information above, you may contact the Employment
Litigation Section of the Civil Rights Division of the Department of Justice at 1-833-341-4673.
If you do call this number, please leave your name, address, and telephone number and a time
when you can be reached.  Your call will be returned as soon as possible.  The Department of
Justice can provide information on the settlement, however, it is not authorized to provide legal
advice to individuals.

Sincerely,

Employment Litigation Section
Civil Rights Division
United States Department of Justice

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** *et al.*, | ) |
| | ) |
| **Plaintiffs,** | ) **No. 3:12-cv-451-J-32MCR** |
| | ) |
| | ) **No. 3:11-cv-345-J-32MCR** |
| **v.** | ) |
| | ) **No. 3:12-cv-491-J-32MCR** |
| **CONSOLIDATED CITY OF JACKSONVILLE,** | ) |
| *et al.*, | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

### OPTIONAL REQUEST FOR DIRECT DISTRIBUTION OF MONETARY RELIEF

Instead of having your Monetary Relief used to affect your pension benefit, you may request that your entire share of the Monetary Relief be distributed directly to you (minus appropriate withholding of taxes). To do so, sign and return this form. If you do so, your pension benefit amount will remain unchanged.

**IMPORTANT NOTICE REGARDING REQUESTS FOR LUMP SUM DISTRIBUTION.**
Requests that Monetary Relief be distributed directly in a lump sum (minus appropriate withholding for taxes), rather than being used to adjust pension benefits are **FINAL,** and cannot be changed.

I, _____, do not want my share of the Monetary Relief to be applied to adjusting my pension benefits. I request that my entire share of Monetary Relief be directly distributed to me. I understand that the distribution of my share directly to me is subject to appropriate withholding for taxes, and that the Consent Decree in this case specifies that both employee-side and employer-side deductions will be taken from the amount distributed to me. I understand that my pension benefit will not change. I understand that my decision is final and cannot be changed.


Dated: _____                    _____

**APPENDIX 3 (PART 2)**

<u>**INSTRUCTIONS FOR FILING AN OBJECTION TO INDIVIDUAL RELIEF**</u>

1.    If you wish to object in any respect to the United States' preliminary determinations regarding the relief to which you are entitled under the Consent Decree, you must do so in the manner described below.  **Making an objection is voluntary, but if you do not object at this time, you may be prohibited from objecting in the future.**  If you choose to make an objection, the judge will consider your objection before deciding whether to approve the types and amounts of relief to be provided to you and other individuals under the Consent Decree.

2.    **All objections must be submitted by   [insert date]  .  If your objection is not submitted by this date, your objection may not be considered and you may be prohibited from objecting at a later time.  The submission date of the objection will be the date of the postmark by United States Postal Service or the date on the email you send.**

3.    **All objections must be made in writing.**  Your objection should be made on the attached form, showing the caption of the case.  You must fill out this form completely. You must include a description of the nature and basis of your objection.  If you have retained an attorney to assist you in this matter, please indicate with your objection the name, address and phone number of your attorney.  You may attach additional pages to the form if necessary.

4.     Objections must be sent to the following:

<u>**By EMAIL**</u>

If you submit an objection by email, it must be sent to:

Jacksonville.Settlement@usdoj.gov

<u>**By Mail**</u>

If you submit an objection by mail, submit your objection to the following address:

U.S. Department of Justice
Consolidated City of Jacksonville Litigation Team
Civil Rights Division/ELS
P.O. Box 14400
Washington, D.C. 20044-4400

5.      The court will hold the Fairness Hearing on Individual Relief on   **[insert date]**   at the Bryan Simpson United States Courthouse, 300 North Hogan Street, Jacksonville, Florida  32202.  You may attend this hearing if you wish, but need not attend the hearing to have the Court consider any written objections you submit.

6.      If you have any questions concerning the procedure for submitting an objection, you may consult with an attorney of your own choosing and at your own expense.

7.      If you have questions concerning your objection, you also may call the Employment Litigation Section of the Civil Rights Division of the Department of Justice at 1-833-341-4673.  If you do call this number, please leave your name, address, and telephone number and a time when you can be reached.  Your call will be returned as soon as possible.  The Department of Justice can provide information on the settlement, however, it is not authorized to provide legal advice to individuals.

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** *et al.*, | ) |
| | ) |
| **Plaintiffs,** | ) **No. 3:12-cv-451-J-32MCR** |
| | ) |
| | ) **No. 3:11-cv-345-J-32MCR** |
| **v.** | ) |
| | ) **No. 3:12-cv-491-J-32MCR** |
| **CONSOLIDATED CITY OF JACKSONVILLE,** | ) |
| *et al.*, | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**OBJECTION TO UNITED STATES' DETERMINATION REGARDING**
**INDIVIDUAL RELIEF TO BE AWARDED UNDER THE CONSENT DECREE**

I am objecting to the United States' determinations concerning my eligibility for relief.


Name: _____          Attorney's name (if any): _____


Address: _____          Attorney's address: _____

_____          _____

_____          _____


Telephone: _____          Attorney's Telephone: _____

Email: _____

Nature and basis of my objection:


**YOU MUST ATTACH A COPY OF ANY DOCUMENTATION THAT YOU HAVE**
**THAT SUPPORTS YOUR OBJECTIONS**.


Are you requesting the opportunity for you (or your attorney if you have one) to state your
objection in person at the Fairness Hearing on Individual Relief?

[  ] Yes        [  ] No

YOU MAY USE ADDITIONAL PAGES TO EXPLAIN THE BASIS OF YOUR OBJECTION IF NECESSARY.

**YOU MUST SEND YOUR OBJECTION TO THE DEPARTMENT OF JUSTICE AT THE ADDRESS PROVIDED IN THE INSTRUCTIONS.  YOUR OBJECTION MUST BE POSTMARKED BY [DATE] IF MAILED, AND TRANSMITTED BY [DATE] IF SUBMITTED BY EMAIL.**

Any personally identifiable information other than name (i.e., address and telephone number) shall be redacted.

**APPENDIX 4**

NOTICE OF INDIVIDUAL RELIEF DISTRIBUTION
AS STATED IN THE FINAL INDIVIDUAL RELIEF LISTS

On __**[insert date]**___, the Court approved Final Individual Relief Lists pursuant to the Consent Decree entered by the Court in United States et al. v. Consolidated City of Jacksonville et al., Civil Action 3:12-cv-451-J-32MCR (M.D. Fla.), Smith et al. v. Consolidated City of Jacksonville et al., Civil Action 3:11-cv-345-J-32MCR (M.D. Fla.), and EEOC v. Jacksonville Association of Fire Fighters Local 122, IAFF, Civil Action 3:12-cv-491-J-32MCR (M.D. Fla.). **You are being sent this Notice because you have been deemed eligible for either monetary relief, consideration for a settlement promotion, or both.**

To receive this monetary relief, and/or consideration for a settlement promotion, if applicable, you must properly and completely fill out the attached Acceptance of Individual Relief and Release of Claims Form, initial the first page of this form where requested, sign the form and return it to the Department of Justice no later than __[insert date]__ to:

**By EMAIL**

If you submit the form by email, it must be sent to:

Jacksonville.Settlement@usdoj.gov

**By Mail**

If you submit the form by mail, submit it to the following address:

U.S. Department of Justice
Consolidated City of Jacksonville Litigation Team
Civil Rights Division/ELS
P.O. Box 14400
Washington, D.C. 20044-4400

You also must **complete and return the enclosed federal tax form** so that appropriate withholdings for taxes may be made from the monetary relief.

If you have any questions about how to submit your Acceptance of Individual Relief and Release of Claims Form, you may wish to consult with an attorney of your own choosing and at your own expense.  You also may call the Employment Litigation Section of the Civil Rights Division of the Department of Justice at 1-833-341-4673.  If you do call this number, please leave your name, last four digits of your social security number, address and telephone number and a time when you can be reached.  Your call will be returned as soon as possible.  The Department of Justice can provide information on the settlement;  it is, however, not authorized to provide legal advice to individuals.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | No. 3:12-cv-451-J-32MCR |
| ) | |
| ) | No. 3:11-cv-345-J-32MCR |
| v. ) | |
| ) | No. 3:12-cv-491-J-32MCR |
| CONSOLIDATED CITY OF JACKSONVILLE,) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**ACCEPTANCE OF INDIVIDUAL RELIEF AND RELEASE OF CLAIMS**

I, _____**[insert name]**_____, have received notice from the United States Department of Justice of the relief offered to me pursuant to the provisions of the Consent Decree entered by the Court on __**[insert date]**_____ in the above-named lawsuit.

*[Non-private plaintiff claimants receiving MR share from QSF only, use F1.]*

*[Non-private plaintiff claimants receiving MR share from QSF and Promotion Chance, use F1 and F5.]*

*[Non-private plaintiff claimants receiving Pension Adjustment only, use F3.]*

*[Non-private plaintiff claimants receiving Pension Adjustment and Promotion Chance, use F3 and F5.]*

*[Private plaintiff claimants receiving MR share from QSF and Specific Settlement Relief, use F2 only.]*

*[Private plaintiff claimant receiving MR share from QSF, Specific Settlement Relief, and promotion chance, use F2 and F5.]*

*[Private plaintiff claimant receiving Pension Adjustment and Specific Settlement Relief, use F4.]*

*[Private plaintiff claimant receiving Pension Adjustment, Specific Settlement Relief and Promotion Chance, use F4 and F5.]*

*[Named Organization receiving Specific Settlement Relief, use F6.]*

**F1 – Monetary Relief only**

The **RELIEF** I am being offered consists of Monetary Relief of _____ **[insert amount]** dollars ($ _____.___).  This amount is subject to appropriate withholdings for taxes.

                       **I ACCEPT THIS RELIEF.**      INITIAL HERE:  ____

                                                     DATE:

**F2 – Monetary Relief and Specific Settlement Relief**

The **RELIEF** I am being offered consists of: (1) Monetary Relief of __**[insert amount]** dollars ($ _____.___); and (2) and Specific Settlement Relief of __**[insert amount]** dollars  ($ _____.___).  The Monetary Relief amount is subject to appropriate withholding for taxes.

                       **I ACCEPT THIS RELIEF.**      INITIAL HERE:  ____

                                                     DATE:

**F3 – Pension Adjustment Only**

The **RELIEF** I am being offered consists of _____ **[insert amount]** dollars ($ _____.___),  which will be used to adjust my pension benefits.  The costs associated with adjusting my pension benefits will be taken from this amount.  Any amount left over will be distributed directly to me and is subject to appropriate withholdings for taxes.

My current bi-weekly pension benefit is:      $XXXXXX

My estimated share of the Monetary Relief is:  $XXXXX

Based on the agreed-to formula and the Consent Decree in this matter, my new estimated bi-weekly pension benefit is: XXXXXXXX

The estimated amount of my share of Monetary Relief left over after costs to adjust my pension benefits have been satisfied, which will be distributed directly to me, subject to appropriate withholding for taxes:   XXXXXXXXXX

**I ACCEPT THIS RELIEF.**          INITIAL HERE:  ____

DATE:

## F4 – Pension Adjustment and Specific Settlement Relief

The **RELIEF** I am being offered consists of _____ **[insert amount]** dollars ($ _____.___), which will be used to adjust my pension benefits.  The costs associated with adjusting my pension benefits will be taken from this amount.  Any amount left over will be distributed directly to me and is subject to appropriate withholdings for taxes.

My current bi-weekly pension benefit is:      $XXXXXX

My estimated share of the Monetary Relief is:  $XXXXX

Based on the agreed-to formula and the Consent Decree in this matter, my new estimated bi-weekly pension benefit is: XXXXXXXX

The estimated amount of my share of Monetary Relief left over after costs to increase my pension benefits have been satisfied, which will be distributed directly to me, subject to appropriate withholding for taxes:

I am also being offered Specific Settlement Relief of  **[insert amount]** dollars  ($ _____.___).

**I ACCEPT THIS RELIEF.**          INITIAL HERE:  ____
DATE:

## F5 – Add to all receiving Promotion Consideration

I am also being offered **CONSIDERATION FOR PROMOTION** to the position of _____.  I understand that to receive the promotion for which I will be considered, I must have scored at least a 70 on an examination for the rank for which I am being considered for promotion, and I must have met the qualifications set forth in the Professional Growth and Development Plan ("PGDP"), as they existed at the time  I took that promotion examination, assuming that any PGDP requirements were in effect at the time of that

examination.  I also understand that eligibility for promotion consideration under the Decree does not mean I will receive a promotion pursuant to the Decree.

> **I ACCEPT THIS RELIEF.**          INITIAL HERE:  ____
>
>                                   DATE:

**F6 – Specific Settlement Relief Only**

The **RELIEF** the [Name of Organization] is being offered consists of a Specific Settlement Relief of _____ **[insert amount]** dollars ($ _____.__).

> **I ACCEPT THIS RELIEF.**          INITIAL HERE:  ____
>
>                                   DATE:

In consideration for receipt of the individual relief stated above, _____, for himself/herself and his/her successors, assigns, heirs, and beneficiaries ("Releasor"), hereby releases and discharges the Consolidated City of Jacksonville ("City") and JAFF (the "Union"), and their employees, agents, attorneys, predecessors, successors, and assigns (the "Releasees"), from any and all legal or administrative claims filed or that could have been filed relating to JFRD promotions (including but not limited to eligibility for examination, promotion examinations, award of seniority and veterans' preference and any discrimination or retaliation claims related thereto) through the date of this Release. This includes but is not limited to any charge of discrimination filed, or that could have been filed by Releasor with any entity authorized to receive, investigate, or act upon such charges, including, but not limited to, the Equal Employment Opportunity Commission, the Florida Commission on Human Relations, the Jacksonville Human Rights Commission, and any state or federal court of law, relating to discrimination in JFRD promotions (e.g., eligibility for examination, promotion examination, award of seniority points and veterans' preference points) through the date of this Release.

Releasor further releases the Releasees from any and all claims of retaliation or hostile work environment because of participation in the lawsuits relating to the Consent Decree or expected receipt of moneys or other relief or participation in the settlement of the underlying lawsuits, through and including the date of this Release.

Releasor is not releasing the right to participate in the protest process allowed after each promotion examination, to the extent such protests are timely filed according to the established process applicable to all exam takers.

**Releasor further releases the Union from all claims made or that could have been made in EEOC Charge No. XXX-XXXX-XXXXX through the date of this Release.**

*(The above statement will appear only in the releases of specific JFRD personnel who filed charges against the Union.)*

**Releasor further releases the Union from all claims made or that could have been made in Smith Complaints A and B (Civil Action No. 3:11-cv-345-J-32MCR) through the date of this Release.**

*(The above statement will appear only in the releases of former Smith Plaintiffs who are Claimants.)*

**Specifically excluded from this release are my claims in:**

*(The above statement will appear only in the release of Marcel White.)*

Upon receipt of the relief described herein, Releasor shall notify all applicable administrative agencies or courts that all of Releasor's pending charges or claims relating to promotions may be dismissed with prejudice. Releasor further represents and warrants that this Release of Claims is given voluntarily and for good and valuable consideration.

The Release of Claims contained herein is for the relief described in this Release.  The release is not conditioned on the Releasor's receipt of any other relief under the Consent Decree not described in this document.

Releasor understands that under paragraphs 78-80 and 95 of the Consent Decree, the City is permitted to administer promotion exams, under certain circumstances, using methods and the format employed by the City prior to the Final Entry of the Consent Decree.

Releasor understands that **he/she must properly and completely fill out this Acceptance of Individual Relief and Release of Claims form, initial the first page of this form, sign the form and return it to the Department of Justice no later than   [insert date]** in order to receive the relief detailed herein.

**I HAVE READ THIS ACCEPTANCE OF INDIVIDUAL RELIEF AND RELEASE OF CLAIMS FORM AND UNDERSTAND THE CONTENTS THEREOF.  I SIGN THIS FORM OF MY OWN FREE ACT AND DEED.**

_____         _____
Date Executed                                              Signature


_____
        (Street Address)           (City)          (State)          (Zip code)

(     ) _____   (Home Telephone)        (     ) _____   (Work Telephone)

_____   (Email)


      **Return this form to:**


      **By EMAIL**      If you submit the form by email, it must be sent to:

                   Jacksonville.Settlement@usdoj.gov

      **By Mail**      If you submit the form by mail, submit it to the following address:

                   U.S. Department of Justice
                   Consolidated City of Jacksonville Litigation Team
                   Civil Rights Division/ELS
                   P.O. Box 14400
                   Washington, D.C. 20044-4400

Any personally identifiable information other than name (i.e., address and telephone number) shall be redacted.

# APPENDIX 5





AGREEMENT
BETWEEN
THE CITY OF JACKSONVILLE
AND THE
INTERNATIONAL ASSOCIATION OF FIREFIGHTERS
LOCAL 122
(FIRE DISTRICT CHIEFS)
OCTOBER 1, 2012 THROUGH SEPTEMBER 30, 2015

AGREEMENT

BETWEEN

THE CITY OF JACKSONVILLE

AND THE

INTERNATIONAL ASSOCIATION OF FIREFIGHTERS

LOCAL 122

(Fire District Chiefs)

OCTOBER 1, 2012 THROUGH SEPTEMBER 30, 2015

# TABLE OF CONTENTS

ARTICLE                                                                      PAGE

PREAMBLE...................................................................................................... 1
ARTICLE 1:  UNION RECOGNITION.............................................................. 3
ARTICLE 2:  UNION SECURITY AND CHECK OFF ..................................... 5
ARTICLE 3:  UNION ACTIVITIES ................................................................... 7
ARTICLE 4:  BULLETIN BOARDS .................................................................. 9
ARTICLE 5:  MANAGEMENT SECURITY ..................................................... 11
ARTICLE 6:  SAVINGS CLAUSE .................................................................. 13
ARTICLE 7:  MANAGEMENT RIGHTS.......................................................... 15
ARTICLE 8:  STAFFING................................................................................. 17
ARTICLE 9:  WORK RULES........................................................................... 19
ARTICLE 10:  SPECIAL MEETINGS ............................................................ 21
ARTICLE 11:  HOURS OF WORK AND OVERTIME PAYMENT ................. 23
ARTICLE 12:  WAGES .................................................................................. 25
ARTICLE 13:  PROMOTIONS ....................................................................... 29
ARTICLE 14:  EMPLOYEE BENEFITS......................................................... 33
ARTICLE 15:  UNIFORMS AND EQUIPMENT ............................................. 37
ARTICLE 16:  SAFETY AND HEALTH ......................................................... 39
ARTICLE 17:  INJURY IN LINE OF DUTY.................................................... 41
ARTICLE 18:  HOLIDAYS ............................................................................. 43
ARTICLE 19:  PERSONAL LEAVE (PLAN E) .............................................. 47
ARTICLE 20:  PERSONAL LEAVE (PLAN P) .............................................. 52
ARTICLE 21:  MILITARY LEAVE .................................................................. 57
ARTICLE 22:  DRUG ABUSE POLICY AND PROCEDURES ..................... 59
ARTICLE 23:  EMPLOYEE ASSISTANCE PROGRAM ............................... 65
ARTICLE 24:  DISCHARGE AND DISCIPLINE ........................................... 67
ARTICLE 25:  GRIEVANCE PROCEDURE .................................................. 69
ARTICLE 26:  SEVERABILITY....................................................................... 75
ARTICLE 27:  ENTIRE AGREEMENT .......................................................... 77
ARTICLE 28:  DURATION OF AGREEMENT................................................ 79
SCHEDULE A ............................................................................................... 81
SCHEDULE B ............................................................................................... 83
INDEX............................................................................................................ 85

# ARTICLE 13:  PROMOTIONS

**13.1**   All promotional examinations shall be assembled, written, and solely administered by an outside testing service.

**13.2**   The passing grade for all promotional examinations shall be seventy percent (70%), except that when the Director of Employee Services certifies that the seventy percent (70%) passing score results in an adverse impact (as defined by the Federal Uniform Guidelines on Employee Selection Procedures) on any federally protected class, a new validated pass score shall be established using psychometrically sound procedures that are in accordance with the Federal Guidelines on Employee Selection Procedures.

**13.3**   The following seniority credit shall be added to all passing scores for rank of District Chief:

**A.**   One-half (1/2) point shall be added for each year of continuous service in the Fire and Rescue Department, up to a maximum of five (5) points.

**B.**   An additional one-half (1/2) point shall be added for each continuous year in the class or position immediately below the class for which the promotional exam is given, up to a maximum of five (5) points.

**(1)**   Provided, however, no such credit will be given when a promotional examination is held for any class of employment which is directly above the entrance level.

**(2)**   The entrance level shall be construed as the lowest entrance level at which the employees or any portion thereof participating in such promotional examination entered the service of the Fire and Rescue Department.

**13.4**   All persons with a passing score shall be ranked by resulting numerical score, with the person attaining the highest score ranked first. The top name of the list shall be certified first.

**13.5**   The life of a promotional list shall be two (2) years.

**13.6**   Any person may be removed from the promotional list after three (3) offers of a probationary appointment have been declined.

**13.7**   In the absence of a certified promotional list, there shall be no more than six (6) months between the date of the first opening and the next examination for these positions.

**13.8**   Line of Promotion is as follows: From Captain to District Chief.

**13.9**   Standard external reading lists for promotional examinations shall be established for all promotional classifications within the Jacksonville Fire and Rescue Department. JFRD will furnish all station/work location libraries with copies of reading list books and materials.  These materials will be maintained by the station/work location head who will be responsible for establishing a check-out system to account for materials and provide for equal access to them.  The Director/Fire Chief can amend the reading lists as necessary, with the understanding that such amendments will be announced at least ninety (90) days prior to any affected promotional examination.  The ninety (90) day limitation will not apply to fine-tuning the contents of the list, e.g., updating edition numbers.

**13.10**  The City and the exam consultant will score standardized exam sheets at the exam administration site, and provide raw scores to examinees subject to the following:

    **A.**   Raw scores do not include points added for seniority or for military service where applicable and therefore may not accurately reflect an examinees' ranking on the final list.

    **B.**   Raw scores do not include the result of exam protest committee determinations, if any, and therefore may not accurately reflect an examinee's ranking on the final list.

    **C.**   Technology used to score standardized exam sheets is affected by the quality of markings made on the exam papers.  Erasures, ambiguous markings, and extraneous marking on exam sheets may adversely affect the ability to provide immediate scores.  In such cases, hand scoring may be required which can delay delivery of results to examinees.

    **D.**   The ability to score exam sheets at the exam site is dependent upon the availability of operational equipment.  Delays in providing scores to examinees can result from equipment malfunctions or breakdowns.

**13.11**  The following shall apply for demotion or reversion in rank caused by a reduction-in-work-force or a shortage of funds:

    **A.**   The last candidate promoted from an internal eligibility list shall be the first to receive a demotion/reversion in rank.  If there is more than one member that must be demoted/reversed in rank, the order shall continue from the last candidate promoted to the first candidate promoted.

**B.**     When a vacancy occurs in a position/rank from which members have been demoted/reversed in rank, promotion to said vacant position/rank shall be made from the list of members demoted/reversed in rank with the last member demoted/reversed in rank promoted first, regardless of the expiration date of the internal eligibility list from which said members were originally promoted.





AGREEMENT
BETWEEN
THE CITY OF JACKSONVILLE
AND THE
INTERNATIONAL ASSOCIATION OF FIREFIGHTERS
LOCAL 122
(FIRE FIGHTERS, FIRE ENGINEERS, FIRE LIEUTENANTS & FIRE
CAPTAINS)
OCTOBER 1, 2012 THROUGH SEPTEMBER 30, 2015

AGREEMENT

BETWEEN

THE CITY OF JACKSONVILLE

AND THE

INTERNATIONAL ASSOCIATION OF FIREFIGHTERS

LOCAL 122

(FIRE FIGHTERS, FIRE ENGINEERS, FIRE LIEUTENANTS
& FIRE CAPTAINS)

OCTOBER 1, 2012 THROUGH SEPTEMBER 30, 2015

# TABLE OF CONTENTS

**ARTICLE**                                                                                    **PAGE**

PREAMBLE ........................................................................................................ 1
ARTICLE 1:  UNION RECOGNITION.......................................................... 3
ARTICLE 2:  UNION SECURITY AND CHECK OFF ................................ 5
ARTICLE 3:  UNION ACTIVITIES .............................................................. 7
ARTICLE 4:  BULLETIN BOARDS .............................................................. 9
ARTICLE 5:  MANAGEMENT SECURITY ................................................ 11
ARTICLE 6:  SAVINGS CLAUSE .............................................................. 13
ARTICLE 7:  MANAGEMENT RIGHTS.................................................... 15
ARTICLE 8:  STAFFING.............................................................................. 17
ARTICLE 9:  WORK RULES........................................................................ 19
ARTICLE 10:  SPECIAL MEETINGS ........................................................ 21
ARTICLE 11:  HOURS OF WORK AND OVERTIME PAYMENT ........ 23
ARTICLE 12:  WAGES ................................................................................ 27
ARTICLE 13:  PROMOTIONS .................................................................... 33
ARTICLE 14:  EMPLOYEE BENEFITS...................................................... 37
ARTICLE 15:  UNIFORMS AND EQUIPMENT ...................................... 41
ARTICLE 16:  SAFETY AND HEALTH...................................................... 43
ARTICLE 17:  INJURY IN LINE OF DUTY .............................................. 45
ARTICLE 18:  HOLIDAYS .......................................................................... 47
ARTICLE 19:  PERSONAL LEAVE (PLAN E) .......................................... 51
ARTICLE 20:  PERSONAL LEAVE (PLAN P) .......................................... 57
ARTICLE 21:  MILITARY LEAVE .............................................................. 61
ARTICLE 22:  DRUG ABUSE POLICY AND PROCEDURES ................ 63
ARTICLE 23:  EMPLOYEE ASSISTANCE PROGRAM .......................... 69
ARTICLE 24:  DISCHARGE AND DISCIPLINE...................................... 71
ARTICLE 25:  GRIEVANCE PROCEDURE .............................................. 73
ARTICLE 26:  SEVERABILITY.................................................................... 79
ARTICLE 27:  ENTIRE AGREEMENT ...................................................... 81
ARTICLE 28:  DURATION OF AGREEMENT.......................................... 83
SCHEDULE A .................................................................................................. 85
SCHEDULE B .................................................................................................. 87
SCHEDULE C .................................................................................................. 89
SCHEDULE D .................................................................................................. 91
INDEX.............................................................................................................. 93

IAFF FIREFIGHTERS - CAPTAINS

# ARTICLE 13:  PROMOTIONS

**13.1**   All promotional examinations shall be assembled, written, and solely administered by an outside testing service.

**13.2**   The passing grade for all promotional examinations shall be seventy percent (70%), except that when the Director of Employee Services certifies that the seventy percent (70%) passing score results in an adverse impact (as defined by the Federal Uniform Guidelines on Employee Selection Procedures) on any federally protected class, a new validated pass score shall be established using psychometrically sound procedures that are in accordance with the Federal Guidelines on Employee Selection Procedures.

**13.3**   The following seniority credit shall be added to all passing scores for the ranks of Engineer, Lieutenant, and Captain:

   **A.**   One-half (1/2) point shall be added for each year of continuous service in the Fire and Rescue Department, up to a maximum of five (5) points.

   **B.**   An additional one-half (1/2) point shall be added for each continuous year in the class or position immediately below the class for which the promotional exam is given, up to a maximum of five (5) points.

   **(1)**   Provided, however, no such credit will be given when a promotional examination is held for any class of employment which is directly above the entrance level.

   **(2)**   The entrance level shall be construed as the lowest entrance level at which the employees or any portion thereof participating in such promotional examination entered the service of the Fire and Rescue Department.

   **(3)**   An officer in one occupational activity who takes a promotional examination for Lieutenant in a different occupational activity shall be credited with one-half point seniority credit for each year of continuous service as an engineer prior to his/her initial appointment as a Lieutenant in calculating his/her rank on the Lieutenant Eligibility List in the new occupational activity.

**13.4**   All persons with a passing score shall be ranked by resulting numerical score, with the person attaining the highest score ranked first.  The top name of the list shall be certified first.

**13.5**  The life of a promotional list shall be two (2) years.

**13.6**  Any person may be removed from the promotional list after three (3) offers of a probationary appointment have been declined.

**13.7**  In the absence of a certified promotional list, there shall be no more than six (6) months between the date of the first opening and the next examination for these positions.

**13.8**  Line of Promotion is as follows: From Fire Fighter to Engineer to Lieutenant to Captain.

**13.9**  Standard external reading lists for promotional examinations shall be established for all promotional classifications within the Jacksonville Fire and Rescue Department. JFRD will furnish all station/work location libraries with copies of reading list books and materials.  These materials will be maintained by the station/work location head who will be responsible for establishing a check-out system to account for materials and provide for equal access to them. The Director/Fire Chief can amend the reading lists as necessary, with the understanding that such amendments will be announced at least ninety (90) days prior to any affected promotional examination.  The ninety (90) day limitation will not apply to fine-tuning the contents of the list, e.g., updating edition numbers.

**13.10** The **City** and the exam consultant will score standardized exam sheets at the exam administration site, and provide raw scores to examinees subject to the following:

**A.**  Raw scores do not include points added for seniority or for military service where applicable and therefore may not accurately reflect an examinees' ranking on the final list.

**B.**  Raw scores do not include the result of exam protest committee determinations, if any, and therefore may not accurately reflect an examinee's ranking on the final list.

**C.**  Technology used to score standardized exam sheets is affected by the quality of markings made on the exam papers.  Erasures, ambiguous markings, and extraneous marking on exam sheets may adversely affect the ability to provide immediate scores.  In such cases, hand scoring may be required which can delay delivery of results to examinees.

**D.**  The ability to score exam sheets at the exam site is dependent upon the availability of operational equipment.  Delays in providing scores to examinees can result from equipment malfunctions or breakdowns.

34

**13.11** The following shall apply for demotion or reversion in rank caused by a reduction-in-work-force or a shortage of funds:

    **A.**    The last candidate promoted from an internal eligibility list shall be the first to receive a demotion/reversion in rank.  If there is more than one member that must be demoted/reversed in rank, the order shall continue from the last candidate promoted to the first candidate promoted.

    **B.**    When a vacancy occurs in a position/rank from which members have been demoted/reversed in rank, promotion to said vacant position/rank shall be made from the list of members demoted/reversed in rank with the last member demoted/reversed in rank promoted first, regardless of the expiration date of the internal eligibility list from which said members were originally promoted.

**13.12** Employees laid off or demoted for non-disciplinary reasons on October 12, 2010, who are subsequently reinstated, will have their service time treated as continuous for the purposes of seniority and eligibility for promotional exams.